IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Maximus, Inc., ("Maximus") by its undersigned counsel, submits the following Answer and Defenses to Plaintiff Maurice Franklin's Complaint:

1. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by, inter alia, the Civil Rights Act of 1990, the Equal Pay Act, and the Civil Rights Act of 1866, for the Defendant having subjected Plaintiff to race and sex discrimination, disparate treatment, a hostile work environment, harassment and retaliation for protected activity.

**ANSWER:** Maximus admits that Plaintiff purports to bring this action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Maximus further admits that Plaintiff alleges that he was subjected to race and sex discrimination, disparate treatment, a hostile work environment, harassment and retaliation for protected activity. Maximus denies that it violated Title VII or any other law, denies that Plaintiff was subjected to any unlawful treatment, and denies the remaining allegations contained in Paragraph 1.

**Parties, Jurisdiction and Venue**

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Act"), 42 U.S.C.A. §§ 2000(e) et. seq.

**ANSWER:** Maximus admits that Plaintiff purports to bring this action pursuant to Title VII. Maximus denies that it violated Title VII or any other law, and denies the remaining allegations contained in Paragraph 2.

3. Plaintiff is a black male who resides in Cook County, Illinois.

**ANSWER:** Upon information and belief, Maximus admits that Plaintiff is a black male. Maximus lacks knowledge as to the county of his residence and therefore denies the remaining allegations contained in Paragraph 3.

4. Defendant is a for profit corporation headquartered in Reston, Virginia and doing business in Cook County, Illinois.

**ANSWER:** Maximus admits that it is a for-profit corporation headquartered in Reston, Virginia. Maximus further admits that it does business in Cook County, Illinois.

5. Defendant supplies services for its clients, who are generally government entities.

**ANSWER:** Maximus admits that it supplies services for its clients, and that some of its clients are government entities. Maximus denies the remaining allegations contained in Paragraph 5.

6. Defendant is an employer as that term is defined under the Title VII of the Civil Rights Act of 1964, as amended.

**ANSWER:** Paragraph 6 states a legal conclusion for which no answer is required. To the extent Paragraph 6 contains any allegations of fact, Maximus admits the allegations contained in Paragraph 6.

7. At all relevant times, Plaintiff has worked for Defendant while located in Cook County, Illinois or in Riverside County, California.

**ANSWER:** Maximus admits that Plaintiff is a former employee of Maximus. As "all relevant times" is undefined, Maximus lacks knowledge as to the time period referenced in Paragraph 7 and therefore denies the remaining allegations contained in Paragraph 7.

### Statement of Facts and General Allegations

8. Plaintiff began working for the Defendant in 2001 and has worked continuously for the Defendant since 2005.

**ANSWER:** Maximus admits that Plaintiff first began working for Maximus in 2001, then returned to work for Maximus in 2005. Maximus denies the remaining allegations contained in Paragraph 8.

9. Plaintiff currently holds the position of "Vice President, Executive Oversight." He has held this position since January 1, 2014.

**ANSWER:** Maximus denies the allegations contained in Paragraph 9.

10. This position is part of Defendant's "Human Services" division.

**ANSWER:** Maximus denies the allegations contained in Paragraph 10.

11. In his position, Plaintiff manages client relationships, provides financial planning and forecasts, performs project performance adherence, supervises team members, and currently supports the leadership teams and "New Hire" programs in 16 states.

**ANSWER:** Maximus admits that Plaintiff's former responsibilities included, *inter alia*, managing client relationships, performing project performance adherence, supervising team members, and supporting the leadership teams and new hire programs. Maximus denies the remaining allegations contained in Paragraph 11.

12. From 2014-2020, Laura Rosenak ("Rosenak"), a white female, was Plaintiff's immediate supervisor in Defendant's "Human Services" division.

**ANSWER:** Upon information and belief, Maximus admits that Laura Rosenak is a white female. Maximus denies the remaining allegations contained in Paragraph 12.

13. In 2017, Rosenak asked Plaintiff to hire two of Rosenak's family members, both white females.

**ANSWER:** Maximus denies the allegations contained in Paragraph 13.

14. Upon information and belief, none of Plaintiff's similarly situated, non-black co-workers were asked to hire and/or supervise Rosenak's family members.

