## UNITED STATES OF AMERICA
## IN THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE FRANKLIN | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 1:21-CV-04367 |
| | ) | |
| v. | ) | Marvin E. Aspen |
| | ) | District Judge |
| MAXIMUS, INC., MAXIMUS | ) | |
| HUMAN SERVICES, INC., AND | ) | Jeffery T. Gilbert |
| MAXIMUS SERVICES LLC | ) | Magistrate Judge |
| | | |
| Defendants. | | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

COMES NOW Maurice Franklin, Plaintiff, by and through the undersigned

counsel, and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files this

Amended Complaint against Maximus, Inc., Maximus Services, LLC ("MS"), and

Maximus Human Services, Inc. ("MHS") (collectively "Defendants"), for

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,

the Civil Rights Act of 1991, 42 U.S.C. § 1981, Family and Medical Leave Act, 29

U.S.C. § 2611 et seq. and intentional infliction of emotional distress,

## JURISDICTION

1.

1

This is an action for declaratory and injunctive relief and monetary and punitive damages to redress Defendants' deprivation and interference with Plaintiff rights under the Title VII of the Civil Rights Act of 1,964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq. during Plaintiff's employment with Defendants.

## PARTIES

2.

Plaintiff is a citizen of the State of Illinois.

3.

Defendants' principal place of business is 1891 Metro Center Drive, Reston, VA 20190.

4.

MS is a citizen of the State of Delaware.

5.

MHS is a citizen of the Commonwealth of Virginia.

6.

Maximus, Inc. is either a citizen of the Commonwealth of Virginia or the State of Delaware.

2

JURISDICTION

7.

The jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, 1332.

VENUE

8.

Plaintiff resides in Cook County, Illinois.

9.

Maximus, Inc. conducts business in Cook County, Illinois.

10.

MS conducts business in Cook County, Illinois.

11.

MHS conducts business in Cook County, Illinois.

12.

Venue in this court is proper.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.

On May 12, 2021, Franklin filed Charge of Discrimination #440-2021-02671 with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("Commission"). See Plaintiff's Exhibit A.

3

14.

Franklin's Charge of Discrimination alleged that Defendants subjected him to different terms and conditions because of his race.

15.

Franklin's Charge of Discrimination alleged that Defendants subjected him to retaliation for participating in activities protected by Title VII.

16.

On May 19, 2021, the Commission issued a Dismissal and Notice of Rights which notified Franklin that he had 90 days by which to initiate a lawsuit. See Plaintiff's Exhibit B.

17.

On August 17, 2021, Franklin filed a Complaint [Doc. #1] in the United States District Court for the Northern District of Illinois, Eastern Division.

18.

Franklin's complaint was filed within 90 days of his receipt of the Dismissal and Notice of Rights.

19.

Franklin exhausted his administrative remedies prior to commencing the instant action.

FACTUAL ALLEGATIONS

20.

Maximus, Inc. is a for-profit corporation incorporated in 1975.

21.

Maximus, Inc. is a leading operator of government health and human services programs globally.

22.

Maximus, Inc.'s primary portfolio of work is tied to business process services in the health and human services markets.

23.

Maximus, Inc. provides services to government agencies in the United States, Australia, Canada, Saudi Arabia, Singapore, Italy, Sweden, South Korea, and the United Kingdom.

24.

In 2006, Maximus, Inc. started Maximus Human Services, Inc., a wholly owned subsidiary of Maximus, Inc.

25.

MHS is a provider of child support enforcement, welfare-to-work business process services to state and local governments in the United States.

26.

Kathleen Kerr ("Kerr") is the president of MHS and MS.

27.

Laura Rosenak ("Rosenak") is a senior vice president for the Defendants.

28.

Rosenak was Franklin's manager from April 30, 2012, until January 2, 2021.

29.

Rosenak joined Maximus Human Services, Inc. in 2012 as Senior Vice President over MHS' child support services contracts with state governments across the United States.

30.

Rosenak's sex is female.

31.

Rosenak's race is white.

32.

Rosenak is not Hispanic.

33.

In addition to her child support enforcement contacts, in 2016, Rosenak assumed oversight over MHS' benefits and eligibility advocacy services (BEAS),

6

the company's contracts to provide application and advocacy for Supplement

Security Income (SSI) benefits to children in foster care and adult receipts of

Temporary Assistance to Needy Families.

34.

MHS hired Franklin for the position of Supervisor – Case Management on

or about August 25, 2008. Plaintiff's Exhibit C.

35.

Franklin's employment with Defendants was one of an "at-will"

employment.

36.

Franklin's at-will employment with Defendant's was a contract.

