UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-4367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., | ) | |
| MAXIMUS HUMAN SERVICES, INC., | ) | |
| And MAXIMUS SERVICES LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants moved to dismiss the complaint based on inaccurate statements made by Plaintiff Maurice Franklin in his application to proceed *in forma pauperis*, and in his motion for attorney representation. *See* Defs.' Mtn. to Dismiss (Dckt. No. 29). The motion to dismiss is denied.

Franklin is a former employee at Defendant Maximus, Inc., where he worked for more than 20 years. *See* Cplt., at ¶¶ 8–9 (Dckt. No. 1). He held the position of Vice President, Executive Oversight. *Id.* He brings an assortment of claims about his time at the company, including race and sex discrimination, disparate treatment, hostile work environment, harassment, and retaliation. He filed this case as a *pro se* litigant, but retained counsel a few months later.

When he submitted the complaint, Franklin did not pay the filing fee. Instead, he filed an application to proceed *in forma pauperis*. *See* IFP Application (Dckt. No. 4). He didn't keep his employment – or his income – a secret. The application disclosed that he earned $5,800 per

month, which brings his annual income to about $70,000. *Id.* The Court understands that amount to reflect his salary after taxes – the net salary, not the gross salary – given that the form asked about his "take-home pay." *Id.*

Franklin did not disclose any other sources of income. *Id.* He did not disclose any other assets, either. *Id.* In particular, he stated that he did not own any automobiles. *Id.* at 2. He claimed that he had less than $5 in the bank. *Id.*

Franklin's IFP application included a handwritten note. He wrote: "I did not anticipate the $400 fee. I am prepare [sic] to pay $250 which is the amount posted on a website." *Id.*

When he signed his application, Franklin certified that his answers were true, under penalty of perjury. "I declare under penalty of perjury that all of the information listed above is true and correct. I understand that a false statement may result in dismissal of my claims or other sanctions." *Id.*

At the same time, Franklin submitted an application for the appointment of counsel. The form included the following statement: "I declare that I have contacted the following attorneys/organizations seeking representation." *See* Mtn. for Attorney Representation (Dckt. No. 5). Franklin simply wrote: "Have not." *Id.* Along the way, when asked about his education, Franklin disclosed that he has "[s]ome college," but no college degree. *Id.* at 2.

This Court later denied Franklin's application to proceed *in forma pauperis*. The Court expressly rested its decision on the fact that Franklin had represented that he earned a monthly income totaling $5,800. "Plaintiff earns $5,800 per month, which is more than enough (by a wide margin) to pay the cost of filing suit. Plaintiff offered to pay $250, but the fee is not subject to haggling." *See* 8/19/21 Order (Dckt. No. 9).

2

In short, this Court ruled against Franklin when he sought to proceed *in forma pauperis*. Even so, Defendants now seek to dismiss the complaint based on inaccurate statements made by Franklin in his IFP application.

Defendants point to two significant misstatements and omissions. First, Franklin failed to disclose three bonus payments totaling $32,000. *See* Defs.' Mem. in Supp. of Mtn. to Dismiss, at 2–3 (Dckt. No. 30). Specifically, Franklin received a $30,000 bonus on November 15, 2020, plus $1,000 bonuses on October 18, 2020 and April 4, 2021. *Id.* Second, Franklin failed to mention that he owns a 2017 Porsche Macan. *Id.* A Macan is a compact SUV (this Court had to look it up).

Maximus is right about the lack of disclosure. Franklin's IFP application didn't mention anything about any bonus payments. And it did not mention a car, either. Let alone a Porsche. The question now is what, if anything, to do about it.

Congress opened the courthouse doors to plaintiffs who cannot afford filing fees. Under 28 U.S.C. § 1915(a)(1), a poor plaintiff can proceed in federal court by submitting an *in forma pauperis* application. If the application shows that the plaintiff cannot pay, then the Court may waive the fee. *Id.*; *see Hutchinson v. Spink*, 126 F.3d 895, 899 (7th Cir. 1997) (recognizing that 28 U.S.C. § 1915 applies to cases brought by non-prisoners).

