**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., MAXIMUS | ) | Magistrate Judge Jeffrey T. Gilbert |
| HUMAN SERVICES, INC., AND | ) | |
| MAXIMUS SERVICES LLC | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' ANSWER AND DEFENSES TO
PLAINTIFF'S SECOND AMENDED COMPLAINT</u>[1]**

Defendants Maximus, Inc., ("Maximus"), Maximus Human Services, Inc. ("Maximus Human Services"), and Maximus Services LLC ("Maximus Services") (collectively, "Defendants"), by their undersigned counsel, submit the following Answer and Defenses to Plaintiff Maurice Franklin's Second Amended Complaint:

**JURISDICTION**

1.      This is an action for declaratory and injunctive relief and monetary and punitive damages to redress Defendants' deprivation and interference with Plaintiff rights under the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Family and Medical Leave Act, 29 U.S.C. § 2611 <u>et seq.</u> during Plaintiff's employment with Defendants.

**<u>ANSWER</u>:** Defendants admit that Plaintiff purports to bring this action under the cited statutes. Defendants deny that they violated any law, deny that Plaintiff was subjected to any unlawful treatment, and deny the remaining allegations contained in Paragraph 1.

**PARTIES**

2.      Plaintiff is a black man who is over the age of 40 who wad [*sic*] formerly employed by Defendants.

---

[1] Typographical and grammatical errors contained in Plaintiff's Second Amended Complaint are reproduced herein.

**ANSWER:** Upon information and belief, Defendants admit that Plaintiff is a black man and that he is over the age of 40 years old. Defendants deny that Plaintiff was "formerly employed by Defendants" and Defendants deny the remaining allegations contained in Paragraph 2.

3. Plaintiff is a citizen of the State of Illinois.

**ANSWER:** Defendants lack knowledge as to Plaintiff's citizenship and therefore deny the allegations contained in Paragraph 3.

4. Defendants' principal place of business is 1891 Metro Center Drive, Reston, VA 20190.

**ANSWER:** Defendants admit the allegations contained in Paragraph 4.

5. MS is a citizen of the State of Delaware.

**ANSWER:** Defendants admit the allegations contained in Paragraph 5.

6. MHS is a citizen of the Commonwealth of Virginia.

**ANSWER:** Defendants admit the allegations contained in Paragraph 6.

7. Maximus, Inc. is either a citizen of the Commonwealth of Virginia or the State of Delaware.

**ANSWER:** Defendants admit the allegations contained in Paragraph 7.

## JURISDICTION

8. The jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, 1332.

**ANSWER:** Defendants admit that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Defendants deny the remaining allegations contained in Paragraph 8.

## VENUE

9. Plaintiff resides in Cook County, Illinois.

**ANSWER:** Defendants lack knowledge as to the county of Plaintiff's residence and therefore deny the allegations contained in Paragraph 9.

10. Maximus, Inc. conducts business in Cook County, Illinois.

**ANSWER:** Defendants admit the allegations contained in Paragraph 10.

11. MS conducts business in Cook County, Illinois.

**ANSWER:** Defendants admit the allegations contained in Paragraph 11.

12. MHS conducts business in Cook County, Illinois.

**ANSWER:** Defendants admit the allegations contained in Paragraph 12.

13. Venue in this court is proper.

**ANSWER:** Defendants admit that this Court is the proper venue for Plaintiff's claims.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On May 12, 2021, Franklin filed Charge of Discrimination #440-2021-02671 with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("Commission"). See Plaintiff's Exhibit A.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 14.

15. Franklin's Charge of Discrimination alleged that MAXIMUS subjected him to different terms and conditions that [*sic*] White employees. *Id.*

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 15.

16. Franklin's Charge of Discrimination alleged that he complained to MAXIMUS about being subjected to different terms and conditions than White employees. *Id.*

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 16.

17.     Franklin's Charge of Discrimination alleged that MAXIMUS subjected him to additional scrutiny and denied him promotions after he complained to MAXIMUS about being subjected to different terms and conditions than White employees. *Id*.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 17.

18.     On May 19, 2021, the Commission issued a Dismissal and Notice of Rights which notified Franklin that he had 90 days by which to initiate a lawsuit. See Plaintiff's Exhibit B.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 18.

19.     On August 17, 2021, Franklin filed a Complaint [Doc. #1] in the United States District Court for the Northern District of Illinois, Eastern Division.

**ANSWER:** Defendants deny the allegations contained in Paragraph 19.

20.     Franklin's complaint was filed within 90 days of his receipt of the Dismissal and Notice of Rights.

**ANSWER:** Upon information and belief, Defendants deny the allegations contained in Paragraph 20.

21.     Franklin exhausted his administrative remedies prior to commencing the instant action.

**ANSWER:** Defendants deny the allegations contained in Paragraph 21.

## ALLEGED FACTUAL ALLEGATIONS

22.     Maximus, Inc. is a for-profit corporation incorporated in 1975.

**ANSWER:** Defendants admit the allegations contained in Paragraph 22.

23.     Maximus, Inc. is a leading operator of government health and human services programs globally.

**ANSWER:** Defendants admit the allegations contained in Paragraph 23.

24.     Maximus, Inc.'s primary portfolio of work is tied to business process services in the health and human services markets.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 24.

25.     Maximus, Inc. provides services to government agencies in the United States, Australia, Canada, Saudi Arabia, Singapore, Italy, Sweden, South Korea, and the United Kingdom.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 25.

26.     In 2006, Maximus, Inc. started Maximus Human Services, Inc., a wholly owned subsidiary of Maximus, Inc.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 26.

27.     MHS is a provider of child support enforcement, welfare-to-work business process services to state and local governments in the United States.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 27.

28.     Kathleen Kerr ("Kerr") is the president of MHS and MS.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 28.

29.     Laura Rosenak ("Rosenak") is a senior vice president of MHS and MS.

**ANSWER:**  Defendants deny the allegation contained in Paragraph 29.

30.     Rosenak was Franklin's manager from April 30, 2012, until January 2, 2021.

**ANSWER:**  Defendants deny the allegation contained in Paragraph 30.

31.     Rosenak joined Maximus Human Services, Inc. in 2012 as Senior Vice President over MHS' child support services contracts with state governments across the United States.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 31.

32.     Rosenak's sex is female.

**ANSWER:**  Upon information and belief, Defendants admit the allegations contained in Paragraph 32.

33.     Rosenak's race is white.

**ANSWER:**  Upon information and belief, Defendants admit the allegations contained in Paragraph 33.

34.     Rosenak is not Hispanic.

**ANSWER:**  Upon information and belief, Defendants admit the allegations contained in Paragraph

34.

35.     In addition to her child support enforcement contacts, in 2016, Rosenak assumed oversight over MHS' benefits and eligibility advocacy services (BEAS) business unit.

**ANSWER:** Defendants admit the allegations contained in Paragraph 35.

36.      The BEAS business unit provided application and advocacy for Supplement Security Income (SSI) benefits to children in foster care and adult receipts of Temporary Assistance to Needy Families.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 36.

37.     MHS hired Franklin on or about August 25, 2008. Plaintiff's Exhibit B.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete

content and meaning, and on such basis Defendants deny the allegations contained in Paragraph

37.

38.     On or about September 1, 2009, MHS promoted Franklin to Supervisor.

**ANSWER:** Defendants deny the allegations contained in Paragraph 38.

39.     On or about September 1, 2009, MHS increase [*sic*] Franklin's salary to $36,050.00.

**ANSWER:** Defendants deny the allegations contained in Paragraph 39.

40.     On or about April 30, 2012, Franklin was reassigned to report directly to Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 40.

