IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE FRANKLIN, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21-cv-04367 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| MAXIMUS, INC., MAXIMUS HUMAN SERVICES, ) | Magistrate Judge Jeffrey T. Gilbert |
| INC., and MAXIMUS SERVICES LLC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, TO COMPEL AND EXTEND DEFENDANTS' TIME TO COMPLETE DISCOVERY**

Defendants Maximus, Inc., Maximus Human Services, Inc., and Maximus Services LLC (collectively, "Maximus" or "Defendants"), pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent authority, moves to dismiss Plaintiff's Second Amended Complaint, with prejudice, due to Plaintiff's misrepresentations during discovery and failure to comply with this Court's orders or, in the alternative, to compel Plaintiff to provide complete and accurate responses to Maximus' discovery requests and extend Maximus' time to complete discovery.

**INTRODUCTION**

Maximus has tried, unsuccessfully, to proceed with this litigation. Unfortunately, Plaintiff has failed to provide basic discovery responses, even when ordered to do so by this Court. Even more, the discovery Plaintiff has provided contains numerous misrepresentations and omissions, all of which were recently discovered by Maximus as part of its own, independent investigation into Plaintiff's purported damages. Plaintiff's failure to provide discovery, coupled with his false and misleading statements, evidences a disregard for the discovery process and for the Orders of this Court and is sufficient to warrant dismissal. In the alternative, Maximus requests Plaintiff be compelled, again, to provide complete responses to Maximus' discovery requests, including Interrogatories No. 11, 15, and 16 and Document Request No. 19 and 24. Should this matter proceed, Maximus further requests that

1

its time to complete discovery be extended through April 30, 2023, so it can obtain this information before deposing Plaintiff. While Maximus noticed Plaintiff's deposition for February 23, 2023, his late and incomplete responses to Maximus' Interrogatory No. 11, together with his recently-discovered omissions and misrepresentations regarding his employment and litigation history, make it impossible to move forward as planned. Maximus has no choice but to ask this Court to compel complete responses and pursue additional discovery regarding these issues so it can resolve Plaintiff's numerous inaccurate statements. Deposing Plaintiff before it has the opportunity to do so would prejudice Maximus, both because it would not be able to question Plaintiff regarding these issues and because it would not know how to best apportion his seven (7) hours of questioning. Finally, Maximus respectfully requests the Court order Plaintiff to pay its costs in obtaining information regarding The High Society Entertainment Group and his litigation history (which he should have previously disclosed) and for the costs of this motion.

## FACTUAL BACKGROUND

This is not the first time Maximus has sought the Court's assistance with discovery. Prior to filing the instant motion, Maximus was forced to file a motion to compel the production of various documents and interrogatory responses regarding, *inter alia*, Plaintiff's post-employment income and business activities, after Plaintiff refused, repeatedly, to provide this basic information. ECF No. 77. Maximus will not restate the factual history that led to the filing of that motion, except to note that it moved to compel responses to the following interrogatories served on July 13, 2022:

- **Interrogatory No. 11**, which requested information about the audio recordings that Plaintiff previously produced in connection with this litigation, including, *inter alia*, when the recordings were made, who participated in them, and where Plaintiff was located during the recording.
- **Interrogatory No. 14**, which requested information about employment held by Plaintiff since 2008, "including but not limited to self-employment (which includes services provided by you as an independent contractor)."
- **Interrogatory No. 15**, which requested information about "all income received from whatever source" since January 1, 2008, including, *inter alia*, income from employment or self-employment, and governmental and other benefits or other support.
- **Interrogatory No. 16**, which requested information about all criminal, administrative, and

2

bankruptcy proceedings, as well as any civil suits, in which Plaintiff has been involved. *See* Ex. A (Defendants' First Set of Interrogatory Requests to Plaintiff). On November 29, 2022, Magistrate Judge Gilbert ordered Plaintiff to respond to each of these interrogatories, and Maximus' corresponding document requests (attached as Ex. B), by December 15, 2022. ECF No. 86.[1]