**ANSWER:** Maximus denies the allegations contained in Paragraph 14.

3

15. In 2017, Plaintiff contacted Defendant's "Human Capital"[1] department for guidance regarding what Plaintiff believed was the inappropriate hiring of Rosenak's family members.

**ANSWER:** Maximus denies the allegations contained in Paragraph 15, inclusive of all footnotes.

16. At this time, Defendant's Human Capital division was led by Kim Colbert ("Colbert"), a white female.

**ANSWER:** Maximus denies the allegations contained in Paragraph 16.

17. After Plaintiff reached out to the Human Capital Division, Plaintiff was subjected to harassing treatment from Rosenak and subject to discriminatory treatment from Rosenak and the Defendant.

**ANSWER:** Maximus denies the allegations contained in Paragraph 17.

18. On one occasion, Rosenak attempted to subject Defendant to an inappropriate and unwanted touching.

**ANSWER:** Maximus denies the allegations contained in Paragraph 18.

19. On multiple occasions, Rosenak made inappropriate comments directed at Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 19.

20. For instance, while on a business trip, and in the presence of coworkers, Rosenak informed Plaintiff that he could not work for her if he grew his hair into braids.

**ANSWER:** Maximus denies the allegations contained in Paragraph 20.

21. On multiple occasions, Rosenak made threatening comments regarding Plaintiff's attempts to apply for other positions within the Company.

**ANSWER:** Maximus denies the allegations contained in Paragraph 21.

22. On multiple occasions, Rosenak and Defendant arbitrarily reassigned Plaintiff's subordinates and team members for no legitimate business purpose.

**ANSWER:** Maximus denies the allegations contained in Paragraph 22.

23. For instance, on May 20, 2020, Rosenak arbitrarily reassigned Michael Lant ("Lant"), despite the lack of legitimate business reasoning and to the operational detriment of Plaintiff and his team members.

**ANSWER:** Maximus denies the allegations contained in Paragraph 23.

---

[1] Defendant's "Human Capital" division is equivalent to the traditional "Human Resources" department

24. On October 9, 2020, Defendant removed two of Plaintiff's subordinates from a project to the detriment of Plaintiff and without consulting with, or communicating the decision to, Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 24.

25. On multiple other occasions, Defendant's agents, including Rosenak, HR Manager Kim Colback ("Colback"), Vice President Lisa Simmons ("Simmons"), all women, attempted to poach or transfer Plaintiffs team members to different supervisors and divisions for no reasonable or discernable business purpose.

**ANSWER:** Maximus denies the allegations contained in Paragraph 25.

26. On multiple occasions, Rosenak arbitrarily harassed Plaintiff's subordinates and team members.

**ANSWER:** Maximus denies the allegations contained in Paragraph 26.

27. For instance, Rosenak and her daughter, Hatley Secondo ("Secondo"), a white female, created an email group containing Plaintiff's subordinate managers without Plaintiff's inclusion or knowledge and, due to the sensitive information shared in this email group, upon finding out about the group, Plaintiff asked that his managers be removed from the group due to his subordinates' discomfort.

**ANSWER:** Maximus denies the allegations contained in Paragraph 27.

28. When Plaintiff asked that his managers be removed from the group due to the tension created by shared information, Rosenak berated Plaintiff without cause.

**ANSWER:** Maximus denies the allegations contained in Paragraph 28.

29. On multiple occasions, when Plaintiff questioned Defendant's staffing decisions as they related to Plaintiffs team members and subordinates, Defendants' agents, Rosenak, Peter Baylinson (Vice President of Finance), and Curtis Briggs (Project Director), all white employees, verbally attacked Plaintiff, resulting in undue emotional distress.

**ANSWER:** Maximus denies the allegations contained in Paragraph 29.

30. On multiple occasions, Defendant, usually through Rosenak, attempted to sabotage Plaintiff's work product.

**ANSWER:** Maximus denies the allegations contained in Paragraph 30.

31. Rosenak regularly assigned Plaintiff last-minute assignments and presentations, something that she did not do to Plaintiff's peers who were not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 31.

32. Defendant's agents and Plaintiff's superiors regularly publicly praised and rewarded similarly situated white employees for accomplishments, while never publicly praising or rewarding Plaintiff for similar or better accomplishments.