37.

In 2018, Franklin was a vice president for Defendants, managing child

support, eligibility, and other contracts for Defendants.

38.

Kelly Blaschke Treharne, Senior Vice President, was Plaintiff's manager

from January 3, 2,021, until May 1, 2,021.

39.

Blaschke Treharne's gender is female.

7

40.

Blaschke Treharne's race is white.

41.

Blaschke Treharne's gender is female.

42.

Nancy Kim ("Kim"), Vice President, was Plaintiff's manager from May 2, 2,021 until his termination on October 9, 2,021.

43.

Kim's race is white.

44.

Kim's sex is female.

45.

Rosenak rated Plaintiff's performance as "Above Expectations" on his fiscal year 2018 management bonus plan performance evaluation. See Plaintiff's Exhibit D.

46.

On Plaintiff's fiscal year 2018 management bonus plan performance evaluation, Rosenak wrote, "Maurice's clients – those that he re regularly interact

with absolutely value his leadership and knowledge and he is a 'go to' perform for those clients." Id.

47.

On Plaintiff's fiscal year 2018 management bonus plan performance evaluation, Rosenak wrote, "Maurice truly inspires not only his own team, but the leadership team." Id.

48.

On Plaintiff's fiscal year 2018 management bonus plan performance evaluation, Rosenak wrote, "Maurice is beyond reproach in his integrity." Id.

49.

Rosenak rated Plaintiff's performance as "Meeting/Exceeding Expectations" on his fiscal year 2020 management bonus plan performance evaluation without further comment. See Plaintiff's Exhibit E.

50.

In or around mid-2018, Clyde Stith ("Stith") filed a complaint with Defendants alleging that Rosenak subjected him to disparate treatment based on his race.

51.

Stith made allegations that Rosenak subjected him to discrimination by using race as a factor when selecting individuals for promotional opportunities.

52.

Defendants initiated an investigation into Stith's allegations against Rosenak.

53.

In response thereto, Rosenak made a complaint to Defendant's against Stith, alleging that he hostile towards her, berated her, and refused to comply with requests.

54.

Defendants commenced an investigation of Rosenak's allegations against Stith.

55.

Franklin was interviewed by investigators regarding his knowledge and observations of Stith's interactions with Rosenak.

56.

Franklin told the investigators that he had no knowledge of the behaviors reported by Rosenak about Stith and wanted to be left out of the matter entirely.

57.

In or around October 2019, Rosenak had a conversation with Franklin wherein they discussed the investigation into Rosenak's allegations against Stith.

58.

During their conversation, Rosenak express disappointment that Franklin has not corroborated her story about Stith and told Franklin that she had considered Franklin to be "mine."

59.

Thereafter, Rosenak made false claims that it was Franklin who brought up the investigation of Stith to her in airport.

60.

Rosenak subjected Franklin to a series of retaliatory acts that he would detail in his ethics complaints to the company.

61.

Franklin spoke to Kerr via telephone to raise concern about Rosenak learning the substance of his statements to the investigators that were investigating Rosenak's allegations concerning Stith's alleged inappropriate behavior.

62.

Franklin asked Kerr if she disclosed his statements disavowing knowledge of the behavior Rosenak alleged she was enduring from Stith.

63.

Upon information and belief, Kerr told Franklin that she had not spoken to Franklin to be able to acquire knowledge of his statements to the investigators.

64.

During the call with Rosenak in which she confronted Franklin about not corroborating the allegations she made against Stith, upon information and believe, Rosenak told Franklin that she acquired the information concerning Franklin's statement from Kerr.

65.

Franklin told Kerr that Rosenak was not being honest when she said that she and Franklin encountered each other in the Los Angeles Airport wherein Franklin brought the subject of the Stith investigation up to Laura.

66.

Franklin raised concern to Kerr about the fact that Rosenak told Colbeck the same fabricated story while crying, all while knowing that the story was completely fabricated.

67.

Franklin told Kerr that he was been excluded from meetings, left off of emails, and written out of rebids since Rosenak approached Franklin about his statements to the Stith investigators.

68.

Franklin told Kerr the Colleen Mathias told him that Rosenak said she was disappointed in Franklin for not corroborating her story.

69.

Franklin told Kerr that staff are afraid of Rosenak because they fear that she will retaliate against them and that they would lose their job.

70.

Franklin told Kerr that he felt as if he has been mistreated by Rosenak and has not had the same advantages as other staff.

71.

As an example of the types omissions he endured, Franklin told Kerr her the Mathias was presenting child support business development opportunities to the segment general manager.

72.