That said, applicants must tell the truth – they cannot get in the courthouse based on falsehoods about their financial status. If an applicant lies, the sanction is automatic. "[T]he court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." *See* 28 U.S.C. § 1915(e)(2)(A); *see also Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) ("Because the allegation of poverty was false, the suit had to be dismissed; the judge had no choice.").

But "untrue" means "something more than an innocent mistake." *See Peak v. Laborer's Union Local #1*, 2020 WL 1433825, at *1 (N.D. Ill. 2020). "Congress meant something like 'dishonest' or 'false,' rather than simply 'inaccurate.'" *Robertson v. French*, 949 F.3d 347, 351 (7th Cir. 2020). The automatic sanction aims at deliberate behavior, meaning applicants who intended to deceive the court. *See, e.g.*, *Kennedy v. Huibregtse*, 831 F.3d 441, 442 (7th Cir. 2016) (addressing a deliberate failure to disclose $1,400 in trust account outside the prison); *Thomas*, 288 F.3d at 306 (addressing a deliberate misrepresentation about expected ERISA distribution). An innocent slip-up doesn't count.

The statute "does not 'sweep in an inaccuracy that was the product of confusion or misunderstanding.'" *See Ruiz v. Bautista*, 2020 WL 974896, at *2 (7th Cir. 2020) (citing *Robertson*, 949 F.3d at 351); *see also Effinger v. Monterrey Sec. Consultants*, 546 F. Supp. 3d 715, 720 (N.D. Ill. 2021) (declining to dismiss plaintiff's complaint because "it appears from the evidence before me that plaintiff's inaccurate reporting of her wages was the result of some combination of carelessness, confusion, and failure to appreciate the need for precision"); *Palmer v. Dollar Tree*, 2012 WL 4795720, at *2 (N.D. Ill. 2012) (declining dismissal because "[a] simpler and more plausible theory of Plaintiff's conduct is that she is just not very good with forms").

This Court denied Franklin's IFP application. So, one might think that Franklin didn't gain anything by failing to tell the full financial story. That is, the lack of disclosure didn't get him very far, because the Court denied his application anyway. Still, the fact that a court denied an IFP application shouldn't make a difference when a court is faced with deliberate deception.

At times, courts have declined to dismiss complaints based on inaccurate statements when the plaintiff's IFP application was denied. *See Hrobowski v. Commonwealth Edison Co.*,

203 F.3d 445, 448 (7th Cir. 2000) ("[L]ike any other plaintiff, once Hrobowski lost his pauper status, he expended considerable money and effort over the next 11 months bringing his case to trial. To dismiss his case under a section of the U.S. Code entitled 'Proceedings in forma pauperis' after such a long stretch of proceeding as a nonpauper does not make sense."); *Harrison v. Illinois Dep't of Transp.*, 2011 WL 2470626, at *4 (N.D. Ill. 2011) (reasoning that "Plaintiff has not 'reap[ed] the benefits of *in forma pauperis* status' because we denied his application") (citing *Hrobowski*, 203 F.3d at 448) (alteration in original). *Hrobowski* involved litigation that persisted for months after denial of the IFP application, so significant reliance interests were at play. That's not the situation here, because the case is close to the starting line.

Forgiving false statements – based on the fact that the court *denied* the IFP petition anyway – sits uneasily with the judiciary's overriding need for truth-telling. Litigation is about the search for truth, and getting to the truth depends on truth-telling throughout the judicial process. It is no exaggeration to say that the entire legal system relies on truth-telling.

Lies create havoc, impose costs, and harm the system, even if the liar doesn't get what he or she wanted. There is an institutional interest in preserving the sanctity of the oath, and in ensuring that litigants tell the truth to the judiciary. *See McRoyal v. Commonwealth Edison Co.*, 2008 WL 345345, at *2 (7th Cir. 2008) ("Ms. McRoyal first submits that her case should not have been dismissed because, even if she lied on her petition to proceed in forma pauperis, those falsehoods were harmless because they did not result in the district court's granting her petition and she remains obligated to pay the filing fee. We cannot accept this reasoning. As the district court aptly noted in its order of March 27, 2007, the wrongful act of making false statements to the court is always harmful."). "No harm, no foul" doesn't really apply, because lying *is* a harm.