41.     On or about June 1, 2012, Franklin was promoted to manager.

**ANSWER:** Defendants admit the allegations contained in Paragraph 41.

42.     On or about June 1, 2012, Franklin's salary was increased to $48,000.00 annually.

**ANSWER:** Defendants admit the allegations contained in Paragraph 42.

43.     On or about August 16, 2014, MHS increased Franklin's annual salary to $75,000.00.

**ANSWER:** Defendants admit the allegations contained in Paragraph 43.

44.     On or about August 16, 2014, MHS promoted Franklin to project manager.

**ANSWER:** Defendants admit the allegations contained in Paragraph 44.

45.     On or about February 28, 2015, MHS promoted Franklin to senior manager.

**ANSWER:** Defendants deny the allegations contained in Paragraph 45.

46.     On or about March 1, 2015, MHS increased Franklin's salary to $85,000.00 annually.

**ANSWER:** Defendants admit the allegations contained in Paragraph 46.

47.     On or about February 1, 2017, MHS increased Franklin's salary to $96,700.00 annually.

**ANSWER:** Defendants admit the allegations contained in Paragraph 47.

48.     On or about February 2, 2017, MHS promoted Franklin to director.

**ANSWER:** Defendants admit the allegations contained in Paragraph 48.

49.     On or about January 1, 2018, MHS increased Franklin's salary to $102,000.00.

**ANSWER:** Defendants admit the allegations contained in Paragraph 49.

50.     On or about January 1, 2018, MS increased Franklin's salary to $102,000.00.

**ANSWER:** Defendants deny the allegations contained in Paragraph 50.

51.     On or about January 1, 2018, MHS promoted Franklin to vice president.

**ANSWER:** Defendants admit the allegations contained in Paragraph 51.

52.     On or about January 1, 2018, MS promoted Franklin to vice president.

**ANSWER:** Defendants deny the allegations contained in Paragraph 52.

53.     On or about December 30, 2018, MHS increased Franklin's salary to $120,000.00.

**ANSWER:** Defendants deny the allegations contained in Paragraph 53.

54.     On or about December 30, 2018, MS increased Franklin's salary to $120,000.00.

**ANSWER:** Defendants deny the allegations contained in Paragraph 54.

55.     On or about December 29, 2019, MS increased Franklin's salary to $124,000.00.

**ANSWER:** Defendants deny the allegations contained in Paragraph 55.

56. Franklin's employment with Defendants was one of an "at-will" employment.

**ANSWER:** Defendants admit that during the time periods in which Plaintiff was employed by any of the Defendants, Plaintiff was an at-will employee. Defendants deny the remaining allegations contained in Paragraph 56.

57. Franklin's at-will employment with Defendants was a contract.

**ANSWER:** Defendants deny the allegation contained in Paragraph 57.

58. Kelly Blaschke Treharne ("Blaschke Treharne") was a senior vice president with MS.

**ANSWER:** Defendants admit that Kelly Blaschke Treharne is a senior vice president employed by Maximus Services LLC. Defendants deny the remaining allegations contained in Paragraph 58.

59. Blaschke Treharne's race is white.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 59.

60. Blaschke Treharne's gender is female.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 60.

61. On or about January 3, 2021, Franklin was reassigned to report to Blaschke Treharne.

**ANSWER:** Defendants admit that Plaintiff began reporting to Kelly Blaschke Treharne on or about January 3, 2021. Defendants deny the remaining allegations contained in Paragraph 61.

62. Franklin reported to Blaschke Treharne from January 3, 2021, until May 1, 2021.

**ANSWER:** Defendants admit the allegations contained in Paragraph 62.

63. Nancy Kim ("Kim") was a vice president with MS.

**ANSWER:** Defendants admit that Nancy Kim is a vice president employed by Maximus Services LLC. Defendants deny the remaining allegations contained in Paragraph 63.

64.     Kim's race is white.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 64.

65.     Kim's sex is female.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 65.

66.     On or about May 2, 2021, Franklin was reassigned to report to Kim.

**ANSWER:** Defendants admit that Nancy Kim became Plaintiff's direct supervisor in or about May 2021. Defendants deny the remaining allegations contained in Paragraph 66.

67.     Franklin was rated "Above Expectations" on his fiscal year 2018 management bonus plan performance evaluation. See Plaintiff's Exhibit C.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 67.

68.     Rosenak was the rating official for Franklin's fiscal year 2018 performance evaluation.

**ANSWER:** Defendants admit that Laura Rosenak evaluated Plaintiff in his MBP Performance Evaluation for fiscal year 2018. Defendants deny the remaining allegations contained in Paragraph 68.

69.     Rosenak wrote, "Maurice's clients – those that he re [*sic*] regularly interact with absolutely value his leadership and knowledge and he is a 'go to' perform [*sic*] for those clients," on Plaintiff's fiscal year 2018 management bonus plan performance, *Id*.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 69.

70.     On Plaintiff's fiscal year 2018 management bonus plan performance evaluation, Rosenak wrote, "Maurice truly inspires not only his own team, but the leadership team." *Id*.

**ANSWER**:  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 70.

71.     On Plaintiff's fiscal year 2018 management bonus plan performance evaluation, Rosenak wrote, "Maurice is beyond reproach in his integrity." Id.

**ANSWER**:  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 71.

72.     Rosenak rated Plaintiff's performance as "Meeting/Exceeding Expectations" on his fiscal year 2020 management bonus plan performance evaluation without further comment. See Plaintiff's Exhibit D.

**ANSWER**:  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 72.

73.     In or around mid-2018, Clyde Stith ("Stith") filed a complaint with Defendants alleging that Rosenak subjected him to disparate treatment based on his race.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 73.

74.     Stith made allegations that Rosenak subjected him to discrimination by using race as a factor when selecting individuals for promotional opportunities.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 74.

75.     Defendants initiated an investigation into Stith's allegations against Rosenak.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 75.

76.     Subsequent to Stith's complaint, Rosenak made a complaint to Defendants alleging that Stith, was hostile towards her generally refused [*sic*] to comply with her work-related requests.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 76.

77.     Rosenak had not made any prior complaints concerning the behavior she claimed Stith had demonstrated to her.

**ANSWER**: Defendants deny the allegations contained in Paragraph 77.

78.     Defendants commenced an investigation of Rosenak's allegations against Stith.

**ANSWER:** Defendants deny the allegations contained in Paragraph 78.

79.     As part of the investigation into Rosenak's allegations against Stith, Franklin was interviewed by investigators regarding his knowledge and observations of Stith's interactions with Rosenak.

**ANSWER:** Defendants admit that Plaintiff was interviewed in connection with an investigation into allegations made by former Maximus employee Clyde Stith. Defendants lack knowledge as to the remaining allegations contained in Paragraph 79 and therefore deny the same.

80.     At all times during his employment with Defendants, Stith was an [*sic*] subordinate employee [sic] Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 80.

81.     Franklin was told by the investigators that his statements would remain confidential.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 81 and therefore deny the same.

82.     Franklin made statements to the investigators disavowing any knowledge of the behaviors reported by Rosenak about Stith.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 82 and therefore deny the same.

83.     Franklin emphasized to the investigators that he did not wish to participate in the investigation and wished to be left completely out of the matter.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 83 and therefore deny same.

84.     On or about September 19, 2019, Rosenak contacted Franklin via text message asking him if he was [*sic*] Los Angeles International Airport. See Plaintiff's Exhibit E.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 84.

85.     Rosenak attempted to locate Franklin at the boarding gate at LAX Airport.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 85.

86.     Franklin and Rosenak spoke very briefly while at LAX Airport. Franklin quickly told Rosenak a joke and hurried off to his gate without further conversation.

**ANSWER:**  Defendants admit that Plaintiff and Laura Rosenak spoke at LAX Airport. Defendants deny the remaining allegations contained in Paragraph 86.

87.     On or about September 25, 2019, during a one-on-one meeting between Franklin and Rosenak, Rosenak confronted Franklin about the statements he made to the investigators disavowing knowledge of Stith having displayed improper behavior toward Rosenak.