## I. Plaintiff's Failure to Comply with Magistrate Judge Gilbert's Order

### A. Plaintiff Failed to Timely Respond to the Outstanding Interrogatories

Plaintiff did not comply with Magistrate Judge Gilbert's November 29, 2022 Order. Plaintiff served his Second Supplemental Responses to Defendants' First Set of Interrogatories on December 16, 2022, one day after the deadline set forth in the Order. *See* Ex. C (Plaintiff's Second Supplemental Responses to Defendants' First Set of Interrogatories). Plaintiff's Second Supplemental Interrogatory Responses only contained additional information responsive to Interrogatory No. 4. He did not respond to *any* other interrogatories, including those referenced above. *Id.* On December 20, 2022, Plaintiff served his Third Supplemental Responses to Defendants' First Set of Interrogatories, which contained responses to Interrogatories No. 15 and 16. *See* Ex. D. Plaintiff's Third Supplemental Interrogatory Responses, however, did *not* include a response to Interrogatory No. 11. *See id.*

By letter dated January 6, 2023, Maximus' counsel informed Plaintiff, *inter alia*, that he had not responded to Interrogatory No. 11. *See* Ex. E. Plaintiff's response to Maximus' January 6 letter did not address Interrogatory No. 11 or his failure to answer it. *See* Ex. F. During a meet-and-confer teleconference on February 10, 2023, the undersigned again asked Plaintiff's counsel when they could expect a response to Interrogatory No. 11 and explained they could not move forward with Plaintiff's deposition until they received a full response. Plaintiff produced 232 recordings during discovery, and Maximus requires an understanding of who is on those recordings and when those recordings were made. Maximus' counsel cannot spend hours at Plaintiff's deposition confirming this basic

---

[1] The Court limited Interrogatory No. 15 and Request for Production No. 30 to the time period of January 1, 2021 to the present; Plaintiff was ordered to respond to the remaining interrogatories as written. ECF No. 86.

3

information, nor can it diligently question Plaintiff regarding the recordings without an understanding of who was recorded. Plaintiff's counsel confirmed he would provide the information requested in Interrogatory No. 11 no later than February 17, 2023. Maximus' counsel believed they could proceed with Plaintiff's deposition (scheduled for February 23, 2023) so long as they had a full response to Interrogatory No. 11 by February 17. Thus, Maximus did not seek Court intervention.

This was a mistake. Plaintiff did not respond to Interrogatory No. 11 until February 20, 2023— more than two months after the date by which he was ordered to comply, seven months after Maximus propounded the interrogatory, and three days after the date on which his counsel told Maximus he would respond.[2] *See* Ex. G (Plaintiff's Fifth Supplemental Responses to Defendants' First Set of Interrogatories). Plaintiff's response remains incomplete, and the verification page is not signed. He produced 232 audio recordings but only produced information about 226 of those recordings. Of those 226 recordings, he has not identified the participants (or stated that he could not identify the participants) for ten recordings, and he only vaguely identifies the participants in numerous others (e.g., "Carrie Archer, Laura Rosenak, others", "Illinois client" and "Maurice Franklin, Jeremy T").[3] Moreover, Plaintiff claims not to know what state he was physically located in for the vast majority of the recordings—despite knowing the date the recordings were made. It is difficult to understand how Plaintiff could not determine what *state* he was in on a specific date (for example, by referring to flight records or calendars)—particularly when many of these recordings were made during the pandemic.[4]

Maximus did not ask Plaintiff to record hundreds of conversations during his employment. It simply asked him to identify information about the recordings he made and produced. It should not have to fight for months for this information, nor should Plaintiff have ignored this Court's Order compelling him to provide it.

---

[2] Maximus' counsel asked for an explanation as to the delayed response. None was provided.
[3] Some, but not all, of these recordings are blank.
[4] Maximus requires this information, in part, to determine whether Plaintiff's recordings violated Illinois' and/or California's eavesdropping laws. *See* 720 ILCS 5/14-1 *et seq.* and Cal. Penal Code § 632..

4

## II. Plaintiff's Misstatements in His Interrogatory Responses

### A. Plaintiff's Initial Responses Regarding His Self-Employment

More concerningly, it has become evident that Plaintiff's responses to several interrogatories—specifically, Interrogatories No. 14, 15, and 16—both omit and misrepresent responsive information. Interrogatory No. 14 asked Plaintiff to identify all positions of employment he has held since 2008, "including but not limited to self-employment (which includes services provided by you as an independent contractor)." In his response (in which he asserted no objections), Plaintiff attested, under penalty of perjury, that "Plaintiff is employed by The Franklin Reese Group, LLC, 200 E. Illinois St. #1607, Chicago, IL 60611, (872-270-2477 [*sic*] as a program efficiency lead. Plaintiff's position consults with client partners to assist them with growth and strategy. Plaintiff earned $3,500 in March 2022 and $5,000 per month thereafter.. [*sic*] Plaintiff began his employment on March 21, 2022 and remains employed." Ex. H at 16. Plaintiff has never supplemented this response, identified any other position of employment (including self-employment), or produced any documentation evidencing work for or with any other entity.