**ANSWER:** Maximus denies the allegations contained in Paragraph 32.

33. For example, after Plaintiff successfully negotiated beneficial contract terms and conditions for the struggling "LifeLine" program and during a meeting with the CEO, CFO, and other Company executives, Rosenak praised Rick DiLolio, a white male and Plaintiff's subordinate who had little involvement with the project, for his effort and mentioned potentially promoting him for the effort.

**ANSWER:** Maximus denies the allegations contained in Paragraph 33.

34. Shortly thereafter, the Company promoted DiLolio.

**ANSWER:** Maximus denies the allegations contained in Paragraph 34.

35. Plaintiff did not receive the same wages, compensation, and benefits as his similarly situated coworkers who weren't black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 35.

36. For instance, in February 2021, Plaintiff learned that he did not receive Company stock grants unlike other similarly situated employees and subordinates who were not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 36.

37. When Plaintiff asked Rosenak and Human Capital officials about the stock grants, he was ignored and not provided an explanation as to why he did not receive them.

**ANSWER:** Maximus denies the allegations contained in Paragraph 37.

38. In December 2019, Defendant cut Plaintiff's annual bonus amount by approximately $20,000.00, despite the growth of Plaintiff's customer accounts exceeding those of his similarly situated white peers.

**ANSWER:** Maximus denies the allegations contained in Paragraph 38.

39. Plaintiff later learned that in 2019, at the same time Defendant cut Plaintiff's bonus for no legitimate business reason, it raised or maintained the bonuses of many similarly situated employees who were not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 39.

40. Plaintiff's annual bonuses remain well-below bonuses he received prior to 2019.

**ANSWER:** Maximus denies the allegations contained in Paragraph 40.

41. Upon information and belief, Plaintiff received a lesser salary than similarly situated employees who are not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 41

42. Upon information and belief, Defendant compensated many of Plaintiffs white subordinates at a higher salary than it compensated Plaintiff and Defendant attempted to conceal this information from Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 42.

43. In an attempt to hide colleague salary information, Defendant excluded Plaintiff from calls where employee financials were discussed.

**ANSWER:** Maximus denies the allegations contained in Paragraph 43.

44. Plaintiff later discovered that Colleen Duke ("Duke"), a white female who worked in a lower classification, received an annual salary $15,000 greater than Plaintiff.

**ANSWER:** Upon information and belief, Maximus admits that Colleen Duke is a white female. Maximus denies the remaining allegations contained in Paragraph 44.

45. Plaintiff later discovered that DiLolio, a white male who worked in a lower classification, received an annual salary $75,000 greater than Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 45.

46. On or around September 2020, Plaintiff brought concerns about his salary to Division President Kathleen Kerr ("Kerr"), a white female, and was ignored.

**ANSWER:** Upon information and belief, Maximus admits that Kathleen Kerr is a white female. Maximus denies the remaining allegations contained in Paragraph 46.

47. Upon information and belief, despite multiple complaints to Human Capital, none of Plaintiff's initial complaints and concerns were ever addressed by the Defendant.

**ANSWER:** Maximus denies the allegations contained in Paragraph 47.

48. Defendant and its agents increasingly retaliated against Plaintiff for his involvement in the Company's internal investigations into discriminatory practices.

**ANSWER:** Maximus denies the allegations contained in Paragraph 48.

49. On or about April, 2019, Plaintiff was interviewed as part of an investigation initiated by complaints made by former employee Clyde Stith ("Stith"), an African-American male.

**ANSWER:** Maximus admits that Plaintiff was interviewed in connection with an investigation into allegations made by former Maximus employee Clyde Stith. Upon information and belief, Maximus further admits that Clyde Stith is an African American male. Maximus lacks knowledge as to the remaining allegations contained in Paragraph 49 and therefore denies the same.

50. When contacted by internal investigators, Plaintiff was assured the investigative process was confidential.

**ANSWER:** Maximus denies the allegations contained in Paragraph 50.

51. However, at some point, Rosenak became aware of Plaintiff's involvement with the investigation.

**ANSWER:** Maximus admits that Laura Rosenak was aware that Plaintiff was interviewed in connection with the investigation relating to Clyde Stith. Maximus denies the remaining allegations contained in Paragraph 51.

52. Following receipt of the information from the Stith Investigation, Rosenak took increasingly adverse action against Plaintiff, including taking multiple successful accounts from Plaintiff's portfolio.

**ANSWER:** Maximus denies the allegations contained in Paragraph 52.

53. In 2019, concurrent with the Stith Investigation, Defendant took two successful projects from Plaintiff (Lifeline and California foster care) and reassigned them to other (non-black) employees.