Franklin told Kerr that after he and Rosenak's call with Colbeck, Rosenak was enraged, making allegations that Franklin had a reputation for taking excessive executive time off without notice.

73.

Franklin told Kerr that he ran a report of his time off and working hours. The report indicated Franklin had worked 1,748 hours so far that year and had taken 10 days off, six of which were holidays.

74.

Kerr disclosed to Franklin that Rosenak had raised a concern about Franklin during a recent conversation between to her.

75.

Upon information and belief, Kerr asked Franklin what he wanted. In response, Franklin told her that he wanted a non-hostile working environment the way it used to be.

OVERSIGHT OF CA LIFELINE PROJECT STAFF

76.

MHS operates the California (CA) Lifeline Project.

77.

14

The California (CA) Lifeline Project provides discounted home phone and cell phone services to qualified households.

78.

MHS functions as a third-party administrator for the California Public Utilities Commission ("CPUC") to facilitate enrollment processes to all potential program customers, through outreach, eligibility, enrollment, and call center support.

79.

MHS began the CA Lifeline Project on or around April 1, 2019.

80.

MHS' initial contract with CPUC expired on March 31, 2021.

81.

MHS submitted a proposal to rebid its contract with CPUC to extend the CA Lifeline Project beyond March 31, 2021.

82.

MHS' contract with CPUC to perform the CA Lifeline Project is a fee for service contract valued at an estimated $37,515,480.67.

83.

Franklin was responsible for providing oversight over the CA Lifeline Project. <u>See</u> Plaintiff's Exhibit F.

On their website, Defendants stated, "Maurice leads operations for our child support services programs. His teams support critical state and local projects, including Illinois child support, the California Lifeline program, and the California SSI/SSDI assessment and advocacy programs for homeless adults and children in foster care. <u>See</u> Plaintiff's <u>Exhibit</u> G.

84.

According to Defendant's website, "Maurice leads operations for our child support services programs. His teams support critical state and local projects, including Illinois child support, the California Lifeline program, and California SSI/SSDI assessment and advocacy programs for homeless adults and children in foster care." <u>See</u> Plaintiff's Exhibit H.

85.

On September 18, 2019, Rosenak sent an email to Colbeck, Baylinson, and Franklin that described the staff roles and responsibilities on the CA Lifeline Project. Plaintiff's <u>Exhibit</u> I.

86.

Rosenak's September 18, 2019, email described Franklin's role in the CA Lifeline Project as "Executive Oversight, Policy and Pilots, and Outreach." Id.

87.

The staff assigned to the CA Lifeline Project reported to Franklin.

88.

In its July 2020 proposal to rebid the CA Lifeline Project, MHS identified Franklin as the CA Lifeline Project's "Contract Manager VP." Plaintiff's Exhibit J.

89.

Reiber was assigned to the CA Lifeline Project as Project Deputy Director from 2018 until May 30, 2021.

90.

In his role on the CA Lifeline Project, Reiber was responsible for providing support to Graettinger for carrier coordination and support to Duke for client relation, preparation of materials for meetings, invoice reconciliation, and compliance reviews.

91.

While assigned to the CA Lifeline Project, Reiber's functioned on the project a service provider liaison.

92.

Effective December 1, 2019, Reiber's annual salary was $129,667.20.

93.

Effective December 27, 2020, Reiber's annual salary was $131,671.21.

94.

Reiber's race is white.

95.

In 2020, Defendants paid Duke approximately $135,000.00.

96.

Duke's race is white.

97.

Duke's principal role with Defendants was to serve as project manager for the CA Lifeline Project.

98.

In 2020, Defendants paid Rick Dillio an annual salary of approximately $170,000.00.

99.

Dillio's race is white.

100.

Duke reported to Franklin on the CA Lifeline Project.

101.

Reiber reported to Franklin on the CA Lifeline Project.

102.

Duke reported to Franklin on the CA Lifeline Project.

103.

Franklin managed a portfolio of projects for Defendants.

104.

Duke managed the CA Lifeline Project under Franklin's executive oversight.

105.

Reiber did not manage any projects for Defendants.

106.

Dillio did not manage or oversee any projects for Defendants.

107.

Graettinger did not manager or oversee any projects for Defendants.

108.

Franklin's annual salary in 2018-2021 was less than the salaries of Duke, Reiber, Dillio, and Graettinger.

109.

On January 1, 2018, Defendants set Franklin's annual salary at $102,000.00.

<u>See</u> Plaintiff's <u>Exhibit</u> K.

110.

On December 30, 2018, Defendants set Franklin's annual salary at $120,000.00. <u>Id</u>.

111.