5

From a deterrence perspective, litigants need to know that bad things can happen if they tell falsehoods to the court. Lowering the cost of lying – by imposing a sanction only if the IFP motion was *granted*, but not if it was denied – will lead to more lying.

A different approach might incentivize lying. Imagine if an applicant could suffer a sanction for lying if the court *grants* the IFP, but not if the court *denies* the IFP. An applicant might figure that he or she doesn't have much to lose by trying to pull the wool over the court's eyes. (That's short-term thinking, but life is full of short-term thinking. Especially when money is involved.) If the court grants the IFP, the applicant will have received a financial benefit, and entered the courthouse for free. And if the court denies the IFP, the applicant isn't worse off from the lie. The applicant will have come out ahead in one scenario, and stayed in the same place in the other.

True, in the long run, the lie might come back to bite the applicant. If the court grants the IFP motion, and then catches the lie later, the court must dismiss the entire case. *See* 28 U.S.C. § 1915(e)(2)(A). So, lying may not pay off in the long run. But again, the point is simply that some applicants might be tempted to take the gamble and roll the dice. And more people will roll the dice if there is a sense that they won't be punished if they roll snake eyes (and the court denies the IFP motion).

The liar does not need to achieve the end goal to receive a benefit from a lie. Increasing once's chances of getting a benefit is *itself* a benefit, even if the ultimate goal did not come to pass. By way of example, imagine if there was a raffle at work, and everyone put their name in a hat to see who would win the prize. And imagine if a reprobate down the hall put his name in the hat twice. That employee gamed the system, cheated everyone else, and got a benefit – better odds of winning – even if his name wasn't pulled out of the hat.

6

Denial of the application shouldn't matter if a court is faced with intentional deception. The question, then, is what to do about the fact that Franklin did not disclose his bonuses or his Porsche on his IFP application. And more specifically, the question is whether the statements were "untrue" in the sense contemplated by the statute. *See* 28 U.S.C. § 1915(e)(2)(A); *Ruiz*, 2020 WL 974896, at *2.

Defendants basically argue that the lack of disclosure couldn't have been an oversight. They point to the amount of money – tens of thousands of dollars in bonuses – that Franklin failed to disclose. And they point out that Franklin also filed a lawsuit in California against Maximus on August 19, 2021, two days after filing the case at hand. *See* Defs.' Mem. in Supp. of Mtn. to Dismiss, at Ex. C (Dckt. No. 30, at 49 of 54). And in that application, Franklin *did* disclose the Porsche. *Id.* He disclosed that he owes $55,000 on the car, and has a monthly payment of $1,444. (The parties dispute how much equity is in the car.)

Overall, this Court is not convinced that Franklin intended to deceive the Court when he submitted his IFP application. The question is close to the line, and the answer is a close call. This Court is mindful of the amount of money at stake. Still, this Court will not impute malintent lightly. Viewing the record as a whole, this Court concludes that the lack of disclosure is more consistent with an oversight, for a few reasons.

First, Franklin apparently did not walk into the courthouse with the intent to get a free ride, thanks to an IFP application. As this Court reads the application, he came to the courthouse with $250 in his pocket, thinking that the filing fee was $250. "I did not anticipate the $400 fee. I am prepare [sic] to pay $250 which is the amount posted on a website." *See* IFP Application (Dckt. No. 4).

7

Second, Franklin came to the courthouse to file his complaint 90 days after the EEOC issued the right to sue letter. That was the last day when he could file a complaint. *See King v. Ford Motor Co.*, 872 F.3d 833, 839 (7th Cir. 2017) (citing 42 U.S.C. § 2000(e)-5(f)(1)). He filed the complaint and the IFP application shortly before the Clerk's Office closed for the day. That's when he learned that the filing fee was $400, not $250.