**ANSWER:** Defendants deny the allegation contained in Paragraph 87.

88.     Rosenak's statements to Franklin on or about September 25, 2019, evidenced that Rosenak had been privy to Franklin's statements to the investigators despite its purported confidential designation.

**ANSWER:** Defendants deny the allegation contained in Paragraph 88.

89.     During their September 25, 2019, conversation, Rosenak express [*sic*] disappointment that Franklin has not corroborated allegations about Stith in his statements to investigators.

**ANSWER:** Defendants deny the allegation contained in Paragraph 89.

90.     During their September 25, 2019, conversation, Rosenak told Franklin that she considered Franklin to be "mine."

**ANSWER:**  Defendants deny the allegation contained in Paragraph 90.

91.     Franklin told Kerr the [*sic*] Colleen Mathias told him that Rosenak said she was disappointed in Franklin for not corroborating her story.

**ANSWER:** Defendants deny the allegations contained in Paragraph 91.

92.     Franklin observed that Rosenak began to leave Franklin out of conversations and strategy meetings regarding new business development opportunities.

**ANSWER:** Defendants deny the allegations contained in Paragraph 92.

12

93.     Between September 2019 and September 2020, Franklin made approximately 10 complaints to Defendants' officials alleging that he was being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 93.

94.     Franklin made complaints to Colbeck about being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 94.

95.     Franklin made complaints to Christa Bellew about being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 95.

96.     Franklin made complaints to Christa Bellew about being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants deny the allegations contained in Paragraph 96.

97.     Franklin made complaints to Martha Sanders Tonahill, vice-president, human capital, about being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants admit Plaintiff complained to Martha Sanders Tonahill.  Defendants deny

the remaining allegations contained in Paragraph 97.

98.     Franklin made complaints to Mark Andrewkovich, Chief of Human Capital, about being subjected to retaliatory treatment by Rosenak.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 98 and

therefore deny the same.

99.     On or about October 19, 2020, Rosenak, Colbeck, and Franklin met at Rosenak's request to discuss Rosenak's concerns with Franklin [*sic*] identification of irregularities in his portfolio financial file.

**ANSWER:** Defendants deny the allegations contained in Paragraph 99.

100.     During the October 19, 2020 call, Rosenak alleged that Franklin raised the issue of Franklin's statements in the Stith investigation to Rosenak during their meeting in LAX on September 19, 2019.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 100 and

therefore deny the same.

101.    Franklin raised concern to Kerr about the fact that Rosenak told Colbeck the same fabricated story while crying, all while knowing that the story was completely fabricated.

**ANSWER:** Defendants deny the allegations contained in Paragraph 101.

102.    Franklin told Kerr that Rosenak was not being honest when she said that she and Franklin encountered each other in the Los Angeles Airport wherein Franklin brought the subject of the Stith investigation up to Laura.

**ANSWER:** Defendants admit that Plaintiff told Kathy Kerr that Laura Rosenak was not being honest. Defendants deny the remaining allegations contained in Paragraph 102.

103.    Franklin refuted any notion that he had raised the Stith matter to Rosenak in LAX, insisting that he and Rosenak did not discuss the Stith matter during their brief encounter at LAX, and instead asserted that it was Rosenak who brought up the confidential witness statements to Franklin during their one on one call on September 25, 2019.

**ANSWER:** Defendants deny the allegations contained in Paragraph 103.

104.    During a call between Kerr and Franklin on December 17, 2020, Kerr disclosed that she was the individual that disclosed Franklin's witness statements to Rosenak.

**ANSWER:** Defendants lack knowledge as to the allegations contained in Paragraph 104 and therefore deny the same.

105.    Franklin spoke to Kerr via telephone to raise concern about Rosenak learning the substance of his statements to the investigators that were investigating Rosenak's allegations concerning Stith's alleged inappropriate behavior.

**ANSWER:** Defendants deny the allegations contained in Paragraph 105.

106.    During that same call, Kerr disclosed to Franklin that the organization that would restructure the organization to have Franklin report to Blaschke Treharne was Kerr idea and plan [*sic*].

**ANSWER:** Defendants admit that Kerr told Plaintiff about an organization restructuring whereby Plaintiff would report to Kelly Blaschke Treharne. Defendants lack knowledge as to the remaining allegations contained in Paragraph 106 and therefore deny the same.

107.    Rosenak subjected Franklin to a series of retaliatory acts that he would detail in his ethics complaints to the company.

ANSWER:  Defendants deny the allegation contained in Paragraph 107.

108.     Franklin told Kerr that he was been [*sic*] excluded from meetings, left off of emails, and written out of rebids since Rosenak approached Franklin about his statements to the Stith investigators.

ANSWER:  Defendants admit that Plaintiff told Kerr that he felt he had been excluded from meeting and left off of emails. Defendants deny the remaining allegations contained in Paragraph 108.

109.     Franklin told Kerr that staff are afraid of Rosenak because they fear that she will retaliate against them and that they would lose their job.

**ANSWER:**  Defendants admit that Plaintiff told Kerr that staff are afraid of Rosenak and that they fear losing their jobs. Defendants deny the remaining allegations contained in Paragraph 109.

110.     Franklin told Kerr that he felt as if he has been mistreated by Rosenak and has not had the same advantages as other staff.

**ANSWER:**  Defendants admit that Plaintiff told Kerr he felt as if he had been mistreated by Rosenak and not had the same advantages as other staff.  Defendants deny the remaining allegations contained in Paragraph 110.

111.     As an example of the types [*sic*] omissions he endured, Franklin told Kerr her [*sic*] the Mathias was presenting child support business development opportunities to the segment general manager.

**ANSWER:**  Defendants admit that Plaintiff told Kerr that Colleen Mathias was presenting child support business development opportunities to the segment general manager. Defendants deny the remaining allegations contained in Paragraph 111.

112.     Franklin told Kerr that after he and Rosenak's call with Colbeck, Rosenak was enraged, making allegations that Franklin had a reputation for taking excessive executive time off without notice.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 112.

113.     Franklin told Kerr that he ran a report of his time off and working hours. The report indicated Franklin had worked 1,748 hours so far that year and had taken 10 days off, six of which were holidays.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 113.

114.    Kerr disclosed to Franklin that Rosenak had raised a concern about Franklin during a recent conversation between [*sic*] to her.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 114.

115.    Upon information and belief, Kerr asked Franklin what he wanted. In response, Franklin told her that he wanted a non-hostile working environment the way it used to be.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 115.

### OVERSIGHT OF CA LIELINE PROJECT STAFF

116.    MHS operates the California (CA) Lifeline Project.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 116.

117.    The California (CA) Lifeline Project provides discounted home phone and cell phone services to qualified households.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 117.

118.    MHS functions as a third-party administrator for the California Public Utilities Commission ("CPUC") to facilitate enrollment processes to all potential program customers, through outreach, eligibility, enrollment, and call center support.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 118.

119.    MHS began the CA Lifeline Project on or around April 1, 2019.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 119.

120.    MHS' initial contract with CPUC expired on March 31, 2021.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 120.

121.    MHS submitted a proposal to rebid its contract with CPUC to extend the CA Lifeline Project beyond March 31, 2021.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 121.

122.    MHS' contract with CPUC to perform the CA Lifeline Project is a fee for service contract valued at an estimated $37,515,480.67.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 122.

123.    Franklin was responsible for providing oversight over the CA Lifeline Project. *See* Plaintiff's Exhibit F.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 123.

124.    According to Defendant's website, "Maurice leads operations for our child support services programs. His teams support critical state and local projects, including Illinois child support, the California Lifeline program, and the California SSI/SSDI assessment and advocacy programs for homeless adults and children in foster care." *Id.*

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 124.

125.    On September 18, 2019, Rosenak sent an email to Colbeck, Baylinson, and Franklin that described the staff roles and responsibilities on the CA Lifeline Project. Plaintiff's Exhibit G.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 125.