In his Third Supplemental Interrogatory Responses, Plaintiff responded to Interrogatory No. 15 (seeking information about income he received since January 1, 2021) by representing that until October 2021, he "earned his income exclusively from his employment with Defendants" and that he "receives income from TheFranklinReeseGroup, LLC in November 2021 in the amount of $3,400.00 each month beginning in November 2022 to present [*sic*]." Ex. D at 5–6. Plaintiff also represented that he had received: (a) weekly payments of $1,357.00 from the State of California Employment Development Department between October 2021 and October 2022; (b) $15,858.35 from MetLife under his short-term disability insurance policy in October 2021; and (c) $191.80 from MetLife for a long-term disability claim in March 2022. *Id.* at 6.

Plaintiff's wage and income transcripts—which he produced on December 12, 2022—confirm that the above is incomplete at best. According to those transcripts, in 2021 Plaintiff received

5

$21,510.00 in payments from Block, Inc. (formerly known as Square, and the owner of Cash App, a mobile payment service) and $28,833.00 in Non-Employee Compensation from GreenCourt Legal Technologies, LLC.[5] The Forms 1099 attributable with both payments were issued to Plaintiff's social security number. Though Plaintiff was ordered to produce any documents regarding compensation received and any self-employment held since January 1, 2021, he did not produce any documents regarding these payments, nor did he identify these payments in his Interrogatory responses.

When Maximus' counsel called this to Plaintiff's attention, his counsel responded that the sums were not "income" and he was "under no obligation to respond to Defendants' unsupported claims about his income . . . Plaintiff contends that he has fully answered Interrogatory No. 15."[6] *See* Ex. F. Plaintiff was similarly dismissive of Maximus' efforts to obtain more information about the services he provided to GreenCourt (from which he received nearly $30,000 in 2021). On January 6, 2023, he produced only a single email thread between himself and representatives from GreenCourt, and one PowerPoint presentation. When asked to supplement his response, Plaintiff's counsel responded that he "produced all documents that make such a reference, reflection, or comment." *Id.*

### B. Plaintiff's Continued Omissions and History of Non-Compliance

In response to Maximus' subpoena *duces tecum*, GreenCourt produced documents confirming it made $28,833.00 in payments to Plaintiff's social security number in 2021, and paid TheFranklinReeseGroup LLC—an entity Plaintiff incorporated in March 2021—an additional $80,724.70 in 2022. Plaintiff produced no documents regarding the 2022 payments. GreenCourt also produced documents confirming Plaintiff—as representative of TheFranklinReeseGroup—had entered into various consulting agreements with GreenCourt, none of which had been produced.

Maximus received documents responsive to its subpoena on January 17, 2023, and produced a copy to Plaintiff later that day. Maximus informed the Court of these documents and its ongoing

---

[5] The wage and income transcript identified the payor of Plaintiff's 1099-NEC as "Federal ID No.XXXXX7679 GREE, 201 NE." Maximus determined the entity was GreenCourt through its own investigation.
[6] Maximus notes, as its counsel noted to Plaintiff's counsel, that the request was not for taxable income.

difficulty obtaining information about Plaintiff's post-employment activities during a status conference with Magistrate Judge Gilbert on January 18, 2023. At the Court's urging, the parties conferred on January 20, 2023 to determine whether the parties could resolve Plaintiff's discovery deficiencies without Court intervention. During that meet-and-confer teleconference, Plaintiff's counsel stated that TheFranklinReeseGroup has multiple partners, and thus these payments could not all be attributable to Plaintiff.[7] Maximus explained that while that might be the case, payments have been made to Plaintiff, who has represented himself as the "Owner" of TheFranklinReeseGroup. Moreover, Plaintiff provided sworn interrogatory responses indicating income from TheFranklinReeseGroup, but provided no documents confirming same. Moreover, GreenCourt's subpoena response indicated that Plaintiff *was* in possession of documents regarding his self-employment—including, *inter alia*, email communications and various consulting agreements—he had just not produced them. Plaintiff's counsel agreed to supplement Plaintiff's response. He ultimately produced nearly 1,000 pages of documents regarding such work.