**ANSWER:** Maximus denies the allegations contained in Paragraph 53.

54. Plaintiff attempted to address the reassignment with the Chief of Human Capital Management and neither Michelle Link ("Link"), white female, or Kevin Black, white male, would meet with Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 54.

55. On one occasion, and in relation to Plaintiff's alleged involvement in the Stith investigation, Rosenak expressed "hurt feelings" that Plaintiff was involved with the investigation because she considered Plaintiff "hers."

**ANSWER:** Maximus denies the allegations contained in Paragraph 55.

56. Defendant's failure to maintain the confidential nature of its internal investigations Leadership's divulging of confidential information about ethics investigations has resulted in false allegations about Plaintiff's role in the investigations.

**ANSWER:** Maximus denies the allegations contained in Paragraph 56.

57. In December 2020, in a conversation with Plaintiff, Kerr admitted to previously sharing Plaintiff's confidential information from the Stith investigation with Rosenak.

**ANSWER:** Maximus denies the allegations contained in Paragraph 57.

58. During the same conversation, Kerr informed Plaintiff that both he and Stith were eventually being moved from Rosenak's supervision due to division reorganization.

**ANSWER:** Maximus denies the allegations contained in Paragraph 58.

59. Defendant regularly retaliated against Plaintiff, creating a hostile work environment and causing direct and material harm to Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 59.

60. Similarly situated non-black employees, most of whom have less experience than Plaintiff, were offered Covid-19 and Unemployment Insurance-related programs, leads, and positions.

**ANSWER:** Maximus denies the allegations contained in Paragraph 60.

61. For example, Curtis Briggs, a white male with less experience, was promoted to "Unemployment Insurance Director," and Kerr's and Rosenak's children were promoted to key Unemployment and Covid-related roles despite possessing considerably less experience as Plaintiff and despite their lack of accomplishments with the Company as compared to Plaintiff.

**ANSWER:** Upon information and belief, Maximus admits that Curtis Briggs is a white male.

Maximus denies the remaining allegations contained in Paragraph 61.

62. On one occasion, Plaintiff was involved with attempting to secure a new Unemployment-related account and Rosenak intervened and quoted the potential customer an unusually high price for Defendant's services, thus resulting in Plaintiff's failure to secure the account.

**ANSWER:** Maximus denies the allegations contained in Paragraph 62.

63. On June 14, 2020, Plaintiff discovered that he had been excluded from meetings regarding services related to Covid-19 and Unemployment projects and that Rosenak and others purposefully excluded Plaintiff from opportunities related to potential new accounts.

**ANSWER:** Maximus denies the allegations contained in Paragraph 63.

64. On July 14, 2020, Plaintiff emailed Defendant's "Ethics Hotline" regarding ongoing issues related to Defendant's discriminatory behavior.

**ANSWER:** Maximus denies the allegations contained in Paragraph 64.

65. Despite Plaintiff contacting the Company's Ethics Hotline, Defendants' discriminatory, harassing, and retaliatory behavior continued.

**ANSWER:** Maximus denies the allegations contained in Paragraph 65.

66. In contradiction of Plaintiff's previous decision to defer certain project costs, and in violation of standard operating procedure, Rosenak intervened and authorized certain "direct costs" on the "Illinois Mobile Act" project, resulting in Plaintiff's failure to meet his annual financial goal for 2020.

**ANSWER:** Maximus denies allegations contained in Paragraph 66.

67. In October, 2020, Rosenak repeatedly sent a series of unnecessary and increasingly hostile emails to Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 67.

68. In early 2021, Plaintiff applied for open vice president positions in the Human Services Workforce & Child Support division.

**ANSWER:** Maximus admits that Plaintiff applied for the following Vice President positions in 2021: VP Operations; Lead VP – Employer Services; Lead VP – Operations; Vice President; and Senior Vice President, VA/DHA Accounts. Maximus denies the remaining allegations contained in Paragraph 68.

69. In February 2021, Rosenak, contrary to Company policy, made a statement to her subordinates claiming that someone on her team had applied for a new position in the Company without her knowledge and should know that the interviewer will come to Rosenak for reference.