On December 29, 2019, Defendants set Franklin's annual salary at $124,000.00. <u>Id</u>.

112.

Rosenak and Baylinson initially included the CA Lifeline Project in Franklin's financial package demonstrating the financial performance of his projects for FY20.

113.

Despite Franklin's management and oversight of the CA Lifeline Project and its staff, Rosenak did not officially list the project as reporting to Franklin in Defendants' system.

114.

By not listing Franklin as the executive over the CA Lifeline Project in Defendants' system, the project's financial records (and salary information for its staff) would not be distributed to Franklin.

115.

Rosenak's refusal to officially list Franklin as the executive over the CA Lifeline Project was a purposeful attempt to conceal from Franklin the fact that individuals reporting to him were being compensated with salaries that exceed his salary.

116.

While assigned to the CA Lifeline Project, Reiber was responsible for day-to-day communications and coordination with carriers, interaction with the client and IT, and communications, meetings, and materials related to carriers.

117.

Jim Graettinger ("Graettinger") was assigned to the CA Lifeline Project.

118.

While assigned to the CA Lifeline Project, Graettinger was a service provider liaison.

119.

While assigned to the CA Lifeline Project, Graettinger was responsible for day-to-day communications and coordination with carriers, interaction with the client and IT, and communications, meetings, and materials related to carriers.

120.

The CA Lifeline Project was among those projects listed in Franklin's portfolio in his FY21 Strategy & Operating Plans. See Plaintiff's Exhibit L.

121.

In its 2017 proposal to be selected to perform the CA Lifeline Project, MHS identified Franklin as the "Contract Manager" with all project level staff ultimately reporting to him. See Plaintiff's Exhibit M.

122.

Graettinger was listed in MHS' 2017 CA Lifeline proposal at a "Liaison to Service Providers," who was to report to the project's operations manager, T. Broff, who was to report to the project's program manager, S. Clark, who was to report to the contract manager, Franklin. Id.

22

On December 16, 2020, Kerr sent Franklin a text message to schedule a meeting with him to discuss the staff reorganization that she was planning. See Plaintiff's Exhibit N.

LEAD VICE PRESIDENT POSITIONS

123.

Kerr assigned Boerner to assist Blaschke Treharne with the reorganization and development of the lead vice president position descriptions.

124.

In early 2021, the Human Services Workforce and Child Support group announced that it was reorganizing its leadership staff by creating four lead vice presidents positions that would report to the group's senior vice president, Blaschke Treharne.

125.

Defendants posted a position announcement for a Lead Vice President – Employer Services reporting to Blaschke Treharne. See Plaintiff's Exhibit O.

126.

The Lead Vice President – Employer Services position minimally required a bachelor's degree in a related field from an accredited college or university required. Id.

23

127.

Blaschke Treharne held a call with the vice presidents that reported to her to discuss the lead vice president position announcements. During that call, Blaschke Treharne advised the potential candidates for the positions that experience can be substituted for education.

128.

Franklin met or exceeded the requirements for the Leave Vice President – Employer Services position.

129.

The EEO statement in the Lead Vice President – Employer Services position posting did not state that Maximus provides equal employment opportunities to all qualified applicants without regard to their participation in conduct protected by Title VII.

130.

In early 2021, Defendants posted a position announcement for a Lead VP – Operations reporting to Blaschke Treharne. See Plaintiff's Exhibit P.

131.

The Lead VP – Operations position required "[p]roven experience in Workforce Services and/or Child Support" and executive level experience. Id.

132.

The Lead VP – Operations position's minimum requirements included a Bachelor's degree from an accredited college or university; Master's degree in a related field preferred; a minimum five years' experience in management position in a health or human services related; excellent organizational, and interpersonal, written and verbal communication skills; ability to perform comfortably in a fast paced, deadline oriented work environment; the ability to successfully execute many complex tasks simultaneously; ability to work as a team member as well as independently; excellent people management; demonstrated ability to manage large scale projects; computer literate; preferred qualifications include proven ability establishing and maintaining relationships with community groups, including stakeholder and advocacy organizations. Id.

133.

Franklin met or exceeded the requirements for the Lead Voice President – Operations.

134.

Blaschke Treharne initially instructed candidates considering applying to any of the four lead vice president positions to only apply to a single lead vice president position opening.

135.

Blaschke Treharne subsequently advised the candidates for the lead vice president positions that they were authorized to apply for two lead vice president positions.

136.

Franklin applied for the Lead Vice President – Employer Services.4

137.

After his application for the Lead Vice President – Employer Services position, Franklin additionally applied for the Lead Vice President – Operations position.