He didn't have enough money in his pocket to pay the fee, and the doors to the courthouse were about to close – literally and figuratively. Given the time sensitivity, and the surprise about the fee, it is plausible that Franklin became flustered, and didn't think about the bonus or the car.

Franklin represents to the Court that he completed the IFP application in a "rush[]," minutes before closing, on the last business day to file a complaint. *See* Pl.'s Resp., at 8, 9 (Dckt. No. 34). He now acknowledges that he should have disclosed more. This Court will accept that representation.

Third, Franklin did disclose his full salary. He disclosed that he earned $5,800 per month. *See* Pl.'s IFP Application, at 1 (Dckt. No. 4). There is no suggestion in the record that Franklin understated his salary. That disclosure is consistent with his IFP application in the California case (or pretty close, anyway), where Franklin disclosed gross income of $10,000 and net income of $5,700 per month. *See* Defs.' Mem. in Supp. of Mtn. to Dismiss, at Ex. C (Dckt. No. 30, at 47 of 54). From a financial standpoint, Franklin led with his chin, because he disclosed so much income that his IFP application was basically dead on arrival.

Fourth, Franklin failed to disclose his bonuses, and that non-disclosure is difficult to understand given the amount of money at stake. Still, there are a few potentially mitigating factors. The IFP form did not expressly mention bonuses. So, it is possible that the bonuses

8

slipped his mind, even though the form also covered "[a]ny other source of money." *See* IFP Application, at 1 (Dckt. No. 4). More importantly, Franklin received the bulk of the bonuses – $31,000 of the $32,000 – in October and November of 2020, about nine months before submitting his IFP application in August 2021. *See* Defs.' Mem. in Supp. of Mtn. to Dismiss, at 2–3 (Dckt. No. 30). Given the passage of time, it is possible that he simply forgot (but, again, he should have remembered).

Fifth, Franklin should have disclosed the car, especially given that the IFP application expressly asked about automobiles. *See* IFP Application, at 2 (Dckt. No. 4). But the parties debate how much equity Franklin has in the car. Franklin believes that his equity is less than $2,000. *See* Pl.'s Resp., at 7–8 (Dckt. No. 34). That's not nothing. Still, on this record, it is not so large to create an inference of intentional deception.

If this Court believed that Franklin intended to deceive in his IFP application, then this Court would not hesitate to dismiss the case, even though his IFP application was denied. But here, after reviewing the record as a whole, this Court concludes that Franklin's non-disclosure was not intentional. It wasn't accurate, but it wasn't "untrue" within the meaning of the statute. *See* 28 U.S.C. § 1915(e)(2)(A); *Ruiz*, 2020 WL 974896, at *2.

Finally, Defendants argue that Plaintiff's motion for attorney representation was inaccurate, too. When he completed the form, and answered the question about any contacts with attorneys, Franklin simply wrote: "Have not." *See* Mtn. for Attorney Representation (Dckt. No. 5).

According to Defendants, that representation was untrue. They point out that Franklin had already retained a lawyer to negotiate a severance agreement with Defendants. *See* Colbeck

9

Dec., at ¶ 4 (Dckt. No. 38-1) (describing a June 2021 correspondence that states a law firm "had been retained to represent Mr. Maurice Franklin in his claims against Maximus Inc.").

Defendants rightly argue that Franklin should have disclosed all of his efforts to retain counsel. Still, by telling this Court that he had not searched for counsel, he defeated his own request for the appointment of counsel. He doomed his own motion because courts don't help litigants who don't help themselves.

The non-disclosure about attorneys is unlike a non-disclosure about money. If a litigant says that he has no money, when he really does, a court might grant an IFP application based on poverty. But if an litigant says that he hasn't looked for an attorney, when he really has, a court is going to be *less* likely – not more likely – to grant the request. Here, the non-disclosure hurt him, and didn't help him.

Overall, the Court agrees that Franklin fell short of his overriding obligation of full disclosure. And this Court expects (and directs) that Franklin will not repeat that lack of candor. But based on this record, the Court concludes that the non-disclosures came from carelessness under time pressure, not an intent to deceive. Motion denied.

Date: April 14, 2022

Steven C. Seeger
United States District Judge