126.    Rosenak's September 18, 2019, email described Franklin's role in the CA Lifeline Project as "Executive Oversight, Policy and Pilots, and Outreach." Id.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 126.

127.    The staff assigned to the CA Lifeline Project reported to Franklin.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 127.

128.    In its July 2020 proposal to rebid the CA Lifeline Project, MHS identified Franklin as the CA Lifeline Project's "Contract Manager VP." Plaintiff's Exhibit H.. [*sic*]

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 128.

129.     Reiber was assigned to the CA Lifeline Project as Project Deputy Director from 2018 until May 30, 2021.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 129.

130.     In his role on the CA Lifeline Project, Reiber was responsible for providing support to Graettinger for carrier coordination and support to Duke for client relation, preparation of materials for meetings, invoice reconciliation, and compliance reviews.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 130.

131.     While assigned to the CA Lifeline Project, Reiber's [*sic*] functioned on the project a service provider liaison.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 131.

132.     Effective December 1, 2019, Reiber's annual salary was $129,667.20.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 132.

133.     Effective December 27, 2020, Reiber's annual salary was $131,671.21.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 133.

134.     Reiber's race is white.

**ANSWER:**  Upon information and belief, Defendants admit that Daryl Reiber is white.

135.     In 2020, Defendants paid Duke approximately $135,000.00.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 135.

136.     Duke's race is white.

**ANSWER:**  Upon information and belief, Defendants admit that Colleen Duke is white.

137.     Duke's principal role with Defendants was to serve as project manager for the CA Lifeline Project.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 137.

138.     In 2020, Defendants paid Rick Dillio an annual salary of approximately $170,000.00.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 138.

139.     Dillio's race is white.

**ANSWER:** Defendants deny the allegations contained in Paragraph 139. Defendants aver that, upon information and belief, Rick DiLollo is white.

140. Duke reported to Franklin on the CA Lifeline Project.

**ANSWER:** Defendants admit the allegations contained in Paragraph 140.

141. Reiber reported to Franklin on the CA Lifeline Project.

**ANSWER:** Defendants admit the allegations contained in Paragraph 141.

142. Duke reported to Franklin on the CA Lifeline Project.

**ANSWER:** Defendants admit the allegations contained in Paragraph 142.

143. Franklin managed a portfolio of projects for Defendants.

**ANSWER:** Defendants deny the allegations contained in Paragraph 143.

144. Duke managed the CA Lifeline Project under Franklin's executive oversight.

**ANSWER:** Defendants deny the allegations contained in Paragraph 144.

145. Reiber did not manage any projects for Defendants.

**ANSWER:** Defendants admit the allegations contained in Paragraph 145.

146. Dillio did not manage or oversee any projects for Defendants.

**ANSWER:** Defendants deny the allegations contained in Paragraph 146.

147. Graettinger did not manager [*sic*] or oversee any projects for Defendants.

**ANSWER:** Defendants admit the allegations contained in Paragraph 147.

148. Franklin's annual salary in 2018-2021 was less than the salaries of Duke, Reiber, Dillio, and Graettinger.

**ANSWER:** Defendants deny the allegations contained in Paragraph 148.

149. On January 1, 2018, Defendants set Franklin's annual salary at $102,000.00. See Plaintiff's Exhibit I.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 149.

150. On December 30, 2018, Defendants set Franklin's annual salary at $120,000.00. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 150.

151. On December 29, 2019, Defendants set Franklin's annual salary at $124,000.00. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 151.

152. Rosenak and Baylinson initially included the CA Lifeline Project in Franklin's financial package demonstrating the financial performance of his projects for FY20.

**ANSWER:** Defendants deny the allegations contained in Paragraph 152.

153. Despite Franklin's management and oversight of the CA Lifeline Project and its staff, Rosenak did not officially list the project as reporting to Franklin in Defendants' system.

**ANSWER:** Defendants deny the allegations contained in Paragraph 153.

154. By not listing Franklin as the executive over the CA Lifeline Project in Defendants' system, the project's financial records (and salary information for its staff) would not be distributed to Franklin.

**ANSWER:** Defendants deny the allegations contained in Paragraph 154.

155. Rosenak's refusal to officially list Franklin as the executive over the CA Lifeline Project was a purposeful attempt to conceal from Franklin the fact that individuals reporting to him were being compensated with salaries that exceed his salary.

**ANSWER:** Defendants deny the allegations contained in Paragraph 155.

156. While assigned to the CA Lifeline Project, Reiber was responsible for day-to-day communications and coordination with carriers, interaction with the client and IT, and communications, meetings, and materials related to carriers.

**ANSWER:** Defendants admit the allegations contained in Paragraph 156.

157. Jim Graettinger ("Graettinger") was assigned to the CA Lifeline Project.

**ANSWER:** Defendants admit the allegations contained in Paragraph 157.

158.    While assigned to the CA Lifeline Project, Graettinger was a service provider liaison.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 158.

159.    While assigned to the CA Lifeline Project, Graettinger was responsible for day-to-day communications and coordination with carriers, interaction with the client and IT, and communications, meetings, and materials related to carriers.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 159.

160.    The CA Lifeline Project was among those projects listed in Franklin's portfolio in his FY21 Strategy & Operating Plans. See Plaintiff's Exhibit J.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 160.

161.    In its 2017 proposal to be selected to perform the CA Lifeline Project, MHS identified Franklin as the "Contract Manager" with all project level staff ultimately reporting to him. See Plaintiff's Exhibit K.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 161.

162.    Graettinger was listed in MHS' 2017 CA Lifeline proposal at [*sic*] a "Liaison to Service Providers," who was to report to the project's operations manager, T. Broff, who was to report to the project's program manager, S. Clark, who was to report to the contract manager, Franklin. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 162.

163.    On December 16, 2020, Kerr sent Franklin a text message to schedule a meeting with him to discuss the staff reorganization that she was planning. See Plaintiff's Exhibit L.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 163.

### ALLEGED LEAD VICE PRESIDENT POSITIONS

164. Kerr assigned Boerner to assist Blaschke Treharne with the reorganization and development of the lead vice president position descriptions.

**ANSWER:** Defendants deny the allegations contained in Paragraph 164.

165. In early 2021, the Human Services Workforce and Child Support group announced that it was reorganizing its leadership staff by creating four lead vice presidents positions that would report to the group's senior vice president, Blaschke Treharne.

**ANSWER:** Defendants deny the allegations contained in Paragraph 165.

166. Defendants posted a position announcement for a Lead Vice President – Employer Services reporting to Blaschke Treharne. See Plaintiff's Exhibit M.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 166.

167. The Lead Vice President – Employer Services position minimally required a bachelor's degree in a related field from an accredited college or university required. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 167.

168. Blaschke Treharne held a call with the vice presidents that reported to her to discuss the lead vice president position announcements. During that call, Blaschke Treharne advised the potential candidates for the positions that experience can be substituted for education.

**ANSWER:** Defendants lack knowledge regarding the allegations contained in Paragraph 168 and therefore deny the same.

169. Franklin met or exceeded the requirements for the Leave [*sic*] Vice President - Employer Services position.

**ANSWER:** Defendants deny the allegations contained in Paragraph 169.

170. The EEO statement in the Lead Vice President – Employer Services position posting did not state that Maximus provides equal employment opportunities to all qualified applicants without regard to their participation in conduct protected by Title VII.

**ANSWER:** Defendants admit that the Lead VP – Employer Services position posting did not state that "Maximus provides equal employment opportunities to all qualified applicants without regard to their participation in conduct protected by Title VII."

171. In early 2021, Defendants posted a position announcement for a Lead VP – Operations reporting to Blaschke Treharne. See Plaintiff's Exhibit N.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 171.

172. The Lead VP – Operations position required "[p]roven experience in Workforce Services and/or Child Support" and executive level experience. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 172.