On January 20, 2023, Plaintiff supplemented his response to Interrogatory No. 15 to state that he "identifies various Venmo payments in Maurice Franklin Production 001697 – 001715 and various Zelle payments in Maurice Franklin Production 001716 – 001821. Additionally, Plaintiff identifies a rental assistance payment in Maurice Franklin Production 001822 – 001825." Ex. I (Plaintiff's Fourth Supplemental Responses to Defendants' First Set of Interrogatories). These payments—all of which were produced for the first time on January 20, 2023—reflect Zelle payments from an account that Maximus believes is associated with TheFranklinReeseGroup. The documents appear to demonstrate both that TheFranklinReeseGroup account is controlled by Plaintiff (Maximus believes exclusively) and that he made various payments from TheFranklinReeseGroup account to his personal checking account. These payments only reflect payments through August 2021 (not to present). Moreover, as

---

[7] According to documents received by the Illinois Secretary of State, Plaintiff was the sole member of the entity until January 14, 2022, when four additional members were added. All appear to be relatives of Plaintiff.

7

the undersigned informed Plaintiff's counsel, these payments could not be related to the Form 1099-K Plaintiff received from Block, Inc., both because Block, Inc. is not associated with Zelle and because Zelle does not issue Forms 1099-K.[8] On January 24, 2023, Plaintiff produced documents reflecting the $21,510.14 he received in third-party transactions through Cash App in 2021, along with a document entitled "cash_app_report," which provides more detailed information. No similar report was produced for 2022 or 2023. On February 7, 2023—after multiple follow-up requests from Maximus—Plaintiff produced redacted copies of Plaintiff's bank statements from January 1, 2021 through December 31, 2022, which purport to show payments Plaintiff received during that time.[9]

### C. Plaintiff Failed to Disclose the Full Extent of His Self-Employment

Maximus presumed these payments were from work performed for TheFranklinReeseGroup, as Plaintiff did not identify any other positions of employment or self-employment in response to Interrogatory No. 14. It appears this inclination to trust Plaintiff's sworn statements was in error. As an initial matter, none of the documents produced substantiate Plaintiff's sworn statements about his income during and after his employment with Maximus. According to Plaintiff's First Supplemental Interrogatory Responses and Third Supplemental Interrogatory Responses (which provide contradictory responses regarding Plaintiffs income), Plaintiff earned either $48,500 or $34,000 from TheFranklinReeseGroup between March 1 and December 31, 2022. *See* Ex. H at 16 and Ex. D at 6, respectively. He did not identify any other employment or self-employment, and thus presumably had no other sources of employment income. According to documents produced on February 7, 2023, however, over $60,000 was deposited into Plaintiff's personal checking account during this time.[10] While some of this is attributable to payments from TheFranklinReeseGroup, much is not. For

---

[8] *See* https://www.zellepay.com/faq/does-zelle-report-how-much-money-i-receive-irs (last accessed February 20, 2023).

[9] Maximus is uncomfortable attaching Plaintiff's bank records to this filing (even though they are not marked as confidential). Maximus can provide copies to the Court for *in camera* review, or can supplement this filing with the copies, if directed to do so.

[10] While Plaintiff received various disability payments, they were deposited into a different account.

8

example, $14,028.93 was deposited into Plaintiff's personal checking account between November 22 and December 21, 2022. Of that, only $6,259 is attributable to payments by TheFranklinReeseGroup; the remaining deposits reflect payments from Cash App and Apple Cash, as well as Zelle transfers from other individuals and entities.

Maximus has investigated Plaintiff's December 3, 2021 receipt of a $20,156.25 Chicago Emergency Rental Assistance Payment ("ERAP").[11] Based on the limited documentation provided, Plaintiff applied for rental assistance because of his purported tenant's (Scott Rivers') inability to pay rent. Based on a review of publicly available ERAP information, Plaintiff received this payment as rental arrears for the period between February 1, 2020 and September 1, 2021. Plaintiff had not, prior to January 20, 2023, identified receiving any rental income.