**ANSWER:** Maximus denies the allegations contained in Paragraph 69.

70. Following this thinly veiled threat, Plaintiff did not receive interviews for various positions for which he applied and, in some cases, withdrew his name from consideration upon learning that Rosenak would discover his attempt to transfer and likely thwart Plaintiff's attempt to do so.

**ANSWER:** Maximus denies the allegations contained in Paragraph 70.

71.     On March 12, 2021, the Defendant changed the key qualifications for four vice president positions, to the detriment of Plaintiff, after the positions had been posted and after Plaintiff had applied for the positions.

**ANSWER:** Maximus denies the allegations contained in Paragraph 71.

72.     The four "vice president" positions were filled by employees with less experience and less successful projects and Company portfolios and none of those promoted were black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 72.

73.     Among the reasons provided to Plaintiff for the decision was his involvement in the Stith investigation.

**ANSWER:** Maximus denies the allegations contained in Paragraph 73.

74.     On January 1, 2021, Defendant moved Plaintiff from Rosenak's supervision and placed him under Kelly Blashke ("Blashke").

**ANSWER:** Maximus admits that on or about January 1, 2021, Kelly Blashke became Plaintiff's direct supervisor. Maximus denies the remaining allegations contained in Paragraph 74.

75.     On April 12, 2021, Plaintiff was moved from Blashke's supervision and is currently under the supervision of Nancy Kim ("Kim"), a white female who has less experience and was hired into one of the vice president positions for which Plaintiff applied.

**ANSWER:** Maximus admits that Nancy Kim became Plaintiff's direct supervisor in April of 2021. Upon information and belief, Maximus also admits that Nancy Kim is a white female. Maximus denies the remaining allegations contained in Paragraph 75.

76.     None of the 2021 lateral moves and reorganization resulted in an increase in pay or benefits for Plaintiff.

**ANSWER:** Maximus denies the allegations contained in Paragraph 76.

77.     On April 21, 2021, Plaintiff submitted an additional ethics complaint.

**ANSWER:** Maximus denies the allegations contained in Paragraph 70.

78.     As a result of Defendant's actions, Plaintiff has suffered considerable economic loss and continues to be undercompensated in relation to his non-black peers.

**ANSWER:** Maximus denies the allegations contained in Paragraph 78.

79. As a result of Defendant's actions, Plaintiff has suffered injury to his mental health and considerable emotional distress that has resulted in the need to seek regular counseling and assistance.

**ANSWER:** Maximus denies the allegations contained in Paragraph 79.

80. On or about, March 2, 2021, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging Defendant discriminated against him based on his race (black) and gender (male). See Exhibit "A".

**ANSWER:** Maximus admits that Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2021-02671, on or about May 12, 2021 (the "Charge"). Maximus further admits that Plaintiff's Charge contains allegations of race discrimination. Maximus denies that Plaintiff was subjected to any discrimination during his employment with Maximus, and Maximus further denies the remaining allegations contained in Paragraph 80.

81. On May 19, 2021, the EEOC issued its Notice of Right to Sue and Plaintiff timely filed this action. See Exhibit "B".

**ANSWER:** Maximus admits that the EEOC issued a Dismissal and Notice of Rights dated May 19, 2021. Maximus denies the remaining allegations contained in Paragraph 81.

## COUNT I

### (Title VII – Alleged Discrimination Based on Race and Sex)

82. Allegations stated supra are hereby re-alleged as if fully set forth herein.

**ANSWER:** Maximus' answers to the allegations stated above are incorporated as if fully set forth herein.

83. Pursuant to 42 U.S.C. § 2000e-2, it is unlawful for an Employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color. religion, sex, or national origin.

**ANSWER:** Paragraph 83 states a legal conclusion for which no answer is required. To the extent Paragraph 83 contains any allegations of fact, Maximus respectfully refers the Court to the cited statute for its complete content and meaning, Maximus denies that it violated 42 U.S.C. § 2000e-2 or any other statute, and Maximus denies the remaining allegations contained in Paragraph 83.

84. Since on or about 2017, and escalating thereafter, Defendant has engaged in unlawful practices in violation of the Act by treating him disparately than similarly situated employees who were not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 84.

85. Specifically, Defendant failed to properly compensate Plaintiff and provide him the same conditions and privileges of employment offered to employees who were not black males.

**ANSWER:** Maximus denies the allegations contained in Paragraph 85.

86. By depriving Plaintiff of these employment opportunities because of his race and sex, Defendant violated 42 U.S.C. § 2000e-2.