138.

On February 26, 2021, Franklin participated in an interview with Blaschke Treharne, Kevin Black, Senior Vice President, Human Resources, and Harold Horton, Senior Vice President, Maximus Higher Education Consulting.

139.

On or about April 6, 2021, Blaschke Treharne called Franklin to inform him that Nancy Kim had been selected for the Lead Vice President – Employer Services.

140.

Blaschke Treharne told Franklin that the four lead vice president positions had been filled by Lisa Simmons, Rachel Zietlow, Nancy Kim, and Kelly Boerner, all of whom are female.

141.

Upon information and belief, Blaschke Treharne told Franklin that he needed to get more experience and exposure and just keep building on what he was doing in order to be promoted to a leadership role in the future.

142.

When Franklin asked Blaschke Treharne what specific exposure did she believe he was deficient, upon information and belief, Blaschke Treharne responded by telling Franklin that he needed to continue to work in a senior role and work on special projects at the corporate level and across the entire practice.

143.

In response, Franklin told Blaschke Treharne that he had already had the kind of exposure that she spoke of. Upon information and belief, Blaschke Treharne told him that he "absolutely" did have the kind of exposure, but she wanted him to get more.

144.

Franklin was featured on Defendant's website in an article wherein he discussed his insight into running effective program operations. See Plaintiff's Exhibit Q.

145.

Franklin told Blaschke Treharne that he was the most experienced executive with child support experience yet leadership was writing Zietlow in as the executive selected to lead new the projects in new bid proposals. Franklin reminded BT that when Maximus acquired Public Studies, Inc., those projects were failing and he was the one who turned those projects around.

146.

In response to Blaschke Treharne detail of the specific exposure Franklin needed to be promoted into a leadership vice president role, Franklin told her that he believed that he has already done the things that she identified.

147.

During his April 6, 2021, call with Blaschke Treharne, Franklin observed that Boerner was selected for the Lead Vice President - Operations position after having a significant role in developing the lead vice president job descriptions which gave her an unfair advantage for the lead vice president position that she was ultimately selected to fulfill.

148.

During his April 6, 2021 call with Blaschke Treharne, Franklin told her that he felt that he was not selected for the lead vice president – employer services position because of his race and gender and in retaliation for taking a position against Rosenak's unethical practices that were against Defendants' policy.

In response to Franklin's assertion that he had the experience that she spoke of, upon information and belief, Blaschke Treharne told Franklin that he absolutely had.

149.

During their April 6, 2021, call, Franklin disclosed to Blaschke Treharne that he did felt that, as an African American man, there was no opportunity to grow any further in the company.

150.

During his April 6, 2021 call with Blaschke Treharne, Franklin told her that he did not understand why every time there was an opportunity for him to advance in his career, management managed to identify an excuse to delay or deny his advancement. He further noted the denial of advancement opportunities did not

start until made complaints about unethical practices he observed from Rosenak and Kerr.

151.

Franklin told Blaschke Treharne that he applied for 14 internally posted positions when he reported to Rosenak and was not selected for a single position.

152.

Franklin told Blaschke Treharne the stress and mental abuse that he was subjected to by the Defendants caused him to seek counseling from a psychiatrist for the first time in his life.

153.

Franklin told Blaschke Treharne that he believed that moved from Rosenak's organization, where he believed that he was a stronger contender for promotion, to Blaschke Treharne's organization, where his candidacy for promotion would be weaker, was orchestrated with the intent to deny him further advancement.

154.

Franklin told Blaschke Treharne that he had gone years being underpaid and overlooked but he kept focusing on is work because he had a passion for growing the business.

155.

Franklin told Blaschke Treharne that he understands now that only women get promoted at Maximus.

156.

Franklin told Blaschke Treharne that he received calls from Colbeck to remind him that Rosenak would likely be contacted by the hiring manager to solicit her blessing before he could be selected for a different position with the company.

157.

On April 8, 2021, Franklin exchanged email with Horton seeking feedback from his interview for the Lead Vice President – Employer Services position.

158.

Franklin informed Horton that he was not selected for the position.

159.

Horton told Franklin that he "was not involved in the decision making. I was just an interviewer, so I do not know the specifics and details around the decision. I thought your interview was impressive and I would be happy to provide perspective on the interview which was the only part that I was involved in." See Plaintiff's Exhibit R.

160.

Effective May 1, 2021, Defendants reassigned Franklin to reported to Kim.

## ETHICS COMPLAINTS

### 161.

On or about April 12, 2021, Franklin filed an ethics complaint with Defendants, alleging that the hiring process for the leave vice president position was inequitable and discriminatory on the basis of gender. See Plaintiff's Exhibit S.