173. The Lead VP – Operations position's minimum requirements included a Bachelor's degree from an accredited college or university; Master's degree in a related field preferred; a minimum five years' experience in management position in a health or human services related; excellent organizational, and interpersonal, written and verbal communication skills; ability to perform comfortably in a fast paced, deadline oriented work environment; the ability to successfully execute many complex tasks simultaneously; ability to work as a team member as well as independently; excellent people management; demonstrated ability to manage large scale projects; computer literate; preferred qualifications include proven ability establishing and maintaining relationships with community groups, including stakeholder and advocacy organizations. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 173.

174.    Franklin met or exceeded the requirements for the Lead Voice [*sic*] President - Operations.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 174.

175.    Blaschke Treharne initially instructed candidates considering applying to any of the four lead vice president positions to only apply to a single lead vice president position opening.

**ANSWER:**    Defendants admit that Kelly Blaschke Treharne told individuals who were considering applying for four vice president and lead vice president positions to only apply for one position. Defendants deny the remaining allegations contained in Paragraph 175.

176.    Blaschke Treharne subsequently advised the candidates for the lead vice president positions that they were authorized to apply for two lead vice president positions.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 176.

177.    Franklin applied for the Lead Vice President – Employer Services position.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 177.

178.    After his application for the Lead Vice President – Employer Services position, Franklin additionally applied for the Lead Vice President – Operations position.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 178.

179.    On February 26, 2021, Franklin was interviewed by Blaschke Treharne, Kevin Black, Senior Vice President, Human Resources, and Harold Horton, Senior Vice President, Maximus Higher Education Consulting.

**ANSWER:**  Defendants admit that Plaintiff was interviewed by Kelly Blaschke Treharne, Kevin Black (Senior Vice President, Human Capital), and Harold Horton (Senior Vice President, Higher Education). Defendants deny the remaining allegations contained in Paragraph 179.

180.    On or about April 6, 2021, Blaschke Treharne called Franklin to inform him that Nancy Kim had been selected for the Lead Vice President – Employer Services.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 180.

181.    Blaschke Treharne told Franklin that the four lead vice president positions had been filled by Lisa Simmons, Rachel Zietlow, Nancy Kim, and Kelly Boerner.

**ANSWER:** Defendants admit that Kelly Blaschke Treharne told Plaintiff that positions had been filled by Lisa Simmons, Rachel Zietlow, Nancy Kim, and Kelly Boerner. Defendants deny the remaining allegations contained in Paragraph 181.

182. Upon information and belief, Blaschke Treharne told Franklin that he needed to get more experience and exposure and just keep building on what he was doing in order to be promoted to a leadership role in the future.

**ANSWER:** Defendants admit the allegations contained in Paragraph 182.

183. When Franklin asked Blaschke Treharne what specific exposure did she believe [*sic*] he was deficient, upon information and belief, Blaschke Treharne responded by telling Franklin that he needed to continue to work in a senior role and work on special projects at the corporate level and across the entire practice.

**ANSWER:** Defendants admit the allegations contained in Paragraph 183.

184. In response, Franklin told Blaschke Treharne that he had already had the kind of exposure that she spoke of. Upon information and belief, Blaschke Treharne told him that he "absolutely" did have the kind of exposure, but she wanted him to get more.

**ANSWER:** Defendants admit that Plaintiff made the statements alleged in Paragraph 184. Defendants deny the remaining allegations contained in Paragraph 184.

185. Franklin was featured on Defendant's website in an article wherein he discussed his insight into running effective program operations. See Plaintiff's Exhibit O.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 185.

186. Franklin told Blaschke Treharne that he was the most experienced executive with child support experience yet leadership was writing Zietlow in as the executive selected to lead new [*sic*] the projects in new bid proposals. Franklin reminded BT that when Maximus acquired Public Studies, Inc., those projects were failing and he was the one who turned those projects around.

**ANSWER:** Defendants admit that Plaintiff made the statements alleged in Paragraph 186. Defendants deny the remaining allegations contained in Paragraph 186.

187.    In response to Blaschke Treharne detail [*sic*] of the specific exposure Franklin needed to be promoted into a leadership vice president role, Franklin told her that he believed that he has already done the things that she identified.

**ANSWER:**  Defendants admit that Plaintiff made the statements alleged in Paragraph 187.

Defendants deny the remaining allegations contained in Paragraph 187.

188.    During his April 6, 2021, call with Blaschke Treharne, Franklin observed that Boerner was selected for the Lead Vice President – Operations position after having a significant role in developing the lead vice president job descriptions which gave her an unfair advantage for the lead vice president position that she was ultimately selected to fulfill.

**ANSWER:**  Defendants deny the allegations in Paragraph 188.

189.    During his April 6, 2021 call with Blaschke Treharne, Franklin told her that he felt that he was not selected for the lead vice president – employer services position because of his race and gender and in retaliation for taking a position against Rosenak's unethical practices that were against Defendants' policy.

In response to Franklin's assertion that he had the experience that she spoke of, upon information and belief, Blaschke Treharne told Franklin that he absolutely had.

**ANSWER:**  Defendants admit that Plaintiff told Kelly Blaschke Treharne that he felt he was not selected for the Lead VP – Employer Services position because of his gender. Defendants deny the remaining allegations contained in Paragraph 189.

190.    During their April 6, 2021, call, Franklin disclosed to Blaschke Treharne that he did felt that, as an African American man, there was no opportunity to grow any further in the company.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 190.

191.    During his April 6, 2021 call with Blaschke Treharne, Franklin told her that he did not understand why every time there was an opportunity for him to advance in his career, management managed to identify an excuse to delay or deny his advancement. He further noted the denial of advancement opportunities did not start until [*sic*] made complaints about unethical practices he observed from Rosenak and Kerr.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 191.

192.    Franklin told Blaschke Treharne that he applied for 14 internally posted positions when he reported to Rosenak and was not selected for a single position.

**ANSWER**:  Defendants admit that Plaintiff told Kelly Blashke Treharne that he applied for internally posted positions when he reported to Rosenak but that he was not hired for them. Defendants deny the remaining allegations contained in Paragraph 192.

193.    Franklin told Blaschke Treharne the stress and mental abuse that he was subjected to by the Defendants caused him to seek counseling from a psychiatrist for the first time in his life.

**ANSWER**:  Defendants admit that Plaintiff told Kelly Blaschke Treharne that he has seen a psychiatrist. Defendants deny the remaining allegations contained in Paragraph 193.

194.    Franklin told Blaschke Treharne that he believed that moved from Rosenak's organization, where he believed that he was a stronger contender for promotion, to Blaschke Treharne's organization, where his candidacy for promotion would be weaker, was orchestrated with the intent to deny him further advancement.

**ANSWER**:  Defendants admit that Plaintiff told Kelly Blaschke Treharne that believed his chances for a promotion were not as strong in her organization as in Laura Rosenak's organization. Defendants deny the remaining allegations contained in Paragraph 194.

195.    Franklin told Blaschke Treharne that he had gone years being underpaid and overlooked but he kept focusing on is [*sic*] work because he had a passion for growing the business.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 195.

196.    Franklin told Blaschke Treharne that he understands now that only women get promoted at Maximus.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 196.

197.    Franklin told Blaschke Treharne that he received calls from Colbeck to remind him that Rosenak would likely be contacted by the hiring manager to solicit her blessing before he could be selected for a different position with the company.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 197.

198.    On April 8, 2021, Franklin exchanged email with Horton seeking feedback from his interview for the Lead Vice President – Employer Services position.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 198.

199.    Franklin informed Horton that he was not selected for the position.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 199.

200.    Horton told Franklin that he "was not involved in the decision making. I was just an interviewer, so I do not know the specifics and details around the decision. I thought your interview was impressive and I would be happy to provide perspective on the interview which was the only part that I was involved in." See Plaintiff's Exhibit G.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 200.