As part of this investigation, Maximus discovered that Rivers is a Chicago-based disc jockey ("DJ") and President of the High Society Entertainment Group ("High Society" or the "Group"), an event organizer that specializes in providing events and services to the LGBTQ community.[12] Maximus also discovered that *Plaintiff* is the Secretary and Director of the Group, and has been since its inception in 2011. While the group was organized as a not-for-profit, it (according to its publicly-available Facebook page) "leads the city's party scene by providing quality events," for which it often charges entry fees. Regardless, it appears undisputed that Plaintiff received and receives compensation for these events. By way of example, one of the payments on the Cash App report—which, again, reflects payments to Plaintiff's social security number—includes the note "high society," while others note that the payment is for "club." As Plaintiff has not produced any Cash App payments for 2022 or 2023, Maximus does not know to what degree these payments continued. Plaintiff's redacted bank statements, however, indicate that he received numerous Zelle payments—almost all in

---

[11] ERAP provided rental assistance to landlords and tenants facing risk of homelessness due to COVID-19.s.
[12] The Group was dissolved involuntarily in 2022 by the Secretary of State, although it still appears to operate. *See* https://www.eventbrite.com/o/high-society-entertainment-group-1956064269 (last accessed February 20, 2023).

denominations of $20, the stated charge for many of these events—from various individuals throughout 2022, at least one of which states the payment is for "Club." Moreover, since January 1, 2021, Plaintiff appears to have deposited over $20,000 from the Cash App into his personal checking account, made over $13,500 in cash deposits, and received over $12,000 from Rivers (presumably not as rent, at least for the period in which Plaintiff claimed Rivers' rent was in appears).

It is evident Plaintiff is providing services to (or as) High Society. Maximus, however, has no information about these services, the level of Plaintiff's involvement, the opportunity for profit, the period of time for which he has been providing these services, etc. Given the Group's promotional activity and its obvious partnership with various night clubs (which host the events the Group puts on), there are almost certainly documents regarding these activities and Plaintiff's earnings. None have been produced. Moreover, because Maximus has not known about this entity, it has no way to confirm whether Plaintiff's redacted bank statements reflect the entirety of payments he received. Maximus does not know whether Plaintiff has other bank accounts, although it knows Plaintiff's disability payments were deposited into a different account (those records indicate there were other deposits made into the account, all of which were redacted). Maximus is being asked to trust Plaintiff's sworn statements, even though they have proved to be unreliable.

Maximus' counsel brought this issue to Plaintiff's counsel's attention on February 16, 2023—immediately after Maximus received documents from the Illinois Secretary of State confirming Plaintiff's involvement with High Society—and asked to meet and confer at 9:00 a.m. the following day. Plaintiff's counsel did not respond. Maximus' counsel asked Plaintiff's counsel to meet and confer again on Monday, February 20, 2023. The parties spoke at 4:00 p.m. that day. During that meeting, Maximus explained its discovery and its concerns. Plaintiff's counsel stated that the Group was a "not for profit," and that Plaintiff did not retain any of the payments. Maximus' counsel explained that this explanation seemed implausible at best, given the payments were made to his Cash App account and his personal checking account. Moreover, while the Cash App report indicates Plaintiff sent money to

10

"S LaRoxx," at least one of those payments was to a checking account that, while reflected as being made to S LaRoxx, was made to a checking account with the same ending numbers (086) as Plaintiff's personal checking account, while another was made to a MasterCard that, according to Plaintiff's document production, is also associated with Plaintiff himself. Moreover, as noted above, Plaintiff's checking account reflects that Rivers paid Plaintiff thousands of dollars during this same time period.

### D. Plaintiff Failed to Disclose His Litigation History

On February 19, 2023, Maximus' counsel discovered that Plaintiff had misrepresented his litigation history. Though ordered to provide a complete response to Interrogatory No. 16, Plaintiff responded only with information regarding various criminal proceedings.[13] He did not disclose any civil proceedings. Out of growing concern regarding Plaintiff's lack of candor, Maximus conducted a review of the Circuit Court of Cook County's Civil, Law, Chancery, and Domestic calendar dockets for cases in which "Maurice Franklin" was a defendant. There were 21 results. *See* Ex. J. It is unclear whether all or some involve Plaintiff, although two of the cases (both captioned *Celeste Trotter v. Holy Sweet and Maurice Franklin*, Case Nos. 2009L015497 and 2011L012413) almost certainly involve Plaintiff, who worked for Sweet Holy Spirit Church as its Director of Security from 2003 through at least 2008. When this was raised to Plaintiff's counsel during the meet-and-confer on February 20, 2023, he stated he knew nothing about it. No information or documents have been provided, even though—based on the dockets—it appears discovery was conducted.