**ANSWER:** Maximus denies the allegations contained in Paragraph 86.

87. Defendant's discriminatory actions have caused Plaintiff to suffer a loss of earnings and benefits, thwart his career advancement, and caused pain, humiliation, and considerable mental anguish.

**ANSWER:** Maximus denies the allegations contained in Paragraph 87.

88. The discrimination against Plaintiff violated Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2.

**ANSWER:** Maximus denies the allegations contained in Paragraph 88.

89. This discrimination caused Plaintiff to suffer actual and compensatory damages.

**ANSWER:** Maximus denies the allegations contained in Paragraph 89.

90. Because Defendant and its agents acted purposefully, with malice, and with reckless disregard for Plaintiffs protected rights, the discrimination was intentional and in willful disregard for Plaintiff's civil rights, punitive damages are warranted.

**ANSWER:** Maximus denies the allegations contained in Paragraph 90.

## COUNT II

### (Alleged Harassment and Retaliation)

91. Pursuant to the Act, an employee who alleges employment discrimination or who assists in the investigation of alleged employment discrimination is protected from retaliatory action by their employers.

**ANSWER:** Maximus denies the allegations contained in Paragraph 91.

92. Defendant has engaged in unlawful and escalating patterns of retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by raking adverse actions against Plaintiff because he opposed nepotistic and discriminatory practices, participated in an internal ethics investigations related to allegations of disparate treatment of a black, male employee, and initiated his own internal complaints regarding Defendant's discriminatory actions.

**ANSWER:** Maximus denies the allegations contained in Paragraph 92.

93. The effect of the events described above has been to deprive Plaintiff of equal employment opportunities in retaliation for exercising his federally protected rights.

**ANSWER:** Maximus denies the allegations contained in Paragraph 93.

94. The unlawful employment practices described above were intentional.

**ANSWER:** Maximus denies the allegations contained in Paragraph 94.

95. The unlawful employment practices described above were done with malice or with reckless indifference to Plaintiff's federally protected rights.

**ANSWER:** Maximus denies the allegations contained in Paragraph 95.

96. Further, Defendant's failure to address and correct its agents' intentional and harassing behavior has caused Plaintiff to be subjected to escalating patterns of harassment and disparate treatment resulting in a hostile work environment.

**ANSWER:** Maximus denies the allegations contained in Paragraph 96.

97. By retaliating against Plaintiff because he engaged in protected activity, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3.

**ANSWER:** Maximus denies the allegations contained in Paragraph 97.

98. This retaliation caused Plaintiff to suffer actual and compensatory damages.

Because the retaliation was intentional and in willful disregard for Plaintiff's civil rights, punitive damages are warranted.

**ANSWER:** Maximus denies the allegations contained in Paragraph 98.

## COUNT III

### (Equal Pay Act)

99. Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

**ANSWER:** Maximus' answers to the allegations stated above are incorporated as if fully set forth herein.

100. Defendant is an employer within the meaning of the Equal Pay Act, as amended.

**ANSWER:** Paragraph 100 states a legal conclusion for which no answer is required. To the extent Paragraph 100 contains any allegations of fact, Maximus admits the allegations contained in Paragraph 100.

101. Pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), Defendant is required to pay Plaintiff the rate of pay equal to the rate of pay given to employees of the opposite sex for equal work, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

**ANSWER:** Paragraph 101 states a legal conclusion for which no answer is required. To the extent Paragraph 101 contains any allegations of fact, Maximus respectfully refers the Court to the cited statute for its complete content and meaning, Maximus denies that it violated the 29 U.S.C. § 206(d) or any other statute, and Maximus further denies the remaining allegations contained in Paragraph 101.

102. Defendant violated the Equal Pay Act by failing to pay Plaintiff equal to his female coworkers performing the same job.

**ANSWER:** Maximus denies the allegations contained in Paragraph 102.

103. As a direct result of the violation, Plaintiff has suffered actual damages.

**ANSWER:** Maximus denies the allegations contained in Paragraph 103.

## COUNT IV

### (Alleged Race Discrimination)
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

104. Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

**ANSWER:** Maximus' answers to the allegations stated above are incorporated as if fully set forth herein.

105. Plaintiff, as an African-American, is a member of a protected class based on race.

**ANSWER:** Upon information and belief, Maximus admits that Plaintiff is an African American. Maximus denies the remaining allegations contained in Paragraph 105.