### 162.

On or about April 27, 2021, Franklin filed an ethics complaint with Defendants alleging that Defendants subjected him disparate treatment based on his race and gender and retaliation for activity protected by Title VII when Defendant's failed to promote him to either the Lead Vice President – Employer Services or Lead Vice President – Operations positions. See Plaintiff's Exhibit T.

### 163.

Franklin's April 27th ethics complaint noted violations of the Defendants' fair hiring policies. Id.

### 164.

Franklin's ethics complaint further alleged that he had been subjected to discriminatory racial harassment. Id.

### 165.

Franklin's ethics complaint detail Rosenak's scheme to conceal the fact that she was compensating Franklin's subordinate staff at a higher rate than he was compensated. Id.

166.

Franklin's ethics complaint detailed specific instances in which rose neck had subjected him to a hostile work environment or took actions in retaliation from that supporting her allegations against Stith. Id.

167.

Franklin detailed in his ethics complaint a situation in which rose neck attempted to get Franklin to admit to a spurious allegation of sexual harassment concocted by a subordinate staff in an attempt to get Franklin fired to assume his position. Id.

168.

Franklin detailed the removal of his projects and the ongoing effort to exclude him from rebids and business capture opportunities. Id.

169.

Franklin concluded his ethics complaint by stating that he did not feel support from his local leadership and was not comfortable that HR is going to intervene. Id.

170.

On or about June 1, 2021, Franklin, through his counsel, Matt Carpenter of the CTM Legal Group, LLC, sent Defendant's correspondence detailing various violations of federal civil rights laws by the Defendants.

171.

On or about July 16, 2021, Defendants, through their counsel, Nathalie M. Ohanian, responded the Franklin's June 1st letter, refuting his allegations of discrimination and retaliation. See Plaintiff's Exhibit U.

172.

In her July 16, 2021, letter, Ohanian wrote, "given the allegations in your letter, it is clear that Mr. Franklin does not see his current work environment as being positive or productive. To that end, we agree that it is best for both parties to part ways and amicably and look forward to speaking with you to explore possible options." Id.

173.

On or about July 1, 2021, Franklin submitted a request for leave under the

Family and Medical Leave Act for his own serious health condition.

Franklin has begun to

## COUNT I
## RETALIATORY DISCHARGE FOR COMPLAINING ABOUT EMPLOYMENT PRACTICES MADE UNLAWFUL BY TITLE VII
174.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

175.

Defendants terminated Plaintiff's employment in retaliation for ethics

complaints filed by the Plaintiff on April 12, 2021, and April 27, 2021, alleging

Defendants discriminated against Plaintiff on the basis of his race, gender, and in

retaliation for opposing Rosenak's attempt to further discriminate against Stith on

the basis of his race by proffering false allegations against Stith.

176.

Plaintiff's April 12, 2001 and April 27, 2001 ethics complaints we're

protected activities under Title VII.

177.

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

178.

As a result of defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT II
## RETALIATORY DISCHARGE FOR PARTICIPATION
## IN ACTIVITY PROTECTED BY TITLE VII

179.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

180.

Defendants terminated Plaintiff's employment in retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission and for filing the instant action in the Northern District of Illinois.

181.

Plaintiff's filing of a Charge of Discrimination and filing an lawsuit alleging violations of Title VII constitute participation in activities protected by Title VII.

182.

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

183.

As a result of defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

COUNT III
PUNITIVE DAMAGES FOR RETALIATORY DISCHARGE FOR
COMPLAINING ABOUT EMPLOYMENT PRACTICES MADE UNLAWFUL
BY TITLE VII
184.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

185.

Defendants terminated Plaintiff's employment because of complaints made by Plaintiff alleging that Defendants subjected him to discriminatory treatment on the basis of his race and gender and retaliated against him for opposing employment practices may unlawful by Title VII.

186.

Defendants involuntarily terminated Plaintiffs employment.

187.

Defendants have yet to proffer any substantive reason for terminating Plaintiff's employment.

188.

Defendants agents made statements suggesting that Defendants terminated Plaintiffs employment because of complaints that Plaintiff made alleging that the Defendant had engaged in employment practices made unlawful by Title VII.

189.

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

190.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT IV
## PUNITIVE DAMAGES FOR RETALIATORY DISCHARGE FOR PARTICIPATION IN ACTIVITY PROTECTED BY TITLE VII

191.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

192.

Defendants terminated Plaintiff's employment because he filed a Charge of Discrimination and the instant lawsuit, both alleging that defendants engaged in employment practices made unlawful Title VII.