201.    Effective May 1, 2021, Defendants reassigned Franklin to reported [*sic*] to Kim.

**ANSWER:**  Defendants admit that Nancy Kim became Plaintiff's direct supervisor in or about May 2021. Defendants deny the remaining allegations contained in Paragraph 201.

## ALLEGED ETHICS COMPLAINTS

202.    On or about April 12, 2021, Franklin filed an ethics complaint with Defendants, alleging that the hiring process for the leave [*sic*] vice president position was inequitable and discriminatory on the basis of gender. See Plaintiff's Exhibit P.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 202.

203.    On or about April 27, 2021, Franklin filed an ethics complaint with Defendants alleging that Defendants subjected him disparate treatment based on his race and gender and retaliation for activity protected by Title VII when Defendant's failed to promote him to either the Lead Vice President - Employer Services or Lead Vice President - Operations positions. See Plaintiff's Exhibit Q.

**ANSWER:**  Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 203.

204.    Franklin's April 27th ethics complaint noted violations of the Defendants' fair hiring policies. Id.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 204.

205. Franklin's ethics complaint further alleged that he had been subjected to discriminatory racial harassment. Id.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 205.

206. Franklin's ethics complaint detail [*sic*] Rosenak's scheme to conceal the fact that she was compensating Franklin's subordinate staff at a higher rate than he was compensated. Id.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 206.

207. Franklin's ethics complaint detailed specific instances in which rose neck [*sic*] had subjected him to a hostile work environment or took actions in retaliation from that supporting her allegations against Stith. Id.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 207.

208. Franklin detailed in his ethics complaint a situation in which rose neck [*sic*] attempted to get Franklin to admit to a spurious allegation of sexual harassment concocted by a subordinate staff in an attempt to get Franklin fired to assume his position. Id.

**ANSWER**: Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 208.

209. Franklin detailed the removal of his projects and the ongoing effort to exclude him from rebids and business capture opportunities. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 209.

210. Franklin concluded his ethics complaint by stating that he did not feel support from his local leadership and was not comfortable that HR is going to intervene. Id.

**ANSWER:** Defendants respectfully refer to the Court to the cited document for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 210.

211. On or about June 1, 2021, Franklin, through his counsel, Matt Carpenter of the CTM Legal Group, LLC, sent Defendant's [sic] correspondence detailing various violations of federal civil rights laws by the Defendants.

**ANSWER:** Defendants respectfully refer the Court to the referenced correspondence for its complete content and meaning, and on such basis Defendants deny the allegations contained in Paragraph 211.

212. On or about July 16, 2021, Defendants, through their counsel, Nathalie M. Ohanian, responded the [sic] Franklin's June 1st letter, refuting his allegations of discrimination and retaliation. See Plaintiff's Exhibit R.

**ANSWER:** There is no Exhibit R attached to Plaintiff's Second Amended Complaint, and on such basis Defendants deny the allegations contained in Paragraph 212.

213. In her July 16, 2021, letter, Ohanian wrote, "given the allegations in your letter, it is clear that Mr. Franklin does not see his current work environment as being positive or productive. To that end, we agree that it is best for both parties to part ways and amicably and look forward to speaking with you to explore possible options." Id.

**ANSWER:** There is no Exhibit R attached to Plaintiff's Second Amended Complaint, and on such basis Defendants deny the allegations contained in Paragraph 213.

214. On or about July 1, 2021, Franklin submitted a request for leave under the Family and Medical Leave Act for his own serious health condition.

**ANSWER:** Defendants admit that Plaintiff submitted a request for leave under the Family and Medical Leave Act on or about July 1, 2021. Defendants deny the remaining allegations contained in Paragraph 214.

## COUNT I
## ALLEGED RETALIATORY DISCHARGE FOR COMPLAINING ABOUT EMPLOYMENT PRACTICES MADE UNLAWVUL BY TITLE VII

215. Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

216. Defendants terminated Plaintiff's employment in retaliation for ethics complaints filed by the Plaintiff on April 12, 2021, and April 27, 2021, alleging Defendants discriminated against Plaintiff on the basis of his race, gender, and in retaliation for opposing Rosenak's attempt to further discriminate against Stith on the basis of his race by proffering false allegations against Stith.

**ANSWER:** Defendants deny the allegations contained in Paragraph 216.

217. Plaintiff's April 12, 2001 and April 27, 2001 ethics complaints we're [*sic*] protected activities under Title VII.

**ANSWER:** Defendants deny the allegation contained in Paragraph 217.

218. Defendants [*sic*] actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:** Defendants deny the allegation contained in Paragraph 218.

219. As a result of defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 219.

## COUNT II
## ALLEGED RETALIATORY DISCHARGE FOR PARTICIPATION IN ACTIVITY PROTECTED BY TITLE VII

220. Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

221.    Defendants terminated Plaintiff's employment in retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission and for filing the instant action in the Northern District of Illinois.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 221.

222.    Plaintiff's filing of a Charge of Discrimination and filing an [*sic*] lawsuit alleging violations of Title VII constitute participation in activities protected by Title VII.

**ANSWER:**  Defendants deny the allegation contained in Paragraph 222.

223.    Defendants [*sic*] actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 223.

224.    As a result of defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 224.

## COUNT III
## PUNITIVE DAMAGES FOR ALLEGED RETALIATORY DICHARGE FOR COMPLAINING ABOUT EMPLOYMENT PRACTICES MADE UNLAWFUL BY TITLE VII

225.    Plaintiff incorporates paragraphs 1-224 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–224 as if fully set forth herein.

226.    Defendants terminated Plaintiff's employment because of complaints made by Plaintiff alleging that Defendants subjected him to discriminatory treatment on the basis of his race and gender and retaliated against him for opposing employment practices may [*sic*] unlawful by Title VII.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 226.

227.    Defendants involuntarily terminated Plaintiffs [*sic*] employment.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 227.

228.    Defendants have yet to proffer any substantive reason for terminating Plaintiff's employment.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 228.

229.    Defendants agents made statements suggesting that Defendants terminated Plaintiffs [*sic*] employment because of complaints that Plaintiff made alleging that the Defendant had engaged in employment practices made unlawful by Title VII.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 229.

230.    Defendants actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 230.

231.    As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 231.

## COUNT IV
## PUNITIVE DAMAGES FOR ALLEGED RETALIATORY DISCHARGE FOR PARTICIPATION IN ACTIVITY PROTECTED BY TITLE VII

232.    Plaintiff incorporates paragraphs 1-224 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–224 as if fully set forth herein.

233.    Defendants terminated Plaintiff's employment because he filed a Charge of Discrimination and the instant lawsuit, both alleging that defendants engaged in employment practices made unlawful Title VII.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 233.

234.    Defendants terminated Plaintiff's employment in the face of a perceived risk that is [*sic*] actions will violate federal law.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 234.

235.    Defendants' actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 235.

236.    As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 236.

## COUNT V
## ALLEGED DISPARATE TREATMENT BASED ON RACE
## IN VIOLATION OF TITLE VII (Pay Disparity)

237.     Plaintiff incorporates paragraphs 1-224 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–224 as if fully set forth herein.

238.     Defendants discriminated against the plaintiff based upon his race by paying him at lower rate than individuals who were either subordinate to or a direct report of the Plaintiff.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 238.

239.     Plaintiff's race is black.

**ANSWER:**  Upon information and belief, Defendants admit the allegations contained in Paragraph

239.

240.     Defendants discriminated against the Plaintiff by paying Plaintiff's CA Lifeline Project staff who were not in Plaintiff's protected class a greater salary than that of the Plaintiff.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 240.

241.     Defendants attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate than his direct reports by refusing to officially designated the plaintiff as those individuals [*sic*] manager despite each reporting to Plaintiff operationally.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 241.