### III. Maximus' Efforts to Comply with Local Rule 37.2

As set forth above, Maximus has complied with Local Rule 37.2. It has raised these discovery issues on numerous occasions to Plaintiff's counsel, including: concerns about Plaintiff's productions regarding his subsequent employment and income (including during teleconferences on January 20, 2023 and February 10, 2023); his failure to respond to Interrogatory No. 11 and his subsequent,

---

[13] He attested to the following proceedings: *People of the State of Illinois v. Maurice Franklin* (2008); *People of the State of Illinois v. Maurice Franklin* (2004), and *People v. State of Illinois v. Maurice Franklin* (2004).

incomplete, response (including during teleconferences on February 10, 2023 and February 20, 2023); and his perceived misrepresentations on Interrogatory Nos. 14, 15, and 16 (including during a teleconference on February 20, 2023). These issues have not been resolved between the parties.

## ARGUMENT

### I. Dismissal of Plaintiff's Complaint is Warranted and Appropriate

> Litigation is about the search for the truth, and getting to the truth depends on truth-telling throughout the judicial process. It is no exaggeration to say that the entire legal system relies on truth-telling. Lies create havoc, impose costs, and harm the system, even if the liar doesn't get what he or she wanted. There is an institutional interest in preserving the sanctity of the oath, and in ensuring that litigants tell the truth to the judiciary.

ECF No. 51 at 5. Plaintiff has misrepresented his earnings from the very beginning of this lawsuit. He claimed to have only $14.88 cents in cash and bank accounts on his August 17, 2021 *in forma pauperis* application. *See* ECF No. 4. He likewise claimed to have received, between August 17, 2020 and August 17, 2021, no money in self-employment and no deposits into any accounts in his name. *Id.*. Given he deposited $7,031.76 into his account between July 28, 2021 and August 23, 2021—and given this was in *addition* to the approximately $5,765.75 he received that month from Maximus—this seems almost impossible.[14] Maximus moved to dismiss Plaintiff's Complaint, pursuant to 28 U.S.C. § 1916(e)(2)(A) for Plaintiff's failure to disclose certain bonus payments received by Maximus in 2020 and his ownership interest in a Porsche on that application. The Court denied Maximus' motion, concluding that "the non-disclosure was not intentional." ECF No. 51 at 9). It noted, however, that "Franklin fell short of his overriding obligation of full disclosure. And this Court expects (and directs) that Franklin will not repeat that lack of candor." *Id.* at 10.

Plaintiff did not heed this Court's advice. Time and time again, he has evaded his discovery obligations, misrepresenting facts and only providing documents when Maximus discovered his omissions. If Maximus had not subpoenaed GreenCourt, it would not have known that Plaintiff was

---

[14] Maximus now knows that Plaintiff's representations regarding deposits into bank accounts in his name and self-employment were also false.

withholding numerous documents, including consulting agreements that *he* signed. Had Plaintiff not received over $20,000 in payments through the Cash App—thereby triggering Block, Inc.'s obligation to issue a Form 1099-K—Maximus would have never discovered the Cash App payments. Even assuming Maximus learned about Plaintiff's payments from GreenCourt, it would not have necessarily pushed Plaintiff for more robust records than the Venmo and Zelle records he initially provided—it did so largely because it knew that Zelle did not issue Forms 1099-K, and thus knew the Zelle payments could not explain the $21,000 Plaintiff had received through third-party transactions. If Maximus had not investigated the ERAP payment, it would not have discovered High Society. Had Maximus not forced the disclosure of the Cash App report—which included a reference to a payment for "high society"—it would not have connected these payments with Rivers' DJ advertisements (which it only discovered through its own investigation into his background). This is not how discovery is supposed to work. Civil litigation does not require Maximus to take on the role of private investigator, expending significant time and resources to uncover basic information Plaintiff should have disclosed. Discovery does not allow Plaintiff to withhold information, only to later produce it after learning that Maximus has discovered—on its own—that he was withholding responsive documents and information. And discovery does not allow Plaintiff to repeatedly misrepresent his post-employment income and activities. Plaintiff has demonstrated a pattern of omissions and misrepresentations. He should not be allowed to keep litigating in this fashion.