106. Plaintiff performed his job satisfactorily at all times employed by Defendant.

**ANSWER:** Maximus denies the allegations contained in Paragraph 106.

107. Defendant failed to properly compensate, failed to promote and disparately treated Plaintiff because of his race and because of his involvement in an investigation into Defendant's alleged racial discrimination.

**ANSWER:** Maximus denies the allegations contained in Paragraph 107.

108. By the conduct described above, Defendant deprived Plaintiff, an African-American, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

**ANSWER:** Maximus denies the allegations contained in Paragraph 108.

109. As a result of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

**ANSWER:** Maximus denies the allegations contained in Paragraph 109.

110. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

**ANSWER:** Maximus denies the allegations contained in Paragraph 110.

## **AFFIRMATIVE AND OTHER DEFENSES**

Without assuming the burden of proof as to any of the following defenses where the law does not impose such burden on Maximus, Maximus asserts the following defenses:

1. Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

2. At all relevant times hereto, Maximus had a specific policy against unlawful discrimination, harassment, and retaliation, and such policy was well-known to Maximus' employees.

3. To the extent that Plaintiff has made allegations in the Complaint or attempts to assert claims which relate to alleged acts of discrimination, harassment, or retaliation not encompassed within the charge of discrimination filed with and investigated by the EEOC or any appropriate state or local agency, such claims are barred for failure to exhaust administrative remedies. 42 U.S.C. § 2000e-5(e)(1).

4. To the extent that Maximus learns that Plaintiff engaged in wrongdoing which would have led to his termination of employment, Plaintiff's damages are limited by the doctrine of after-acquired evidence.

5. To the extent that Plaintiff establishes liability against Maximus, the amount of compensatory and punitive damages is limited as provided by law.

6. Maximus engaged in good-faith efforts to comply with Title VII and all other applicable laws, and therefore cannot be liable for punitive damages. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

7. To the extent Plaintiff seeks to recover for alleged discrimination, harassment, or retaliation which occurred more than 300 days before he filed his charge of discrimination with the EEOC, such claims are time-barred and should be dismissed.

8. Plaintiff's claim for damages must be eliminated or reduced to the extent that he is, has been, or will be compensated from collateral sources.

9. To the extent that Plaintiff failed to mitigate any of his claimed injuries or damages by failing to seek new employment or otherwise, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his claimed injuries or damages, commensurate with the degree of failure to mitigate attributed to Plaintiff.

10. Assuming, *arguendo*, that Plaintiff can establish that any protected category or alleged protected activity played any part in Maximus' decisions relative to Plaintiff's employment—which Maximus denies—Maximus would have undertaken the same course of action even in the absence of any unlawful consideration.

11. Any alleged damages sustained by Plaintiff, if any, were proximately caused and occasioned by the acts and omissions of Plaintiff, said acts and omissions being the sole cause of Plaintiff's alleged damages. Therefore, Maximus pleads the intervening acts and omissions of Plaintiff as a complete bar to Plaintiff's claims against Maximus.

12. Plaintiff is estopped from claiming damages to the extent such alleged damages are associated with the separation of his employment from Maximus, because he voluntarily resigned that employment.

13. Although Maximus denies that Plaintiff was exposed to a hostile work environment, Maximus asserts that it exercised reasonable care to prevent and correct promptly any harassing behavior by its employees, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunity provided or to avoid harm otherwise.

14. To the extent Plaintiff complained to Maximus about alleged unlawful treatment, Maximus took immediate and adequate steps to investigate Plaintiff's complaints.

15. Maximus expressly reserves the right to amend its Answer and Affirmative Defenses to Plaintiff's Complaint, and to assert any additional defenses discovered as a result of its own investigation or formal discovery in this action.

Dated: November 19, 2021

Respectfully Submitted,

**MAXIMUS, INC.**

*/s/ Kathryn Montgomery Moran*
One of Its Attorneys

Kathryn Montgomery Moran
J. Casey Leech
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Fax: (312) 787-4995
kathryn.moran@jacksonlewis.com
casey.leech@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on November 19, 2021, she caused a true and correct copy of the foregoing **Defendant's Answer and Defenses to Plaintiff's Complaint** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

*/s/ Kathryn Montgomery Moran*