193.

Defendants terminated Plaintiff's employment in the face of a perceived risk that is actions will violate federal law.

194.

Defendants' actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

195.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

COUNT V

## DISPARATE TREATMENT BASED ON RACE IN VIOLATION OF TITLE VII
(Pay Disparity)

196.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

197.

Defendants discriminated against the plaintiff based upon his race by paying him at lower rate than individuals who were either subordinate to or a direct report of the Plaintiff.

198.

Plaintiff's race is black.

199.

Defendants discriminated against the Plaintiff by paying Plaintiff's CA Lifeline Project staff who were not in Plaintiff's protected class a greater salary than that of the Plaintiff.

200.

Defendants attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate than his direct reports by refusing to officially designated the plaintiff as those individuals manager despite each reporting to Plaintiff operationally.

201.

40

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

202.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT VI
## PUNITIVE DAMAGES FOR DISPARATE TREATMENT BASED ON RACE IN VIOLATION OF TITLE VII (Compensation)

203.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

204.

Defendants knowingly and purposely discriminated against Plaintiff for years by paying him a lower annual salary than his subordinate staff on the CA Lifeline Project.

Defendants attempted to conceal the disparity between Plaintiff's salary and the salary of his subordinate staff on the CA Lifeline Project by deliberately

refusing the officially designate Plaintiff as the executive over the project in an attempt to avoid have the project's financial records distributed to the Plaintiff.

205.

Defendants paid Plaintiff less than his subordinate staff because of his race in the face of a perceived risk that is actions will violate federal law.

206.

Defendants' actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

207.

As a result of Defendants conduct, Plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## INTENTIONAL DISPARATE TREATMENT IN COMPENSATION BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981

208.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

209.

Defendants discriminated against the Plaintiff based upon his race by paying him at lower rate than individuals who were either subordinate to or a direct report of the Plaintiff.

210.

Plaintiff's race is black.

211.

Defendants discriminated against the Plaintiff by paying Plaintiff's CA Lifeline Project staff who were not in Plaintiff's protected class a greater salary than that of the Plaintiff.

212.

Defendants attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate than his direct reports by refusing to officially designated the plaintiff as those individuals manager despite each reporting to Plaintiff operationally.

213.

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

214.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT VII
## RETALIATION FOR OPPOSING ROSENAK'S FALSE ALLEGATIONS AGAINST STITH (Reorg)

### 215.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

### 216.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

### 217.

Defendants retaliated against the Plaintiff for refusing to corroborate Rosenak's spurious claim that Stith was hostile and verbally abusive to her.

### 218.

Rosenak's claim against Stith arose only after Stith made allegations of discriminatory treatment based upon his race. Defendants retaliated against the Plaintiff by reorganizing the department so as to require the Plaintiff to have to reapply and compete for his job, reassigned projects previously assigned to the

Plaintiff, demanding that Plaintiff accept responsibility for spurious allegations of sexual harassment against him, enduring constant threats of disciplinary action, and other such actions.

219.

Similarly, Rosenak made an allegation of sexual harassment against a client in the State of Maryland upon learning that the client intended upon having her removed from the project. Rosenak's allegation resulted in the accused individual being terminated from his employment.

220.

Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

221.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT VIII
## FAILURE TO PROMOTE ON THE BASIS OF RACE IN VIOLATION OF TITLE VII

222.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

223.

Plaintiff is race is black and therefore he is in a protected class.

224.

Plaintiff applied for Defendant's Lead Vice President - Employer Services position.

225.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Employer Services position

226.

Defendants promoted Nany Kim to the position.

227.

Nancy Kim is outside of Plaintiff's protected class.

228.

Nancy Kim is not better qualified for the position that the Plaintiff.

229.

Defendants rejected Plaintiff for the Lead Vice President – Employer Services position.

230.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT IX
## FAILURE TO PROMOTE ON THE BASIS OF RACE IN VIOLATION OF 42 U.S.C. § 1981.

231.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

232.

Plaintiff is race is black and therefore he is in a protected class.

233.

Plaintiff applied for Defendant's Lead Vice President - Employer Services position.

234.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Employer Services position

235.

Defendants promoted Nany Kim to the position.

236.

Nancy Kim is outside of Plaintiff's protected class.

237.

Nancy Kim is not better qualified for the position that the Plaintiff.

238.

Defendants rejected Plaintiff for the Lead Vice President – Employer Services position.

239.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

COUNT X
FAILURE TO PROMOTE ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

240.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

241.

Plaintiff is race is male and therefore he is in a protected class.

242.