242.     Defendants [*sic*] actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 242.

243.     As a result of Defendants [*sic*] conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 243.

## COUNT VI
## PUNITIVE DAMAGES FOR ALLEGED DISPARATE TREATMENT
## BASED ON RACE IN VIOLATION OF TITLE VII (Compensation)

244.     Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

245.     Defendants knowingly and purposely discriminated against Plaintiff for years by paying him a lower annual salary than his subordinate staff on the CA Lifeline Project.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 245.

246.     Defendants attempted to conceal the disparity between Plaintiff's salary and the salary of his subordinate staff on the CA Lifeline Project by deliberately refusing the [*sic*] officially designate Plaintiff as the executive over the project in an attempt to avoid have the project's financial records distributed to the Plaintiff.

**ANSWER:**     Defendants deny the allegation contained in Paragraph 246.

247.     Defendants paid Plaintiff less than his subordinate staff because of his race in the face of a perceived risk that is [*sic*] actions will violate federal law.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 247.

248.     Defendants' actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 248.

249.     As a result of Defendants [*sic*] conduct, Plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 249.

## ALLEGED INTENTIONAL DISPARATE TREATMENT IN COMPENSATION BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981

250.     Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**     Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

251.     Defendants discriminated against the Plaintiff based upon his race by paying him at lower [*sic*] rate than individuals who were either subordinate to or a direct report of the Plaintiff.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 251.

252.     Plaintiff's race is black.

**ANSWER:**     Upon information and belief, Defendants admit the allegations contained in Paragraph

252.

253.     Defendants discriminated against the Plaintiff by paying Plaintiff's CA Lifeline Project staff who were not in Plaintiff's protected class a greater salary than that of the Plaintiff.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 253.

254.    Defendants attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate than his direct reports by refusing to officially designated the plaintiff as those individuals [*sic*] manager despite each reporting to Plaintiff operationally.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 254.

255.    Defendants [*sic*] actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 255.

256.    As a result of Defendants [*sic*] conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 256.

## COUNT VII
## ALLEGED RETALIATION FOR OPPOSING ROSENAK'S FALSE ALLEGATIONS AGAINST STITH (Reorg)

257.    Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

258.    Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

259.    Defendants retaliated against the Plaintiff for refusing to corroborate Rosenak's spurious claim that Stith was hostile and verbally abusive to her.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 259.

260.    Rosenak's claim against Stith arose only after Stith made allegations of discriminatory treatment based upon his race. Defendants retaliated against the Plaintiff by reorganizing the department so as to require the Plaintiff to have to reapply and compete for his job, reassigned projects previously assigned to the Plaintiff, demanding that Plaintiff accept responsibility for spurious allegations of sexual harassment against him, enduring constant threats of disciplinary action, and other such actions.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 260.

261.    Similarly, Rosenak made an allegation of sexual harassment against a client in the State of Maryland upon learning that the client intended upon having her removed from the project. Rosenak's allegation resulted in the accused individual being terminated from his employment.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 261.

262.    Defendants [*sic*] actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff's federally protected rights.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 262.

263.    As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 263.

**COUNT VIII**
**ALLEGED FAILURE TO PROMOTE ON THE BASIS OF RACE**
**IN VIOLATION OF TITLE VII**

264.    Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

265.    Plaintiff is [*sic*] race is black and therefore he is in a protected class.

**ANSWER:**   Upon information and belief, Defendants admit that Plaintiff's race is black. Defendants deny the remaining allegations contained in Paragraph 265.

266.    Plaintiff applied for Defendant's Lead Vice President - Employer Services position.

**ANSWER:**   Defendants admit that Plaintiff applied for the Lead VP – Employer Services position. Defendants deny the remaining allegations contained in Paragraph 266.

267.    Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Employer Services position.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 267.

268.    Defendants promoted Nany [*sic*] Kim to the position.

**ANSWER:** Defendants admit that Nancy Kim was promoted to the Lead VP – Employer Services position. Defendants deny the remaining allegations contained in Paragraph 268.

269.    Nancy Kim is outside of Plaintiff's protected class.

**ANSWER:**  Upon information and belief, Defendants admit Nancy Kim is not black.  Defendants deny the remaining allegations contained in Paragraph 269.

270.    Nancy Kim is not better qualified for the position that [*sic*] the Plaintiff.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 270.

271.    Defendants rejected Plaintiff for the Lead Vice President - Employer Services position.

**ANSWER:**  Defendants deny the allegation contained in Paragraph 271.

272.    As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 272.

### COUNT IX
### ALLEGED FAILURE TO PROMOTE ON THE BASIS OF RACE
### IN VIOLATION OF 42 U.S.C. § 1981

273.    Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

274.    Plaintiff is [*sic*] race is black and therefore he is in a protected class.

**ANSWER:**   Upon information and belief, Defendants admit that Plaintiff's race is black. Defendants deny the remaining allegations contained in Paragraph 274.

275.    Plaintiff applied for Defendant's Lead Vice President - Employer Services position.

**ANSWER:**   Defendants admit that Plaintiff applied for the Lead VP – Employer Services position. Defendants deny the remaining allegations contained in Paragraph 275.

276.    Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Employer Services position.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 276.

277.    Defendants promoted Nany [*sic*] Kim to the position.

**ANSWER:** Defendants admit that Nancy Kim was promoted to the Lead VP – Employer Services position. Defendants deny the remaining allegations contained in Paragraph 277.

278.    Nancy Kim is outside of Plaintiff's protected class.

**ANSWER:** Upon information and belief, Defendants admit Nancy Kim is not black. Defendants deny the remaining allegations contained in Paragraph 278.

279.    Nancy Kim is not better qualified for the position that the Plaintiff.

**ANSWER:** Defendants deny the allegations contained in Paragraph 279.

280.    Defendants rejected Plaintiff for the Lead Vice President - Employer Services position.

**ANSWER:** Defendants deny the allegations contained in Paragraph 280.

281.    As a result of Defendants conduct, plaintiff a [sic] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 281.

## COUNT X
## ALLEGED FAILURE TO PROMOTE ON BASIS OF RACE
## IN VIOLATION OF TITLE VII

282.    Plaintiff incorporates paragraphs 1-180 as if there were fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1–180 as if fully set forth herein.

283.    Plaintiff is [sic] race is black and therefore he is in a protected class.

**ANSWER:** Upon information and belief, Defendants admit that Plaintiff's race is black. Defendants deny the remaining allegations contained in Paragraph 283.

284.    Plaintiff applied for Defendant's Lead Vice President - Operations position.

**ANSWER:** Defendants admit that Plaintiff applied for the Lead VP – Operations position. Defendants deny the remaining allegations contained in Paragraph 284.

285.    Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President – Operations position.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 285.

286.   Defendants promoted Kelly Boerner to the position.

**ANSWER:**   Defendants admit that Kelly Boerner was promoted to Lead VP – Operations.

Defendants deny the remaining allegations contained in Paragraph 286.

287.   Kelly Boerner is outside of Plaintiff's protected class.

**ANSWER:**   Upon information and belief, Defendants admit Kelly Boerner is not black.

Defendants deny the remaining allegations contained in Paragraph 287.

288.   Kelly Boerner is not better qualified for the position that [*sic*] the Plaintiff.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 288.

289.   Defendants rejected Plaintiff for the Lead Vice President – Operations position.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 289.

290.   As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 290.

## COUNT XI
### ALLEGED FAILURE TO PROMOTE ON BASIS OF RACE
### IN VIOLATION OF 42 U.S.C. § 1981

291.   Plaintiff is [*sic*] race is black and therefore he is in a protected class.

**ANSWER:**   Upon information and belief, Defendants admit that Plaintiff's race is black.

Defendants deny the remaining allegations contained in Paragraph 291.