This Court has broad authority to issue sanctions, including dismissal of Plaintiff's Second Amended Complaint. "Rule 37 equips district courts with abundant authority to address discovery abuses." *Zavala-Alvarez v. Darbar Management*, 338 F.R.D. 384, 389 (N.D. Ill. 2021) (Seeger, J.). "Rule 37(b)(2)(A)(v) authorizes a range of sanctions, including the dismissal of a suit, for a party's failure to comply with the court's discovery orders; and Rule 37(a)(4) treats an evasive and incomplete answer in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775-76 (7th Cir. 2016). The Seventh Circuit has "construed

13

the sanctioning power conveyed by Rule 37 to extend to instances of a party hiding evidence and lying in his deposition." *Id.* at 776. Moreover, the Court has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Id.* at 776.

Dismissal, whether under Rule 37 or the Court's authority, "requires the court to find that the responsible party acted or failed to act with a degree of culpability that exceeds simply inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Id.* A showing of willfulness, bad faith, or fault is necessary. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). When presented with the dismissal of claims as a sanction, however, "'we weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party pled on over the course of the lawsuit.'" *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (quoting *e360 Insight*, 658 F.3d at 643). Here, Plaintiff has submitted multiple sworn statements, attesting that they are true under penalty of perjury. None were complete or accurate. Plaintiff did not begin working for TheFranklinReeseGroup in March 2022 as he swears—he entered into a consulting agreement with GreenCourt on *July 12, 2021*. He has not only received income from the sources he identified— he has received thousands of dollars in other payments. And he has not only been involved in the litigation identified in his response to Interrogatory No. 16—upon information and belief, he has been a named defendant in at least two other lawsuits. "'Perjury committed in the course of legal proceedings is a fraud on the court,' . . . that itself 'may warrant the sanction of dismissal.'" *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr.*, 230 F.Supp.3d 896, 912 (N.D. Ill. 2017) (internal quotations and citations omitted).

There are no excuses for Plaintiff's repeated sworn misstatements. Unlike when filing his Complaint and the *in forma pauperis* application, Plaintiff was not in a rush. Maximus served its Interrogatories on July 13, 2013. Plaintiff has served *five* supplemental responses. None are accurate. He was warned about the consequences of lack of candor, he was instructed—specifically—not to

14

omit or withhold information. He continued to do so. There is no explanation other than the obvious one—Plaintiff is misrepresenting and omitting information regarding his finances, in order to bolster his claim for backpay. He cannot. His claims should be dismissed.

## II. In the Alternative, Maximus Should Be Permitted Additional Time to Complete Discovery

In the event this Court does not dismiss Plaintiff's Second Amended Complaint, Maximus should be permitted additional time to conduct Plaintiff's deposition, so that Plaintiff can be compelled to provide complete responses to Interrogatory Nos. 11, 14, 15, and 16, and so Maximus can pursue additional discovery (including subpoenaing information from High Society and Rivers) regarding Plaintiff's post-employment activities and litigation history. As set forth above, it should not be required to take Plaintiff's deposition when it has incomplete information regarding critical aspects of his damages. Given Plaintiff's delays to-date, which have caused Maximus to twice seek Court intervention, Maximus respectfully requests Plaintiff be precluded from conducting additional discovery. This case could have proceeded on schedule had he taken his discovery obligations seriously. He did not. Maximus likewise requests sanctions for the attorney's fees and costs associated with uncovering Plaintiff's omissions and making this motion.

## CONCLUSION

Plaintiff is obligated to prosecute his case, comply with Court orders, and act with candor and honesty. He has not. Throughout this litigation, Plaintiff has only produced critical documents after Maximus discovered—on its own accord—that Plaintiff had withheld them. It is entirely unclear what else might be withheld. Maximus should not bear the burden of having to find out. Thus, Maximus respectfully requests the Court enter an order dismissing Plaintiff's Second Amended Complaint, with prejudice. Alternatively, Maximus requests that the Court order Plaintiff to provide supplemental discovery responses and extended Maximus' time to complete discovery, or for such other relief as this Court may deem appropriate, including attorney's fees and costs.

Dated: February 21, 2023 	Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC**

By: */s/ Kathryn J. Barry*
 One of Their Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
J. Casey Leech
JACKSON LEWIS P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Fax: (312) 787-4995
Kathryn.Moran@jacksonlewis.com
Kathryn.Barry@jacksonlewis.com
Casey.Leech@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on February 21, 2023, she caused a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, TO COMPEL AND EXTEND DEFENDANTS' TIME TO COMPLETE DISCOVERY** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

*/s/ Kathryn J. Barry*