Plaintiff applied for Defendant's Lead Vice President - Employer Services position.

243.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Employer Services position

244.

Defendants promoted Nany Kim to the position.

245.

Nancy Kim is outside of Plaintiff's protected class.

246.

Nancy Kim is not better qualified for the position that the Plaintiff.

247.

Defendants rejected Plaintiff for the Lead Vice President – Employer Services position.

248.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT IX
## FAILURE TO PROMOTE ON THE BASIS OF RACE IN VIOLATION OF TITLE VII

249.

Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

250.

Plaintiff is race is black and therefore he is in a protected class.

251.

Plaintiff applied for Defendant's Lead Vice President - Operations position.

252.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Operations position

253.

Defendants promoted Kelly Boerner to the position.

254.

Kelly Boerner is outside of Plaintiff's protected class.

255.

Kelly Boerner is not better qualified for the position that the Plaintiff.

256.

Defendants rejected Plaintiff for the Lead Vice President – Operations.

257.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

COUNT X
FAILURE TO PROMOTE ON THE BASIS OF RACE IN VIOLATION OF 42
U.S.C. § 1981

258.

Plaintiff is race is black and therefore he is in a protected class.

259.

Plaintiff applied for Defendant's Lead Vice President - Operations position.

260.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Operations position

261.

Defendants promoted Kelly Boerner to the position.

262.

Kelly Boerner is outside of Plaintiff's protected class.

263.

Kelly Boerner is not better qualified for the position that the Plaintiff.

264.

Defendants rejected Plaintiff for the Lead Vice President – Operations.

265.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT XI
## FAILURE TO PROMOTE ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

266.

Plaintiff is race is black and therefore he is in a protected class.

267.

Plaintiff applied for Defendant's Lead Vice President - Operations position.

268.

Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Operations position

269.

Defendants promoted Kelly Boerner to the position.

270.

Kelly Boerner is outside of Plaintiff's protected class.

271.

Kelly Boerner is not better qualified for the position that the Plaintiff.

272.

Defendants rejected Plaintiff for the Lead Vice President – Operations.

273.

As a result of Defendants conduct, plaintiff a suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of

enjoyment of life, and has had to because the costs of this action and attorney's fees.

## COUNT XI
## INTERFERENCE WITH RIGHTS GRANTED UNDER THE FAMILY AND MEDICAL LEAVE ACT
274.

Plaintiff took leave under the Family and Medical Leave Act in July 2021.

275.

Defendants interfered with Plaintiff's rights under the Family and Medical Leave Act by terminating his employment instead of restoring him to his position as required by the Act.

276.

At the conclusion of his leave, Plaintiff attempted to return to his employment with the Defendants but was denied.

Plaintiff was an eligible employee within the meaning of the FMLA.

277.

Plaintiff was employed by Defendants for at least 12 months.

278.

Plaintiff had performed more than 1,250 hours of service for Maximus Services LLC during the previous 12-month period.

279.

Defendants are covered employers.

280.

Defendants a person engaged in commerce.

281.

Defendants employed 50 for more employees for each working day during each of 20 or more calendar workweeks in the years 2021 or 2020.

282.

Plaintiff suffered damages including lost wages, benefits, bonuses, compensatory damages, and attorneys' fees.

COUNT XII
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

283.

Defendant intentional subjected Plaintiff to severe and nearly constant emotional distress through its campaigned of discrimination and retaliation to have Plaintiff removed from his employment with Defendants.

284.

Defendant's act of compensating Plaintiff's subordinate staff at a higher rate than his salary for years was extreme and outrageous.

285.

Defendant's act of requiring Plaintiff to apply and compete for a position that he already held was extreme and outrageous.

286.

The extreme and outrageous acts caused Plaintiff severe emotional distress therapy from a psychiatrist.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. For an award of economic damages, including back pay with pre-judgment interest, in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses, in amounts to be determined at trial;

C. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct;

D. For an award of Punitive damages to the Plaintiff against Defendants for their reckless disregard of Plaintiff's federally protected rights;

E. For an award of attorneys' fees and related expenses;

F. For an award of Plaintiff's costs of suit incurred herein;

G. For reinstatement and restoration of seniority; and,

H. For an award of such other relief as the Court may deem just and proper.

Respectfully submitted this 10th day of December 2021.

/s/ ___*Anthony Dawkins*_____
F. Anthony Dawkins
GA Attorney No. 157,904

MORGAN & MORGAN, PA
191 Peachtree Street, NE
Suite 4,200
Atlanta, GA 30,303
Telephone:  404-965-1,872
Facsimile:   404-720-3839
adawkins@forthepeople.com