292.   Plaintiff applied for Defendant's Lead Vice President - Operations position.

**ANSWER:**  Defendants deny the allegation contained in Paragraph 292.

293.   Plaintiff was fully qualified for and met all of the requirements for the Lead Vice President - Operations position

**ANSWER:**  Defendants deny the allegations contained in Paragraph 293.

294.   Defendants promoted Kelly Boerner to the position.

**ANSWER:** Defendants admit that Kelly Boerner was promoted to Lead VP – Operations.

Defendants deny the remaining allegations contained in Paragraph 294.

295. Kelly Boerner is outside of Plaintiff's protected class.

**ANSWER:** Upon information and belief, Defendants admit that Kelly Boerner is not black.

Defendants deny the remaining allegations contained in Paragraph 295.

296. Kelly Boerner is not better qualified for the position that [*sic*] the Plaintiff.

**ANSWER:** Defendants deny the allegations contained in Paragraph 296.

297. Defendants rejected Plaintiff for the Lead Vice President - Operations.

**ANSWER:** Defendants deny the allegation contained in Paragraph 297.

298. As a result of Defendants conduct, plaintiff a [*sic*] suffer and continues to suffer loss of income, loss fringe benefits, mental anguish, mental emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life, and has had to because the costs of this action and attorney's fees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 298.

## COUNT XI [*SIC*]
## ALLEGED INTERFERENCE WITH THE EXERCISED OF [*SIC*] RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT

299. Plaintiff took leave under the Family and Medical Leave Act in July 2021.

**ANSWER:** Defendants admit the allegations contained in Paragraph 299.

300. Defendants interfered with Plaintiff's rights under the Family and Medical Leave Act by terminating his employment instead of restoring him to his position as required by the Act.

**ANSWER:** Defendants deny the allegations contained in Paragraph 300.

301. At the conclusion of his leave, Plaintiff attempted to return to his employment with the Defendants but was denied. Plaintiff was an eligible employee within the meaning of the FMLA.

**ANSWER:** Defendants deny the allegations contained in Paragraph 301.

302. Plaintiff was employed by Defendants for at least 12 months.

**ANSWER:** Defendants deny the allegations contained in Paragraph 302.

303.    Plaintiff had performed more than 1,250 hours of service for Maximus Services LLC during the previous 12-month period.

**ANSWER:**  Upon information and belief, Defendants admit the allegations contained in Paragraph

303.

304.    Defendants are covered employers.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 304.

305.    Defendants a person [*sic*] engaged in commerce.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 305.

306.    Defendants employed 50 for [*sic*] more employees for each working day during each of 20 or more calendar workweeks in the years 2021 or 2020.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 306.

307.    Plaintiff suffered damages including lost wages, benefits, bonuses, compensatory damages, and attorneys' fees.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 307.

### COUNT XII
### ALLEGED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

308.    Defendant intentional [*sic*] subjected Plaintiff to severe and nearly constant emotional distress through its campaigned [*sic*] of discrimination and retaliation to have Plaintiff removed from his employment with Defendants.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 308.

309.    Defendant's act of compensating Plaintiff's subordinate staff at a higher rate than his salary for years was extreme and outrageous.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 309.

310.    Defendant's act of requiring Plaintiff to apply and compete for a position that he already held was extreme and outrageous.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 310.

311.    The extreme and outrageous acts caused Plaintiff severe emotional distress therapy from a psychiatrist.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 311.

## ADDITIONAL ANSWER AND AVERMENTS

Defendants deny all claims and allegations not unequivocally admitted herein. Defendants deny the allegations contained in Plaintiff's "WHEREFORE" clause, including subsections (A) through (H) and deny that Plaintiff is entitled to the relief requested.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof as to any of the following defenses where the law does not impose such burden on Defendants, Defendants assert the following defenses:

1.     Plaintiff cannot state a claim upon which relief can be granted.

2.     Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

3.     At all relevant times hereto, Defendants had a specific policy against unlawful discrimination, harassment, and retaliation, and such policy was well-known to Defendants employees.

4.     To the extent that Plaintiff has made allegations in the Complaint or attempts to assert claims which relate to alleged acts of discrimination, harassment, or retaliation not encompassed within the charge of discrimination filed with and investigated by the EEOC or any appropriate state or local agency, such claims are barred for failure to exhaust administrative remedies. 42 U.S.C. § 2000e-5(e)(1).

5.     To the extent Plaintiff seeks equitable relief, he is not entitled to any insofar as he has an adequate remedy at law. Plaintiff is not entitled to a trial by jury as to any issue of law or fact relating to any alleged entitlement to any form of equitable relief.

6.     To the extent that Defendants learn that Plaintiff engaged in wrongdoing which would have led to his termination of employment, Plaintiff's damages are limited by the doctrine of after-acquired evidence.

7.      To the extent that Plaintiff establishes liability against Defendants, the amount of compensatory and punitive damages is limited as provided by law.

8.      Defendants engaged in good-faith efforts to comply with Title VII and all other applicable laws, and therefore cannot be liable for punitive damages. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

9.      To the extent Plaintiff seeks to recover for alleged discrimination, harassment, or retaliation which occurred more than 300 days before he filed his charge of discrimination with the EEOC, such claims are time-barred and should be dismissed.

10.     Plaintiff's claim for damages must be eliminated or reduced to the extent that he is, has been, or will be compensated from collateral sources.

11.     To the extent that Plaintiff failed to mitigate any of his claimed injuries or damages by failing to seek new employment or otherwise, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his claimed injuries or damages, commensurate with the degree of failure to mitigate attributed to Plaintiff.

12.     Assuming, *arguendo*, that Plaintiff can establish that any protected category or alleged protected activity played any part in any decisions relative to Plaintiff's employment— which Defendants deny—the same course of action would have been taken even in the absence of any unlawful consideration.

13.     Any alleged damages sustained by Plaintiff, if any, were proximately caused and occasioned by the acts and omissions of Plaintiff, said acts and omissions being the sole cause of Plaintiff's alleged damages. Therefore, Defendants plead the intervening acts and omissions of Plaintiff as a complete bar to Plaintiff's claims against Defendants.

14.    Plaintiff is estopped from claiming damages to the extent such alleged damages are associated with the separation of his employment, because he voluntarily resigned that employment.

15.    Although Defendants deny that Plaintiff was exposed to a hostile work environment, Defendants asserts that they exercised reasonable care to prevent and correct promptly any harassing behavior by its employees, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunity provided or to avoid harm otherwise.

16.    To the extent Plaintiff complained to Defendants about alleged unlawful treatment, Defendants took immediate and adequate steps to investigate Plaintiff's complaints.

17.    Any claim for liquidated damages under the FMLA is barred because Defendants acted in good faith and Defendants had reasonable grounds to believe their actions were not in violation of the FMLA.

18.    Plaintiff's claim is barred because Defendants acted in good faith to comply with U.S. Department of Labor guidance and guidelines, as they existed at the time of the challenged decision(s).

19.    Plaintiff was not eligible for FMLA.

20.    Plaintiff's claims are barred to the extent he failed to submit and return FMLA certification forms to support his absence.

21.    Plaintiff's FMLA claim is barred to the extent his resignation had been proffered and accepted prior to the expiration of any FMLA leave.

22.    Defendants expressly reserve the right to amend their Answer and Affirmative Defenses to Plaintiff's Complaint, and to assert any additional defenses discovered as a result of its own investigation or formal discovery in this action.

Dated: June 17, 2022

Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN
SERVICES, INC., AND MAXIMUS
SERVICES LLC**

*/s/ Kathryn J. Barry*
One of Its Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
J. Casey Leech
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Fax: (312) 787-4995
kathryn.moran@jacksonlewis.com
kathryn.barry@jacksonlewis.com
casey.leech@jacksonlewis.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that on June 17, 2022 she caused a true and correct copy of the foregoing ***Defendants' Answer and Defenses to Plaintiff's Second Amended Complaint*** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

*/s/ Kathryn J. Barry*