**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MAURICE FRANKLIN ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:21-CV-04367 |
| ) | |
| v. ) | District Court Judge Lindsay C. Jenkins |
| ) | |
| MAXIMUS, INC., et al. ) | Magistrate Judge Jeffery T. Gilbert |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
SANCTIONS OR, IN THE ALTERNATIVE, TO COMPEL AND EXTEND
DEFENDANTS' TIME TO COMPLETE DISCOVERY**

Maurice Franklin ("Plaintiff" or "Franklin"), by and through the undersigned counsel, files

this memorandum of law in opposition to Defendants' Motion for Sanctions or, in the Alternative,

to Compel and Extend Defendants' Time to Complete Discovery. For the reasons set forth below,

Franklin respectfully requests that this Honorable Court deny the motion for sanctions put forth by

Maximus, Inc., Maximus Human Services, Inc., and Maximus Services, LLC (collectively

"Maximus" or "Defendants"), deny Defendants' motion to compel as moot, and grant the *Parties*

an extension to complete discovery and *rescind* its prior order sequencing the order of discovery.

I.      Introduction

Maximus is a global, multibillion dollar corporation staffed with seasoned and accomplished

professionals. Maximus has the resources and experience to continue its impressive record of

achievement and accomplishments. It is of no surprise, therefore, that Maximus is doing

whatever it can to preventing Franklin from deposing his witnesses and presenting to this Court

1

the plethora of damning evidence he has amassed in support of his claims. Maximus first moved this Court to dismiss Franklin's First Amended Complaint on the allegation that he purposefully misled the Court in his application for *in Forma Pauperis* status. *See* [Doc #29] Defendant Maximus, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to 28 U.S.C. § 1915(e)(2)(A). In its motion to dismiss, Maximus made a number of allegations that championed an interpretation of circumstances that lead to misrepresentation of facts and conclusions that were simply not true. The truth – that Franklin showed up to file his case on the last possible day just before the clerk's office was scheduled to close with an insufficient amount of money to pay his filing fee. At the suggestion of a clerk's office staff, he quickly completed the IFP application to preserve his ability to return with the correct filing fee. *See* [Doc #34] Plaintiffs Response In Opposition Maximus, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint Under 28 U.S.C. § 1915(e)(2)(A). Maximus' motion to dismiss contained so many misrepresentations, the undersigned noticed Maximus of his intent to move this Court for sanctions under Fed. R. Civ. P. 11. *See* Plaintiff's Exhibit A, Plaintiff's Notice of Intent to Move for Sanctions Under Rule 11. Ultimately, Franklin chose to let the facts stand on their own – a strategy that proved to be the right one when the Court denied Maximus' Motion to Dismiss.

Maximus seeks a second bite at the apple. Now armed with the Courts December 22, 2022 Order on Sequencing of Discovery, Maximus is making strides to ensure that Franklin will never be granted an opportunity to depose his witnesses. Maximus' methods are clear: research Franklin's life, identify any circumstance that could possibly suggest a nondisclosure of requested discovery information, and build a case that Franklin owes documents that explains whatever it is that they have alleged, regardless of whether those documents or information fall within the

2

scope of their discovery request. Everything that Maximus raised as an issue in its motion for sanctions could have been addressed by deposing Franklin on February 28th and it had proposed. The knowledge that Franklin has a roommate was not a reason to cancel his deposition at the last minute. The knowledge that Franklin's roommate has a nonprofit business was not a reason to cancel his deposition at the last minute. Having received responses to its Interrogatory 11 earlier that week was not a reasonable basis for canceling Franklin's deposition at the last minute. Franklin flew from Chicago to Atlanta to be with counsel for the week of his deposition, incurring travel expenses and hotel costs only to be told the day before the scheduled deposition that it was not going to be conducted as scheduled. *See* Plaintiff's Exhibit B, Notice Canceling Deposition. Franklin continues to make a good faith effort to meet his discovery obligations. His challenge is not a lack of desire to comply – but life circumstances that create challenges to compliance. Franklin does not keep his personal finances in litigation ready order – and that is not a crime. But it does lead to some inconsistencies in his responses. Nevertheless, he has made and is making a good faith effort to disclose all that the can, as set forth in greater detail below. Franklin never anticipated being where is his right now – fighting for his career against the company he loves after being discriminatorily passed over and retaliatorily tosses out. He did not plan for this moment but he is rising to meet what is required of him so he can prosecute his case. He should not be denied that opportunity at the expense of the over-resourced corporation that already has taken so much from him.

Franklin is a person of limited means and resources fighting for his career – in essence his life – against the company for which he worked for nearly half his life. Franklin was deficient in some of his responses to Maximus' discovery requests. He has been and continues to supplement and

3

correct his responses to Maximus as those deficiencies are identified but for Maximus, it is never

enough. Maximus, however, continues to stonewall Franklin's discovery requests with

inconsistent, nonsensical objections and responses – even going so far as to redact pages its own

employee handbook despite the entry of a protective order by this Court. *See* Plaintiff's Exhibit

C, Maximus Redacted Employee Handbook.


II.     Argument & Citation to Authority

        Maximus seeks for the court to dismiss this action based on its assumptions and conjecture

– before either party has had the benefit depositions. The Federal Rules of Civil Procedure do not

contemplate or require that a party resolve with supplemental responses the follow up questions

that inevitably arise upon an adverse party's receipt of responses to interrogatory and document

requests– that is precisely what the deposition is to be used for. "Unless otherwise ordered by court

or by agreement of parties, party who has responded to request for discovery with answer that was

complete when made is under no duty to supplement his answer to include information thereafter

acquired, except that he is under duty seasonably to supplement his answers with respect to any

question directly addressed to identity and location of persons having knowledge of discoverable

matters and identity and stated subject matter of each person who will be called as expert witness

at trial; supplemental interrogatories may be filed in order to bring up to date answers to particular

interrogatories, and court may make appropriate provisions with respect thereto in pretrial order."

*Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3, 10 Fed. R. Serv. 2d (Callaghan) 917

(D. Md. 1967).

**Verifications**

Maximus argues that Franklin failed to execute a verification of *Plaintiff's Fifth Supplemental Response to Defendants' First Set of Interrogatories*. Franklin acknowledges that an unsigned version of his verification was unintentionally transmitted with his supplemental response. He has since corrected the oversight by sending Maximus the supplemental interrogatory response with an executed verification.[1] Maximus, however, has failed to verify *any* of its responses to Franklin's discovery requests. *See, e.g.* Plaintiff's Exhibit D, Defendants' Responses to Plaintiff's First Requests for Production of Documents.

**Plaintiff's Responses to Defendants' Interrogatory No. 11**

During Franklin's employment with Maximus, he was a vice-president with management oversight of over 40 public sector human services business process outsourcing projects spanning 17 states across the country. His role in the company required that he engage in extensive domestic travel and participate in countless telephonic, video chat, and face to face meetings. Franklin regularly recorded those meetings so he would not miss critical information, action items, and follow up requests. The recordings that Franklin made were during the normal course of business and was open and obvious – he made no effort to conceal his efforts to record business conversations and, in many instances, he placed his recording device in plain view of the meeting participants without objection or controversy.

By virtue of the sheer volume of meetings in which Franklin participated and the frequency of unlawful acts of discrimination and retaliation Maximus subject him, Franklin was fortunate

---

[1] Maximus' counsel did not raise the issue of the unexecuted verification during the meet and confer on _____. As Franklin corrected the issue of the unsigned verification upon learning of the oversight in Maximus's *Motion for Sanctions.*

enough to capture evidence in support of his allegations of discrimination and retaliation on a handful of those recordings. Maximus has sought to exclude those recordings from evidence since the onset of this action. During a conference with Judge Seegar to address the scheduling deadlines for the filing of Franklin's Second Amended Complaint, Maximus counsel raise the unrelated issue of the recordings in Franklin's possession, objecting to their admissibility despite having no knowledge of their content or anything else. In response to Maximus' objection, the undersigned observed that their objection was premature in that Maximus knew nothing about the recordings and therefore its object was speculatory at best.

Franklin acknowledges that it took a bit of time to review all 232 recordings to provide the information requested by Maximus' Interrogatory No. 11. He contends, however, that he has fully, completely, and to the best of his knowledge, provided all information known to him that was requested by Interrogatory No. 11. Maximus takes issue with the fact that the number of recordings to which Franklin provided data in response to Interrogatory No. 11 was slightly less than the number of files Franklin disclosed to Maximus on May 24, 2022. Our review of those files identified two files Franklin contends was an unintentional disclosure of protected work product to which Franklin, through counsel, noticed Maximus and its counsel and requested that those files be deleted. See Plaintiff's Exhibit E. Franklin also identified and requested that Maximus delete two files that were unintentionally disclosed that contained personal conversations between Franklin and members of his family about topics unrelated to this action. Finally, Franklin did not provide data for a small number of file duplicates identified during his review.

Maximus notes that it "did not ask Plaintiff to record hundreds of conversations during his employment. It simply asked him to identify information about the recordings he made and

produced." To that point, Maximus is correct. Franklin complied, albeit after expending the time to review, research, and identify the information Maximus requested. Maximus, however, has yet to extend to Franklin the same level of cooperation. Franklin's Document Request No. 1 to Maximus requested the production of "[c]omplete salary and wage records, bonus records, commission records, and W-2 for … Peter Baylinson and each of Defendants' employees reporting to Peter Baylinson for the years 2017 – present as well as each employee's performance evaluations, organizational charts detailing the employees' direct reports and their reporting manager during each year from 2017 – present."[2] *See* Plaintiff's Exhibit F, *Defendant's Responses to Plaintiff's First Set of Request for Production of Documents*. Maximus responded by producing records for some individuals requested by Franklin's Document Request No. 1, but selectively withholding all requested records concerning Peter Baylinson. *Id.* Of the individuals whose records were requested by Franklin's Document Request No. 1, Baylinson was the mostly likely to be considered a comparator to Franklin.[3] Maximus based its refusal to satisfy Franklin's Document Request No. 1 on its allegation that Baylinson's records were not relevant to this action and, bafflingly, its supposition that Franklin's request was "seeking confidential information regarding nonparties to this litigation." *Id*. The undersigned addressed Maximus' meritless objections in a letter on August 16, 2022. *See* Plaintiff's Exhibit G, Plaintiff's August 16, 2022 Discovery Deficiency Letter. The August 16th letter identified specific paragraphs in Franklin's Second

---

[2] Plaintiff and Peter Baylinson were vice presidents in Maximus Child Support Services division, both reported to Laura Rosenak, Senior Vice President, and both managed public sector business process outsourced projects for Maximus.

[3] A "similarly situated employee," for the purposes of a title seven Employment discrimination action, is one who directly. Is one who is directly comparable. To the plaintiff in all material aspects; And evaluating whether two employees are directly comparable, The Court must look at all relevant factors, including whether the employees won held the same job description, Two were subject to the same standards, three were subordinate to the same supervisor, …" *Bio v. Fed. Express Corp.*, 424 F.3d 593 (7th Cir. Sept. 16, 2005).

Amended Complaint that established the relevance of the documents requested by Franklin's Document Request No. 1, cited legal support for the contention that information from a party concerning a non-party is discoverable. *See Dauska v. Green Bay Packaging Inc.*, E.D. Wis.2013, 291 F.R.D. 251. Maximus maintained its position and refused to produce the documents requested by Franklin's Document Request No. 1.[4] Maximus did not produce any documents requested about Baylinson until Franklin served Maximus with Request for Production No. 4 in Plaintiff's Second Continuing Request for Production. *See* Plaintiff's Exhibit H, Plaintiff's Second Continuing Request for Production. Aside from specifically requesting documents concerning only Peter Baylinson and no one else, Request for Production No. 4 and Request for Production No. 1 are nearly identical. Maximus did, in fact, produce documents in response to Request for Production 4 that it withheld in response to Request for Production No. 1 although the majority of what was requested remains outstanding. There is a stark difference in the manner by which the Parties are engaging discovery – where Franklin is struggling with his records and struggling to recall information he simply never anticipated he would need to but is nevertheless making a valiant attempt to meet his discovery obligations to preserve his ability to prosecute his case, Maximus is strategically and purposefully denying Franklin access to anything it believes may aid his claims while reframing circumstantial evidence to demand that Franklin produce more and more to defeat its baseless innuedos with the sole goal to obtain dismissal of this action before either party gets an opportunity to depose anyone.

**Franklin's Income Related Responses**

---

[4] We recount the challenges Franklin faced with getting discovery responses from Maximus with the example of the responses and omission received from Maximus concerning Franklin's Interrogatory No. 1. Plaintiff has faced the same challenges for nearly *all* of his discovery requests.

As a preliminary matter, Franklin further supplemented the disclosure of his income to Maximus. *See* Plaintiff's Exhibit I. Pointedly, Maximus' claims about the High Society Entertainment Group are without merit. Plaintiff is not employed there and he receives no income. Had Maximus moved forward with his deposition, they could have asked the necessary questions to learn that Franklin only collects entry fees at the door from partygoers and turns all of that revenue over to his roommate. His records – records that he has produced to Maximus long ago – show that revenue flowing in and flowing right back out. He does not have an employment relationship with the organization nor does he enjoy any income or profit arising from it.

**Defendants' Interrogatory No. 14.**

Maximus appears to take issue with Franklin for not supplementing his response to Interrogatory 14 by naming additional employers. Franklin has nothing additional to supplement. Franklin does not work for High Society or any other organization beyond TheFranklinReeseGroup, LLC. Furthermore, Maximus has repeatedly suggested that all income to TheFranklinReeseGroup, LLC should be assigned to Franklin as income. Such a move would be inconsistent with the facts. Franklin is not the only individual that works for the company. In fact, a significant portion of the revenue to that business goes to other individuals as compensation. Maximus, again, makes sweeping declarations of fact that are completely unsupported.

III.    Conclusion

Franklin continues to meet his obligation to fully and honestly disclose information in response to discovery requests. Maximus, however, has not, even while moving this court to dismiss this Second Amended Complaint. Maximus motion should be denied.

9

Respectfully submitted this 8 March 2023.

**BARRETT & FARAHANY**

_/s/ Anthony Dawkins_
Anthony Dawkins, J.D.
Georgia Bar No. 157904
_Attorney for the Plaintiff_

P.O. Box 530092
Atlanta, GA 30353
Telephone: (470) 747-8329
FAX: (404) 214-0125
anthony@justiceatwork.com

PLAINTIFF'S

# EXHIBIT A

PLAINTIFF'S

# EXHIBIT B

| | |
|---|---|
| **From:** | Leech, J. Casey (Chicago) |
| **To:** | Anthony Dawkins |
| **Cc:** | Barry, Kathryn J. (Long Island/Raleigh); Kwaak, Helen M (Chicago) |
| **Subject:** | Franklin v. Maximus - Plaintiff's Deposition |
| **Date:** | Wednesday, February 22, 2023 2:06:51 PM |

**EXTERNAL**

Hi Anthony,

In light of the issues raised in our motion for sanctions, we will need to postpone Mr. Franklin's deposition that was previously scheduled for tomorrow. If you have any additional information or documents you would like to provide to resolve these outstanding issues, please let us know.

Thanks,
Casey

PLAINTIFF'S

# EXHIBIT C



## Outside Employment

Employees may obtain outside employment if it does not create a conflict of interest, compete with Maximus, Inc., its affiliates or subsidiaries (collectively "Maximus"), or otherwise interfere with the employee's job responsibilities, including scheduling requirements which may include overtime.

Employees are prohibited from performing any services for customers of Maximus that are normally performed by Maximus.

If an employee obtains outside employment while working for Maximus, prior to beginning such employment, the employee's local human resources representative must be notified in writing. Please contact Corporate Ethics and Compliance via email at CorporateEthicsCompliance@maximus.com with any questions regarding this policy.



PLAINTIFF'S

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., MAXIMUS | ) | Magistrate Judge Jeffrey T. Gilbert |
| HUMAN SERVICES, INC., AND | ) | |
| MAXIMUS SERVICES LLC | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET
## OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants Maximus, Inc., Maximus Human Services, Inc., and Maximus Services LLC (collectively, "Maximus" or "Defendants"), by and through their attorneys, Kathryn Montgomery Moran, Kathryn J. Barry, and J. Casey Leech of Jackson Lewis P.C., respond to Plaintiff Maurice Franklin's First Set of Requests for Production of Documents (the "Requests") as follows:

## INTRODUCTION

The information supplied in these responses to Plaintiff's First Set of Requests for Production of Documents ("Responses") represents the information reasonably available at this time, and Defendants specifically reserves the right to supplement and/or amend these Responses if and when additional information becomes available. The word usage and sentence structure in these Responses are those of the attorneys who prepared the Responses and are not purported to be the exact language of Defendants or any witness. In providing the following Responses, Defendants will ascribe to terms the normal definitions given them under the normal rules of English vocabulary, usage, grammar, and syntax.

Defendants' responses are made solely for the purpose of this lawsuit. The responses are based solely on information presently known to Defendants. Subsequent discovery, independent

investigation, or legal research and analysis may result in additions to, changes in and/or variations from the responses set forth herein. All documents are produced consistent with the Confidentiality Order "so ordered" on February 7, 2022.

The responses are made expressly preserving and without waiving the specific objections addressed to each particular Request or the following: (a) the right to object on the grounds of competency, privilege, relevancy, materiality, admissibility, or any other proper ground to the use of any material produced herein, for any purpose, in whole or in part, in any subsequent proceeding in this action or in any other action; (b) the right to object on any and all proper grounds, at any time, to other Requests or other discovery procedures involving or relating to the subject matter of the Requests; and (c) the right at any time to amend, revise, correct, modify, supplement, or clarify any of the responses provided herein.

In the event that any information is inadvertently produced in response to these Requests which falls within the attorney-client privilege or is protected by attorney work product immunity, Defendants shall not be deemed to have waived its privilege as to such information and documents or any other matter arising during the course of this litigation or any subsequent proceeding.

Finally, to the extent these Requests seek Electronically Stored Information ("ESI"). Defendants will produce any relevant ESI subject to an agreed-upon protocol which is proportional to the needs of the case in light of the claims asserted by Plaintiff and in accordance with their obligations under the Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois. Defendants object to producing any ESI absent further agreement of the parties or orders of the Court.

## RESPONSES TO SPECIFIC REQUESTS

## REQUEST FOR PRODUCTION NO. 1:

Complete salary and wage records, bonus records, commission records, and W-2 forms for Laura Rosenak, Senior Vice President, and each of Defendants employees reporting to Laura Rosenak, Kelly Blaschke Treharne, Senior Vice President, and each of Defendants' employees

2

reporting to Kelly Blaschke Treharne, Peter Baylinson, Vice President, and each of Defendants' employees reporting to Peter Baylinson for the years 2017-present as well as each employees' performance evaluations, organizational charts detailing the employees, their direct reports, and their reporting manager during each year from 2017-present.

**RESPONSE:** Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, seeks information that is not relevant to any party's claim or defense, and not proportional to the needs of the case. Dozens of employees have reported to Laura Rosenak, Kelly Blaschke Treharne, and Peter Baylinson since 2017, and the records sought for most of these employees—as well as information about who they reported to and who reported to them—have no bearing on Plaintiff's claims asserted in his Second Amended Complaint or Defendants' defenses thereto. Defendants object further to the extent this Request seeks confidential information regarding non-parties to this litigation. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to Plaintiff's personnel records, as well as performance reviews and personnel records reflecting compensation for Laura Rosenak and the four individuals identified in Paragraph 148 of Plaintiff's Second Amended Complaint (Richard DiLollo, Colleen Duke, James Graettinger, Daryl Rieber), which will be produced as MAXIMUS 000001 – 000342. Organization charts effective January 2021 will be produced as MAXIMUS 000356 – 000357. Additional documents are being withheld subject to the above objections.

**REQUEST FOR PRODUCTION NO. 2:**

From March 2017 to the present, all Charges of Discrimination filed with the Equal Employment Opportunity Commission (and/or its state counterpart) alleging acts of intentional discrimination or harassment, complaints filed with Defendants' ethnics hotline, letters or emails received by Defendants' corporate office/officers, and/or Board of Directors and/or Human Capital regarding Kathleen Kerr, Defendants' business unit(s) under Kathleen Kerr's authority, and/or any of Defendants' employees within Kathleen Kerr's line of authority; documents, notes, and/or memoranda of investigation of the complaints and Charges of Discrimination; any surveys of Defendants' employees concerning workplace discrimination at Defendants.

**RESPONSE:** Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, and seeks information that is not relevant

to any party's claim or defense and not proportional to the needs of the case. This Request seeks the disclosure of documents during a five-year period—beginning four years before Plaintiff filed his charge of discrimination with the EEOC—including "letters or emails" and documents relating to any charges and complaints of discrimination and harassment by anyone regarding "business units" and employees under "the line of authority" of Kathleen Kerr. During this time period, hundreds of employees have served under the line of authority of Ms. Kerr, who currently serves as the Group President of U.S. Human Services and Texas Health. Moreover, other charges and complaints of discrimination filed by other employees have no bearing on Plaintiff's claims in this lawsuit. Defendants further object to this Request on the grounds that it is vague and ambiguous, including as to the phrases "complaints," "business unit(s) under Kathleen Kerr's authority," "Kathleen Kerr's line of authority," and "surveys." Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, Defendants respond to this Request only as it relates to charges of discrimination and internal complaints that have alleged discrimination and/or harassment by Kathleen Kerr. Maximus is unaware of any charges of discrimination that have alleged discrimination and/or harassment by Kathleen Kerr. Internal Maximus complaints alleging discrimination and/or harassment by Kathleen Kerr, and the investigation files of these complaints, will be produced as MAXIMUS 000343 – 000377. Defendants will identify and produce additional electronically-stored non-privileged information responsive to this Request (to the extent any such information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol. Additional documents are being withheld subject to the above objections.

## REQUEST FOR PRODUCTION NO. 3:

The following documents regarding Defendants' employee selected to fill the Lead Vice President – Economic Services position and Lead Vice President – Operations position in or around April 2021, posted and managed by Kelly Blaschke Treharne, Senior Vice President: the

selected employees' application for employment with Defendants; memoranda of any interview which Defendants had with the selected employees before they were hired by Defendants; Defendants initial offer of employment to the selected employees; selected employees' resume submitted to Defendants prior to obtaining employment with Defendants; selected employees' current resume; selected employees complete salary and wage records, bonus records, commission records, and W-2 forms for every year of their employment with Defendants; selected employees performance evaluations for each of the years of their employment with Defendants; organizational charts detailing selected employees, their direct reports, and their reporting manager during each year of their employment with Defendants; complaints concerning selected employees work performance; written description of each position held by the selected employees during their employment with Defendant; all written contracts entered into between the selected employees and one or more of Defendants; all documents, notes, writings, or memoranda describing or summarizing any oral agreements between the selected employees and one or more of Defendants; for each project/contract of Defendants during their employment, documents detailing the selected employees' project level title, role, responsibilities, and the duration the selected employees maintained said role on each respective project; total contract value and annual contract value for each project the selected employee held a role during their employment with one or more of Defendants; bids, proposals, and responses to solicitations in which the selected employees were identified as key person, executive, or management level role; every annual client satisfaction survey submitted to one or more of Defendants by a client of one or more of Defendants for which the selected employees maintained a management or executive level role or oversight.

**RESPONSE:**  Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants further object to this Request on the grounds that it is vague and ambiguous, including as to the phrases "selected employees," "complaints concerning selected employees work performance," "all documents, notes, writings, or memoranda describing or summarizing any oral agreements between the selected employees and one or more of Defendants," "documents detailing the selected employees' project level title, role, responsibilities, and the duration the selected employees maintained said role on each respective project," "total contract value and annual contract value," "key person, executive, or management level role," and "management or executive level role or oversight." Defendants further object to this Request on the grounds that there does not and has not existed any position titled "Lead Vice President – Economic Services." Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine, and to the extent it seeks

confidential information regarding non-parties to this litigation. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to the personnel files of the three individuals who were promoted in or about April 2021 to the positions of Lead VP – Operations (Rachel Zietlow and Lisa Simmons) and Lead VP – Employer Services (Nancy Kim), the job descriptions for these two positions and the Lead VP – Operations Support position, the "recruiting tracker" spreadsheet created during the application process for these positions, and the interview evaluations for Ms. Zietlow, Ms. Simmons, and Ms. Kim; these documents will be produced as MAXIMUS 000378 – 000820; MAXIMUS 000886. Also produced are personnel records and interview evaluations for Kelly Boerner, who was promoted in or about April 2021 to the position of Lead VP – Operations Support; these documents will be produced as MAXIMUS 000821 – 000885.[1] Defendants will identify and produce additional electronically-stored non-privileged information responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

Dated: July 29, 2022

Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC**

*/s/ Kathryn J. Barry*
One of Its Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
Casey J. Leech
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Fax: (312) 787-4995
kathryn.moran@jacksonlewis.com

---

[1] In their Answer to Plaintiff's Second Amended Complaint, Defendants erroneously indicated that Kelly Boerner was promoted to the position of "Lead VP – Operations," not "Lead VP – Operations Support."

kathryn.barry@jacksonlewis.com
casey.leech@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 29, 2022 she caused a true and correct copy of the foregoing **DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** to be served via electronic mail upon the following counsel of record:

F. Anthony Dawkins
Morgan & Morgan, PA
191 Peachtree Street, NE
Suite 4200
Atlanta, GA 30303
adawkins@forthepeople.com

*/s/ Kathryn J. Barry*

PLAINTIFF'S

# EXHIBIT E

# BARRETT
## & *Farahany*
JUSTICE AT WORK® EST. 2001

Tuesday, March 7, 2023

Kathryn Barry, Esq.
Casey Leech, Esq.
Jackson Lewis
58 South Service Road, Suite 250
Melville, NY 11747

Re:     *Franklin v. Maximus,* et al. – Unintentional Disclosures

Dear Counsels:

I write to alert you of an unintentional disclosure of work product among the recordings produced to Maximus. The following recordings were  among those disclosed to Maximus on May 24, 2022 but constitute protected work product and therefore should not have been disclosed:

2022-01-01 Colleen Duke.mp3
2022-01-07 dsiahsd0277.mp3

As provided by Fed. R. Civ. P. 26(B)(5)(b), Plaintiff requests that Maximus and its attorneys permanently delete all copies of the recording files identified above. Further, we request that Maximus counsel confirm in writing to the undersigned that counsel and Maximus have permanently deleted all copies of the identified files.

In addition to the foregoing, the following recordings were disclosed to Maximus that Plaintiff contends are nonrelevant, personal recordings of him and members of his family that where not intended to be disclosed:

20221226 171205.m4a
20221226 171730.m4a

Plaintiff seeks Maximus' agreement to delete these files. Finally, we would appreciate a response to these request that details Defendants' disposition and indicates the action taken.

Kind warmest regards,

Anthony Dawkins, J.D.
Attorney for Maurice Franklin
Direct: (470) 747-8329
anthony@justiceatwork.com

**Carrier Mail and Packages:** 1175 Northmeadow Pkwy #140
MSC: 530092, Roswell, GA 30076
**Regular Mail:** P.O. Box 530092
Atlanta, GA 30353-0092

**Offices in GA and AL**
Main GA: (404) 214-0120 | Main AL: (205) 564-9005
Fax: (404) 214-0125 | Referrals: (404) 487-0912
www.JusticeAtWork.com

PLAINTIFF'S

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., MAXIMUS HUMAN | ) | Magistrate Judge Jeffrey T. Gilbert |
| SERVICES, INC., AND MAXIMUS | ) | |
| SERVICES LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES TO PLAINTIFF'S SECOND SET**
**OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendants Maximus, Inc., Maximus Human Services, Inc., and Maximus Services LLC (collectively, "Maximus" or "Defendants"), by and through their attorneys, Kathryn Montgomery Moran, Kathryn J. Barry, and J. Casey Leech of Jackson Lewis P.C., respond to Plaintiff Maurice Franklin's Second Set of Requests for Production of Documents (the "Requests") as follows:

**INTRODUCTION**

The information supplied in these responses to Plaintiff's Second Set of Requests for Production of Documents ("Responses") represents the information reasonably available at this time, and Defendants specifically reserves the right to supplement and/or amend these Responses if and when additional information becomes available. The word usage and sentence structure in these Responses are those of the attorneys who prepared the Responses and are not purported to be the exact language of Defendants or any witness. In providing the following Responses, Defendants will ascribe to terms the normal definitions given them under the normal rules of English vocabulary, usage, grammar, and syntax.

Defendants' Responses are made solely for the purpose of this lawsuit. The Responses

are based solely on information presently known to Defendants. Subsequent discovery, independent investigation, or legal research and analysis may result in additions to, changes in and/or variations from the responses set forth herein. All documents are produced consistent with the Agreed Confidentiality Order entered by the Court on February 7, 2022.

The Responses are made expressly preserving and without waiving the specific objections addressed to each particular Request or the following: (a) the right to object on the grounds of competency, privilege, relevancy, materiality, admissibility, or any other proper ground to the use of any material produced herein, for any purpose, in whole or in part, in any subsequent proceeding in this action or in any other action; (b) the right to object on any and all proper grounds, at any time, to other Requests or other discovery procedures involving or relating to the subject matter of the Requests; and (c) the right at any time to amend, revise, correct, modify, supplement, or clarify any of the responses provided herein.

In the event that any information is inadvertently produced in response to these Requests which falls within the attorney-client privilege or is protected by attorney work product immunity, Defendants shall not be deemed to have waived its privilege as to such information and documents or any other matter arising during the course of this litigation or any subsequent proceeding.

Finally, to the extent these Requests seek electronically stored information ("ESI"), Defendants will produce any relevant ESI subject to an agreed-upon protocol which is proportional to the needs of the case in light of the claims asserted by Plaintiff and in accordance with their obligations under the Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois. Defendants object to producing any ESI absent further agreement of the parties or orders of the Court.

## RESPONSES TO SPECIFIC REQUESTS

**REQUEST FOR PRODUCTION NO. 4:**

Documents showing Peter Baylinson's complete salary and wage records, bonus records, and commission records, performance evaluations, position description, position history, direct reports, and reporting manager from 2017-present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope (as it seeks information dating back to 2017, prior to the allegations giving rise to Plaintiff's claims, and after Plaintiff's separation from employment with Defendants), seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case, and duplicative of the documents requested in Plaintiff's Request for Production No. 1. Two dozen employees have reported to Peter Baylinson since 2017, and any documents showing those direct reports is both unduly burdensome (as it could include thousands of documents, in any way referencing a supervisory relationship) and irrelevant. His compensation and other records have no bearing on Plaintiff's claims or Defendants' defenses thereto. In his Second Amended Complaint, Plaintiff alleges "Defendants knowingly and purposely discriminated against Plaintiff for years by paying him a lower annual salary than his subordinate staff on the CA Lifeline Project" (SAC ¶ 245) and "Defendants discriminated against the Plaintiff based upon his race by paying him at lower rate than individuals who were either subordinate to or a direct report of the Plaintiff" (SAC ¶ 251). Mr. Baylinson is, and at all times relevant to Plaintiff's allegations was, employed as Vice President, Finance & Accounting. He was not subordinate to Plaintiff, nor was he Plaintiff's comparator. Defendants object further to the extent this Request seeks confidential information regarding non-parties to this litigation. Subject to and without waiving the foregoing objections, Defendants respond as follows:

- A table reflecting Baylinson's compensation will be produced as MAXIMUS

3

001036.

- Baylinson's performance evaluations since 2017 will be produced as MAXIMUS 001037–001060.

- A job description of Baylinson's position as VP – Finance & Accounting will be produced as MAXIMUS 001061.

- Since 2017, the following people have reported to Baylinson: Keerthana Aswathi; Jason Bardnell; Lynn Becker; Michele Bradford; Curtis Briggs; Kristen Crutchfield; Pierre Everett; James Graettinger; Alexandra Grossano; Jill Jones; Gaye Kelly; Samvel Khutsiyan; Rob King; Meghan Konka; Emile LaChambre; Michael Lant; Jadin Larsen; Kenthia Morton; Sabrina Reed; Linda Romanowski; Joshua Saunders; Bradford Simpson; Brooks Sorensen; and Lindsay Warnick.

- Since 2017, Laura Rosenak has been Baylinson's only direct supervisor.

**REQUEST FOR PRODUCTION NO. 5:**

All documents used or reviewed by Defendants to determine the existence of an ethnicity pay gap among Defendants' employees.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks information about all employees), not reasonably tailored in temporal scope (in that it requests documents from an unlimited time period, both prior to and subsequent to the allegations giving rise to Plaintiff's claims), and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants further object to this Request on the grounds that phrases "documents used or reviewed" and "ethnicity pay gap" are vague and undefined. This is a single-plaintiff lawsuit in which Plaintiff alleges he was paid less than his subordinates, and documents "used or reviewed" in determining an "ethnicity pay gap" among any other employee of any of the Defendants (without any temporal limitation) have no

bearing on Plaintiff's claims or Defendants' defenses thereto—especially since Plaintiff does not assert claims of any alleged mistreatment on the basis of his "ethnicity." Defendants object further to this Request to the extent it requests documents protected by the attorney-client privilege, attorney work product doctrine, or self-analysis privilege. Defendants are withholding documents regarding its analysis of its compensation practices subject to the above objections.[1]

## REQUEST FOR PRODUCTION NO. 6:

All documents identifying each and every employee of Defendants identified as having been the subject of an unsubstantiated ethnicity pay gap from 2019 - present.

## RESPONSE:

Defendants object to this Request on the grounds that it is overly broad (in that it seeks information about all employees), not reasonably tailored in temporal scope (in that it requests documents from an unlimited time period, both prior to and subsequent to the allegations giving rise to Plaintiff's claims), and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants further object to this Request on the grounds that phrases "documents identifying each and every employee of Defendants" and "unsubstantiated ethnicity pay gap" are vague and undefined. This is a single-plaintiff lawsuit in which Plaintiff alleges he was paid less than his subordinates, and documents "identifying each and every employee" of any of the Defendants (during a four-plus year period) "identified as having been the subject of an unsubstantiated ethnicity pay gap" have no bearing on Plaintiff's claims or Defendants' defenses thereto—especially since Plaintiff does not assert claims of any alleged mistreatment on the basis of his "ethnicity." There are no documents identifying Plaintiff as having an "unsubstantiated ethnicity pay gap." Defendants are not aware of any documents being withheld subject to the above objections.

---

[1] As Defendants object to this Request on grounds other than privilege, it is not providing a privilege log.

**REQUEST FOR PRODUCTION NO. 7:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, and/or Lync instant messages sent to or from Kathleen Kerr and Laura Rosenak from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks all communications), unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all text message and instant message communications between Kathleen Kerr and Laura Rosenak, without any limitation as to the subject of the communications, over a four-plus year period. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.[2]

**REQUEST FOR PRODUCTION NO. 8:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, and/or Lync instant messages sent to or from Kathleen Kerr and Kelly Boerner from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks all communications), unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request,

---

[2] As it relates to Request Nos. 7–16, Defendants' counsel invited Plaintiff's counsel to provide proposed custodians and search terms on August 10, 2022, and agreed Plaintiff's counsel would provide same by August 23, 2023, so that the parties could agree on an ESI discovery protocol. None were received.

Plaintiff seeks the production of all text message and instant message communications between Kathleen Kerr and Kelly Boerner, without any limitation as to the subject of the communications, over a four-plus year period. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 9:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, Lync instant messages sent to or from Kathleen Kerr and Kim Colbeck from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks all communications), unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all text message and instant message communications between Kathleen Kerr and Kim Colbeck, without any limitation as to the subject of the communications, over a four-plus year period. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 10:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, Lync instant messages sent to or from Kathleen Kerr and Kevin Black from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks all communications), unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all text message and instant message communications between Kathleen Kerr and Kevin Black, without any limitation as to the subject of the communications, over a four-plus year period. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 11:**

All email messages sent to or from Kathleen Kerr and Kevin Black containing any of the following keywords: "Maurice," or "Franklin," or "retaliation" from January 1, 2019 – present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all email messages between Kathleen Kerr and Kevin Black, over a four-plus year period, that contain the words "Maurice," or "Franklin," or "retaliation." Defendants estimate that a search of all emails between Kathleen Kerr and Kevin Black containing these proposed search terms will yield hundreds, if not thousands, of irrelevant documents. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents

responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 12:**

All email messages sent to or from Kathleen Kerr and Laura Rosenak containing any of the following keywords: "Maurice," or "Franklin," or "retaliation," or "reorg," or "reclassified," from January 1, 2019 – present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all email messages between Kathleen Kerr and Laura Rosenak, over a four-plus year period, that contain the words "Maurice," or "Franklin," or "retaliation," or "reorg," or "reclassified." Defendants estimate that a search of all emails between Kathleen Kerr and Laura Rosenak containing these proposed search terms will yield hundreds, if not thousands, of irrelevant documents. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 13:**

All email messages sent to or from Kim Colbeck and Laura Rosenak containing any of the following keywords: "Maurice," or "Franklin," or "retaliation," or "reorg," or "reclassified," from January 1, 2019 – present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly

burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all email messages between Kim Colbeck and Laura Rosenak, over a four-plus year period, that contain the words "Maurice," or "Franklin," or "retaliation," or "reorg," or "reclassified." Defendants estimate that a search of all emails between Kim Colbeck and Laura Rosenak containing these proposed search terms will yield hundreds, if not thousands, of irrelevant documents. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 14:**

All email messages sent to or from Kathleen Kerr and Kelly Blaschke Treharne containing any of the following keywords: "Maurice," or "Franklin," or "retaliation," or "reorg," from January 1, 2019 – present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present) and subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all email messages between Kathleen Kerr and Kelly Blaschke Treharne, over a four-plus year period, that contain the words "Maurice," or "Franklin," or "retaliation," or "reorg." Defendants estimate that a search of all emails between Kathleen Kerr and Kelly Blaschke Treharne containing these proposed search terms will yield hundreds, if not thousands, of irrelevant documents. Subject to and without waiving the foregoing objections, Defendants

10

state that they will identify and produce electronically-stored, relevant, and non-privileged documents responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 15:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, Lync instant messages sent to or from Laura Rosenak and Kim Colbeck from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad (in that it seeks all communications), unduly burdensome, not reasonably tailored in temporal scope (in that it seeks information to the present), and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. In this Request, Plaintiff seeks the production of all text message and instant message communications between Laura Rosenak and Kim Colbeck, without any limitation as to the subject of the communications, over a four-plus year period. Subject to and without waiving the foregoing objections, Defendants state that they will identify and produce electronically-stored, non-privileged information responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

**REQUEST FOR PRODUCTION NO. 16:**

All text message communications, Microsoft Teams Instant Messages, Skype instant messages, Lync instant messages sent to or from Kathleen Kerr and Kevin Black from January 1, 2019 - present.

**RESPONSE:**

Defendants object to this Request on the grounds that it is duplicative of Request No. 10 above. Defendants reassert and incorporate the objections they raised in their Response to Request for Production No. 10 above, and refer Plaintiff to same.

**REQUEST FOR PRODUCTION NO. 17:**

All Charges of Discrimination filed with any office of the Equal Employment Opportunity Commission or state level equivalent identifying "MAXIMUS," "Maximus, Inc.," "Maximus Human Services, Inc.," or "Maximus Services, LLC" as the employer respondent with race selected thereon as the basis for the discrimination.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope or subject matter, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants further object to this Request on the grounds that it is duplicative of Plaintiff's Request for Production No. 2 (served on June 28, 2022), to which Defendants previously objected on several grounds. This Request seeks the disclosure of all charges of discrimination "identifying" "Maximus" and/or any of the Defendants without any temporal limitation or limitation as to the claims asserted in the charges of discrimination. Charges of discrimination filed by anyone other than Plaintiff have no bearing on Plaintiff's claims in this lawsuit. Documents are being withheld subject to the above objections.

**REQUEST FOR PRODUCTION NO. 18:**

All documents about, concerning, related to, or discussing any claim or defense in this action received by Defendants from any individual or entity that is not a party to this action.

**RESPONSE:**

Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and vague and ambiguous, including as to the phrase "about, concerning, related to, or discussing." Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to documents received from third parties, including in response to subpoenas and/or FOIA requests, including those that are and/or have been produced as MAXIMUS 0000910–0001035, 001062–001726.

**REQUEST FOR PRODUCTION NO. 19:**

All documents to be used by Defendants as exhibits during any depositions in this action, all documents to be used by Defendants as exhibits to any dispositive motion, and all documents to be used by Defendants as exhibits during trial.

**RESPONSE:**

Defendants object to this Request on the grounds that it is premature and Defendants have not yet determined which documents they intend to use as exhibits during any depositions, in dispositive motions, or during trial. Defendants' investigation of this matter is ongoing, as is discovery, and Defendants will identify any such documents consistent with their obligations under the Federal Rules of Civil Procedure, the Court's standing order, and any order issued by the Court.

**REQUEST FOR PRODUCTION NO. 20:**

All documents that Defendants contend constitute after acquired evidence of Plaintiff's misconduct of an offense for which Defendants would normally terminate an employee's employment.

**RESPONSE:**

Defendants object to this Request on the grounds that it is premature and Defendants are not fully aware of the breadth of Plaintiff's misconduct. Defendants' investigation of this matter is ongoing, as is discovery. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to, *inter alia*, the documents that have been produced as MAXIMUS 000027, 001062–001075, 001727–001728; Maurice Franklin Production 001068–001084, 001208–001696, 001705–001709, 001783–001786, 001873–001875, 001877–002114.

Dated: February 28, 2023                    Respectfully Submitted,

                                            **MAXIMUS, INC., MAXIMUS HUMAN
                                            SERVICES, INC., AND MAXIMUS
                                            SERVICES LLC**

                                            */s/ Kathryn J. Barry*

                                            One of Its Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
Casey J. Leech
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Fax: (312) 787-4995
kathryn.moran@jacksonlewis.com
kathryn.barry@jacksonlewis.com
casey.leech@jacksonlewis.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that on February 28, 2023 she caused a true and correct copy of the foregoing **DEFENDANTS' RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** to be served via electronic mail upon the following counsel of record:

F. Anthony Dawkins
Barrett & Farahany
1175 Northmeadow Pkwy #140
Roswell, Georgia 30076
anthony@justiceatwork.com

*/s/ Kathryn J. Barry*

PLAINTIFF'S

# EXHIBIT G



F. Anthony Dawkins, J.D.
adawkins@forthepeople.com
Phone: (404) 965-1872
Fax: (404) 720-3839

Tuesday, August 16, 2022

Kathryn Montgomery Moran
Kathryn Barry
J. Casey Leech
Jackson Lewis P.C.
150 N. Michigan Ave.
STE 2500
Chicago, IL 60601

RE:     ***Franklin v. Maximus, Inc. et. al*, 1 :21-CV-04367** – Northern District of Illinois,
        Eastern Division: Conferral on Defendants' Failure to Produce Documents,
        Electronically Stored Information Pursuant to Rule 34 of the Federal Rules of Civil
        Procedure

Dear Counsels:

    Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents
contained objections to requests for production that are unsupported by existing law. For the reasons
set forth below, Maximus must supplement its responses to Plaintiff's First Set of Request for
Production with all qualifying documents to avoid the filing of a Motion to Compel. Upon the filing
of a motion to compel, the burden rests upon the objecting party to show with specificity that the
request is improper. *Graha, v. Casey's General Stores,* 206 F.R.D. 251, 254 (S.D.Ind.2002). That
burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the
requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither
relevant nor reasonably calculated to lead to the discovery of admissible evidence." Cunningham
v. Smithkline Beecham, 255 F.R.D. 474  (N.D.Ill. Feb. 3, 2009). *Burkbile v. Mitsubishi Motors,
Corp., 2006 WL 2325506 at \*6 (N.D.Ill. Aug. 2, 2006).* Rather, the court should consider "the
totality of the circumstances, weighing the value of material sought against the burden in providing
it, and taking into account society's interest in furthering the truth-seeking function in the particular
case before the court." *Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir, 2002).*

    Request for Production No. 1. *Complete salary and wage records, bonus records,
    commission records, and W-2 forms for Laura Rosenak, Senior Vice President, and
    each of Defendants' employees reporting to Laura Rosenak, Kelly Blaschke
    Treharne, Senior Vice President, and each of Defendants' employees reporting to
    Kelly Blascke Treharne, Peter Baylinson, Vice President, and each of Defendants'
    employees reporting to Peter Baylinson for the years 2017-present, as well as each
    employees' performance evaluations, organization charts detailing their*

*employees, their direct reports, and their reporting manager during each year from 2017-present.*

We find that Defendants' reflexive recitation that the request is "overly broad, unduly burdensome, not reasonably tailored in temporal scope, seeks information that is not relevant to any party's claim or defense, and not proportional to the needs of the case" to be without legal or factual support and, therefore, is not a valid basis upon which to deny Plaintiff's request. The fact that "dozens of employees have reported to Laura Rosenak, Kelly Blaschke Treharne, and Peter Baylinson since 2017" does not establish a basis as to why it would be unduly burdensome for Maximus, a company of 37,000 employees, to produce the requested employment records. Plaintiff alleges that Maximus subjected him to disparate treatment based upon his race by compensating him at a lower rate that those not in his protected class. A "similarly situated employee," for the purposes of a Title VII employment discrimination action, is one who is directly comparable to the plaintiff in all material respects; in evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, …" *Bio v. Federal Express Corp.,* 424 F.3d 593 (Seventh Cir. Sept. 16, 2005). Plaintiffs' request was specific to those employees who reported to the managers that Plaintiff also reported to. Plaintiff's Second Amended Complaint made the following relevant averments:

238. Defendants discriminated against the plaintiff based upon his race by paying him at a lower rate than individuals who were either subordinate to or a direct report of the Plaintiff.
. . .
240. Defendants discriminated against the Plaintiff by paying Plaintiff's CA Lifeline Project Staff who were not in Plaintiff's protected class a greater salary than that of the Plaintiff.
241. Defendants attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate than his direct reports by refusing to officially [designate] the plaintiff as those individuals' manager despite each reporting to Plaintiff operationally.

The above averments establish the compensation records for individuals who are subordinate to or a direct report of the Plaintiff and staff of the CA Lifeline Project as relevant to Plaintiff's claims. Further, as Plaintiff specifically alleged that Maximus "attempted to conceal from the plaintiff the fact that he was being compensated at a lower rate … by refusing to officially [designate] the plaintiff as those individuals manager despite each reporting to Plaintiff operationally," unless Maximus is willing to stipulate to which employees it officially assigned to different manager to conceal the fact that their compensation exceeded that of the Plaintiff while operationally subordinate to him, the Maximus must fully satisfy Request for Production 1.

Defendants further object to producing the documents requested by Request for Production No. 1 "to the extent this Request seeks confidential information regarding non-parties to this litigation." Defendants did not cite to any supporting legal doctrine that stands for the proposition that requests for the production of documents made pursuant to Rule 34 of the Federal Rules of Civil Procedure are limited to documents concerning or related to parties to the litigation. Defendants position appears to confuse Rule 34's applicability only to parties. *See Hatch v. Reliance Ins. Co., C.A.9 (Ariz.)* 1985 , 758 F.2d 409. On the contrary, there is considerable legal support for the notion that information concerning non-parties to the litigation is discoverable. For

instance, *Dauska v. Green Bay Packaging Inc.,* E.D.Wis.2013, 291 F.R.D. 251, a terminated employee requested information and documents about severance benefits his former employer paid or offered other terminated employees (who were not parties to the action) during the past five years. The court held that the request was not overly broad and thus was discoverable. Defendants' objection on the basis that nonparty information is not discoverable via a Rule 34 production request is without merit.

Maximus' claims that communications with and investigatory reports produced by a third-party law firm contradict statements made by Nathalie M. Ohanian, Maximus Senior Vice President – Legal Counsel. In her letter of July 16, 2021, Ms. Ohanian wrote:

> The details set forth in your letter gave us an opportunity to conduct a thorough investigation into each allegation. In order to remain objective and unbiased, Maximus sought the assistance of an outside law firm to conduct the third-party neutral investigation into both Mr. Franklin's complaints as filed with the company's ethics hotline, as well as the allegations in the demand letter. The investigators spoke with a number of potential witnesses, including Mr. Franklin, as well as Ms. Rosenak. After going through all of the available evidence, our investigation did not find information to corroborate any of the allegations. In short, there was no evidence of any intent to discriminate, no evidence of any management acts or comments intended to system systematically punish or undermine Mr. Franklin, nor any evidence of any retaliation.

Request for Production No. 2.

Maximus' recitation of the same litany of unsupported objections have been duly addressed above. With respect to Defendants' uncertainty concerning "business units under Kathleen Kerr's authority, Plaintiff is referring to Ms. Kerr's position/role as Group President of U.S. Human Services. Request for Production No. 2 requests Charges of Discrimination, ethics complaints, and correspondence sent to the Defendants' corporate officers and/or Board of Directors alleging intentional discrimination and/or harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. seq.* Those documents are relevant to Plaintiff's claims of intentional discrimination because they may show that Maximus engages in a pattern and practice of intentional discrimination in violation of Title VII. Maximus must supplement its response to provide the remaining documents responsive to Request for Production No. 2.

Request for Production No. 3.

Maximus claims that the investigations were "objective and unbiased" and conducted by a "third-party" to perform a "neutral investigation," such an investigation cannot therefore be prepared for the purposes of litigation to be deemed privileged work product as provided in Rule 26 of the Federal Rules of Civil Procedure. Threshold determination in any case involving assertion of work product privilege is whether materials sought to be protected from disclosure were in fact prepared in anticipation of litigation; mere fact that litigation does eventually ensure does not, by itself, cloak materials prepared by attorney with the protection of the work product privilege. *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109 (Seventh Cir. May 20, 1983. Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced.

Thus, the test should be whether, in light of the nature of the document and the factual situation in that particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. *Id.* citing *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982). Ms. Ohanian's statements suggest that the document was not prepared in anticipation of litigation but, instead, was prepared as an "objective and unbiased" assessment of the claims and allegations put forth by out client. Accordingly, we find that Maximus' claims of attorney work product privileged to be factually inapplicable to these circumstances.

Further, to be privileged, communication must have been made primarily for the purpose of obtaining legal advice. *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981). According to Ms. Ohanian, Maximus' purpose for engaging a third-party law firm was "to remain objective and unbiased" – she mentioned nothing about obtaining legal advice because so doing would mean that the investigation was neither objective nor unbiased. Absent the primary purpose of obtaining legal advice, reports and communications produced by the third-party law firm cannot be protected by attorney-client privilege. Maximus' continued withholding those documents will undoubtedly result in the filing of a motion to compel.

This is a sincere attempt to resolve the discovery dispute arising from Defendants' refusal to satisfy Plaintiff's request for production. Continued withholding of the requested documents without legal and factual support will result in the filing for a motion to compel and sanctions for the costs associated with the needless escalation of routine discovery requests. You may contact me directly should you wish to discuss this matter further. Plaintiff requests that the withheld documents be produced within seven days of the date of this letter.

Sincerely,

F. Anthony Dawkins, J.D.
Attorney for Maurice Franklin

PLAINTIFF'S

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04367 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MAXIMUS, INC., MAXIMUS | ) | Magistrate Judge Jeffrey T. Gilbert |
| HUMAN SERVICES, INC., AND | ) | |
| MAXIMUS SERVICES LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendants Maximus, Inc., Maximus Human Services, Inc., and Maximus Services LLC (collectively, "Maximus" or "Defendants"), by and through their attorneys, Kathryn Montgomery Moran, Kathryn J. Barry, and J. Casey Leech of Jackson Lewis P.C., respond to Plaintiff Maurice Franklin's First Set of Requests for Production of Documents (the "Requests") as follows:

**INTRODUCTION**

The information supplied in these responses to Plaintiff's First Set of Requests for Production of Documents ("Responses") represents the information reasonably available at this time, and Defendants specifically reserves the right to supplement and/or amend these Responses if and when additional information becomes available. The word usage and sentence structure in these Responses are those of the attorneys who prepared the Responses and are not purported to be the exact language of Defendants or any witness. In providing the following Responses, Defendants will ascribe to terms the normal definitions given them under the normal rules of English vocabulary, usage, grammar, and syntax.

Defendants' responses are made solely for the purpose of this lawsuit. The responses are based solely on information presently known to Defendants. Subsequent discovery, independent

investigation, or legal research and analysis may result in additions to, changes in and/or variations from the responses set forth herein. All documents are produced consistent with the Confidentiality Order "so ordered" on February 7, 2022.

The responses are made expressly preserving and without waiving the specific objections addressed to each particular Request or the following: (a) the right to object on the grounds of competency, privilege, relevancy, materiality, admissibility, or any other proper ground to the use of any material produced herein, for any purpose, in whole or in part, in any subsequent proceeding in this action or in any other action; (b) the right to object on any and all proper grounds, at any time, to other Requests or other discovery procedures involving or relating to the subject matter of the Requests; and (c) the right at any time to amend, revise, correct, modify, supplement, or clarify any of the responses provided herein.

In the event that any information is inadvertently produced in response to these Requests which falls within the attorney-client privilege or is protected by attorney work product immunity, Defendants shall not be deemed to have waived its privilege as to such information and documents or any other matter arising during the course of this litigation or any subsequent proceeding.

Finally, to the extent these Requests seek Electronically Stored Information ("ESI"). Defendants will produce any relevant ESI subject to an agreed-upon protocol which is proportional to the needs of the case in light of the claims asserted by Plaintiff and in accordance with their obligations under the Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois. Defendants object to producing any ESI absent further agreement of the parties or orders of the Court.

## **RESPONSES TO SPECIFIC REQUESTS**

## **REQUEST FOR PRODUCTION NO. 1:**

Complete salary and wage records, bonus records, commission records, and W-2 forms for Laura Rosenak, Senior Vice President, and each of Defendants employees reporting to Laura Rosenak, Kelly Blaschke Treharne, Senior Vice President, and each of Defendants' employees

reporting to Kelly Blaschke Treharne, Peter Baylinson, Vice President, and each of Defendants' employees reporting to Peter Baylinson for the years 2017-present as well as each employees' performance evaluations, organizational charts detailing the employees, their direct reports, and their reporting manager during each year from 2017-present.

**RESPONSE:**  Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, seeks information that is not relevant to any party's claim or defense, and not proportional to the needs of the case. Dozens of employees have reported to Laura Rosenak, Kelly Blaschke Treharne, and Peter Baylinson since 2017, and the records sought for most of these employees—as well as information about who they reported to and who reported to them—have no bearing on Plaintiff's claims asserted in his Second Amended Complaint or Defendants' defenses thereto. Defendants object further to the extent this Request seeks confidential information regarding non-parties to this litigation. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to Plaintiff's personnel records, as well as performance reviews and personnel records reflecting compensation for Laura Rosenak and the four individuals identified in Paragraph 148 of Plaintiff's Second Amended Complaint (Richard DiLollo, Colleen Duke, James Graettinger, Daryl Rieber), which will be produced as MAXIMUS 000001 – 000342. Organization charts effective January 2021 will be produced as MAXIMUS 000356 – 000357. Additional documents are being withheld subject to the above objections.

**REQUEST FOR PRODUCTION NO. 2:**

From March 2017 to the present, all Charges of Discrimination filed with the Equal Employment Opportunity Commission (and/or its state counterpart) alleging acts of intentional discrimination or harassment, complaints filed with Defendants' ethnics hotline, letters or emails received by Defendants' corporate office/officers, and/or Board of Directors and/or Human Capital regarding Kathleen Kerr, Defendants' business unit(s) under Kathleen Kerr's authority, and/or any of Defendants' employees within Kathleen Kerr's line of authority; documents, notes, and/or memoranda of investigation of the complaints and Charges of Discrimination; any surveys of Defendants' employees concerning workplace discrimination at Defendants.

**RESPONSE:**  Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, and seeks information that is not relevant

to any party's claim or defense and not proportional to the needs of the case. This Request seeks the disclosure of documents during a five-year period—beginning four years before Plaintiff filed his charge of discrimination with the EEOC—including "letters or emails" and documents relating to any charges and complaints of discrimination and harassment by anyone regarding "business units" and employees under "the line of authority" of Kathleen Kerr. During this time period, hundreds of employees have served under the line of authority of Ms. Kerr, who currently serves as the Group President of U.S. Human Services and Texas Health. Moreover, other charges and complaints of discrimination filed by other employees have no bearing on Plaintiff's claims in this lawsuit. Defendants further object to this Request on the grounds that it is vague and ambiguous, including as to the phrases "complaints," "business unit(s) under Kathleen Kerr's authority," "Kathleen Kerr's line of authority," and "surveys." Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, Defendants respond to this Request only as it relates to charges of discrimination and internal complaints that have alleged discrimination and/or harassment by Kathleen Kerr. Maximus is unaware of any charges of discrimination that have alleged discrimination and/or harassment by Kathleen Kerr. Internal Maximus complaints alleging discrimination and/or harassment by Kathleen Kerr, and the investigation files of these complaints, will be produced as MAXIMUS 000343 – 000377. Defendants will identify and produce additional electronically-stored non-privileged information responsive to this Request (to the extent any such information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol. Additional documents are being withheld subject to the above objections.

## REQUEST FOR PRODUCTION NO. 3:

The following documents regarding Defendants' employee selected to fill the Lead Vice President – Economic Services position and Lead Vice President – Operations position in or around April 2021, posted and managed by Kelly Blaschke Treharne, Senior Vice President: the

selected employees' application for employment with Defendants; memoranda of any interview which Defendants had with the selected employees before they were hired by Defendants; Defendants initial offer of employment to the selected employees; selected employees' resume submitted to prior to obtaining employment with Defendants; selected employees' current resume; selected employees complete salary and wage records, bonus records, commission records, and W-2 forms for every year of their employment with Defendants; selected employees performance evaluations for each of the years of their employment with Defendants; organizational charts detailing selected employees, their direct reports, and their reporting manager during each year of their employment with Defendants; complaints concerning selected employees work performance; written description of each position held by the selected employees during their employment with Defendant; all written contracts entered into between the selected employees and one or more of Defendants; all documents, notes, writings, or memoranda describing or summarizing any oral agreements between the selected employees and one or more of Defendants; for each project/contract of Defendants during their employment, documents detailing the selected employees' project level title, role, responsibilities, and the duration the selected employees maintained said role on each respective project; total contract value and annual contract value for each project the selected employee held a role during their employment with one or more of Defendants; bids, proposals, and responses to solicitations in which the selected employees were identified as key person, executive, or management level role; every annual client satisfaction survey submitted to one or more of Defendants by a client of one or more of Defendants for which the selected employees maintained a management or executive level role or oversight.

**RESPONSE:** Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably tailored in temporal scope, and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants further object to this Request on the grounds that it is vague and ambiguous, including as to the phrases "selected employees," "complaints concerning selected employees work performance," "all documents, notes, writings, or memoranda describing or summarizing any oral agreements between the selected employees and one or more of Defendants," "documents detailing the selected employees' project level title, role, responsibilities, and the duration the selected employees maintained said role on each respective project," "total contract value and annual contract value," "key person, executive, or management level role," and "management or executive level role or oversight." Defendants further object to this Request on the grounds that there does not and has not existed any position titled "Lead Vice President – Economic Services." Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine, and to the extent it seeks

confidential information regarding non-parties to this litigation. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to the personnel files of the three individuals who were promoted in or about April 2021 to the positions of Lead VP – Operations (Rachel Zietlow and Lisa Simmons) and Lead VP – Employer Services (Nancy Kim), the job descriptions for these two positions and the Lead VP – Operations Support position, the "recruiting tracker" spreadsheet created during the application process for these positions, and the interview evaluations for Ms. Zietlow, Ms. Simmons, and Ms. Kim; these documents will be produced as MAXIMUS 000378 – 000820; MAXIMUS 000886. Also produced are personnel records and interview evaluations for Kelly Boerner, who was promoted in or about April 2021 to the position of Lead VP – Operations Support; these documents will be produced as MAXIMUS 000821 – 000885.[1] Defendants will identify and produce additional electronically-stored non-privileged information responsive to this Request (to the extent any information exists) after Plaintiff responds to Defendants' request to meet-and-confer to establish an agreed-upon electronic discovery protocol.

Dated: July 29, 2022

Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC**

*/s/ Kathryn J. Barry*
One of Its Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
Casey J. Leech
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Fax: (312) 787-4995
kathryn.moran@jacksonlewis.com

---

[1] In their Answer to Plaintiff's Second Amended Complaint, Defendants erroneously indicated that Kelly Boerner was promoted to the position of "Lead VP – Operations," not "Lead VP – Operations Support."

kathryn.barry@jacksonlewis.com
casey.leech@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 29, 2022 she caused a true and correct copy of the foregoing **DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** to be served via electronic mail upon the following counsel of record:

F. Anthony Dawkins
Morgan & Morgan, PA
191 Peachtree Street, NE
Suite 4200
Atlanta, GA 30303
adawkins@forthepeople.com

*/s/ Kathryn J. Barry*

PLAINTIFF'S

# EXHIBIT I

| Date | Payment Source | Description | Amount Paid |
|---|---|---|---|
| 9/16/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 9/17/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 160.00 |
| 9/21/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 65.00 |
| 10/18/2021 | TFRG | PAYMENT To MAURICE | 3,760.00 |
| 10/18/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 10/18/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 30.00 |
| 10/19/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 10/22/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 70.00 |
| 1/3/2021 | TFRG | PAYMENT To MAURICE | 3,760.00 |
| 1/3/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 11/10/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 11/10/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 11/16/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 11/17/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 11/17/2021 | TFRG | PAYMENT To MAURICE | - |
| 11/29/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/3/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/3/2021 | TFRG | PAYMENT To MAURICE | 3,775.00 |
| 12/10/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/16/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 10.00 |
| 12/17/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/17/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/20/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 100.00 |
| 12/20/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 865.00 |
| 12/20/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 12/20/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/24/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 600.00 |
| 12/30/2021 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 12/30/2021 | TFRG | ZELLE DEBIT PAY To MAURICE | 36.00 |
| 1/3/2022 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 1/3/2022 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 1/3/2022 | TFRG | PAYMENT To MAURICE | 3,760.00 |
| 1/4/2022 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 1/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 10.00 |
| 1/24/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 36.00 |
| 1/25/2022 | TFRG | ZELLE DEBIT PAY - reversed | - |
| 1/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 40.00 |
| 1/26/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 1/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 100.00 |
| 1/31/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 100.00 |
| 2/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 10.00 |
| 2/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 4/4/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 100.00 |
| 4/12/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 53.00 |
| 4/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 65.00 |
| 4/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 4/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 500.00 |
| 4/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 180.00 |
| 4/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 5.00 |
| 4/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 50.00 |
| 4/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 190.00 |
| 4/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 200.00 |
| 4/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 30.00 |
| 4/26/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 65.00 |
| 4/26/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 28.00 |
| 4/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 20.00 |
| 4/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 100.00 |
| 4/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 5.00 |
| 4/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 5.00 |
| 4/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | 20.00 |

| TheFranklinResesGroup | |
|---|---|
| Sep-21 | $ 475.00 |
| Oct-21 | 3,910.00 |
| Nov-21 | 65.00 |
| Dec-21 | 5,400.00 |
| Jan-22 | 4,096.00 |
| Feb-22 | 60.00 |
| Mar-22 | |
| Apr-22 | 8,529.71 |
| May-22 | 1,596.00 |
| May-22 | 2,055.00 |
| Jun-22 | 2,454.00 |
| Jul-22 | 4,065.00 |
| Aug-22 | 4,258.00 |
| Sep-22 | 2,070.00 |
| Oct-22 | 4,560.00 |
| Nov-22 | 2,075.00 |
| Dec-22 | 7,118.00 |
| Jan-23 | 529.00 |
| Feb-23 | 4,465.65 |
| Mar-23 | 5,000.00 |
| | $ 55,936.65 |

| Disability Payment Total | | Disability Payment Breakdown/Month | | Rent Direct From TFRG Account | | Roomates Rental Assistance | |
|---|---|---|---|---|---|---|---|
| Mar-22 | $6,009.57 | $3,295.57 | | 12/5/2022 | $ 4,121.00 | 12/3/2021 | $ 20,156.25 |
| Apr-22 | $5,428.00 | 2,714.00 | 2,714.00 | 11/14/2022 | 4,121.00 | | |
| May-22 | 5,428.00 | 2,714.00 | 2,714.00 | 10/4/2022 | 4,121.00 | | |
| Dec-21 | 3,810.00 | 2,714.00 | | 9/6/2022 | 4,121.00 | | |
| Jun-22 | 5,428.00 | 2,714.00 | 2,714.00 | 7/6/2022 | 3,760.00 | | |
| Jul-22 | 5,428.00 | 2,714.00 | 2,714.00 | 6/6/2022 | 3,760.00 | | |
| Aug-22 | 2,714.00 | 2,714.00 | | 5/5/2022 | 3,760.00 | | |
| Sep-22 | 8,529.71 | 2,520.14 | 3,295.57 | 4/5/2022 | 3,760.00 | | |
| Sep-22 | | 2,520.14 | | 3/4/2022 | 3,760.00 | | |
| Oct-22 | 2,714.00 | 2,714.00 | | 2/7/2022 | 4,142.00 | | |
| Nov-22 | 2,520.15 | 2,520.15 | | 2/3/2023 | 4,142.00 | | |
| Dec-22 | | | | 1/3/2023 | 4,156.00 | | |
| Feb-22 | 2,714.00 | 2,714.00 | | | | | |
| | $46,913.43 | | | | $ 47,342.00 | | |

| Combined Payment Totals | |
|---|---|
| Sep-21 | $ 475.00 |
| Oct-21 | 3,910.00 |
| Nov-21 | 3,810.00 |
| Dec-21 | 5,400.00 |
| Jan-22 | 4,096.00 |
| Feb-22 | 6,534.00 |
| Mar-22 | $9,769.57 |
| Apr-22 | 10,784.00 |
| May-22 | 11,243.00 |
| Jun-22 | 11,642.00 |
| Jul-22 | 11,193.00 |
| Aug-22 | 6,972.00 |
| Sep-22 | 14,720.71 |
| Oct-22 | 11,395.00 |
| Nov-22 | 8,716.15 |
| Dec-22 | 11,239.00 |
| Jan-23 | 4,685.00 |
| Feb-23 | 8,607.65 |
| Mar-23 | 5,000.00 |

| Total | $ 150,192.08 |
|---|---|

Maurice Franklin Production 002265

Maurice Franklin Production 002266

| Date | TFRG | Description | Amount |
|---|---|---|---|
| 5/3/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 30.00 |
| 5/3/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 40.00 |
| 5/5/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 50.00 |
| 5/5/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 25.00 |
| 5/5/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 5/6/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 5/17/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 72.00 |
| 5/18/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 42.00 |
| 5/20/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 5/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 5.00 |
| 5/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 65.00 |
| 5/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,440.00 |
| 5/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 5/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 5/24/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 90.00 |
| 5/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 5/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 25.00 |
| 5/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 30.00 |
| 5/26/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 5/27/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 25.00 |
| 5/27/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 5/31/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 15.00 |
| 5/31/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 21.00 |
| 5/31/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 6/2/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 17.00 |
| 6/2/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,000.00 |
| 6/7/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 6/7/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 72.00 |
| 6/8/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 116.00 |
| 6/10/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 6/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 6/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 6/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 30.00 |
| 6/16/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 150.00 |
| 6/16/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 6/16/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 6/17/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 5.00 |
| 6/17/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 6/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 22.00 |
| 6/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 50.00 |
| 6/22/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 6/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 5.00 |
| 6/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 25.00 |
| 6/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 230.00 |
| 6/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 40.00 |
| 6/24/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 6/24/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 200.00 |
| 6/24/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 6/27/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 6/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 12.00 |
| 6/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 200.00 |
| 7/1/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 7/1/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ 300.00 |
| 7/1/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 125.00 |
| 7/5/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 7/5/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 7/6/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 7/8/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 30.00 |
| 7/8/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 7/18/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 7/20/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,500.00 |
| 7/26/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 40.00 |
| 8/1/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 23.00 |
| 8/4/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 350.00 |

Maurice Franklin Production 002267

| Date | | Description | Amount |
|---|---|---|---|
| 8/8/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 8/8/2022 | TFRG | ZELLE DEBIT PAY - reversed | $ - |
| 8/11/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 110.00 |
| 8/15/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 8/19/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 220.00 |
| 8/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 920.00 |
| 8/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,100.00 |
| 8/30/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 750.00 |
| 8/31/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 515.00 |
| 9/2/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 150.00 |
| 9/6/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 9/7/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 130.00 |
| 9/9/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 9/12/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 120.00 |
| 9/15/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 9/16/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 9/19/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,210.00 |
| 9/20/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 240.00 |
| 10/3/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,990.00 |
| 10/11/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 390.00 |
| 10/13/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 300.00 |
| 10/14/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 10/21/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 10/24/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 10/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,210.00 |
| 10/31/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 50.00 |
| 11/2/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 11/3/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 11/7/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 11/8/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 300.00 |
| 11/17/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 25.00 |
| 11/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 100.00 |
| 11/23/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 50.00 |
| 11/25/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,550.00 |
| 12/1/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 12/5/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 12/6/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 330.00 |
| 12/9/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 560.00 |
| 12/12/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 300.00 |
| 12/13/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 2,500.00 |
| 12/15/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 375.00 |
| 12/16/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 600.00 |
| 12/19/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 270.00 |
| 12/22/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 88.00 |
| 12/27/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 620.00 |
| 12/28/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,310.00 |
| 12/29/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 60.00 |
| 12/30/2022 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 35.00 |
| 1/3/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 10.00 |
| 1/5/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 408.00 |
| 1/20/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 111.00 |
| 2/1/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 499.65 |
| 2/7/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 250.00 |
| 2/8/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 65.00 |
| 2/8/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 45.00 |
| 2/10/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 50.00 |
| 2/13/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 45.00 |
| 2/13/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 150.00 |
| 2/14/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,660.00 |
| 2/15/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 1,200.00 |
| 2/16/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 208.00 |
| 2/16/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 20.00 |
| 2/21/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 240.00 |
| 2/27/2023 | TFRG | ZELLE DEBIT PAY To MAURICE | $ 33.00 |

| 3/2/2023 | TFRG | PAYMENT To MAURICE | $ | 5,000.00 |
|----------|------|--------------------|---|----------|

Maurice Franklin Production 002268

Franklin v. Maximus, et. al.
Notice of Motion for Sanctions
March 6, 2023

b. "Franklin also failed to disclose his ownership interest in a 2017 Porsche Macan – an automobile which, according to available motor vehicle registration information, is valued at $76,000.00."

Maximus intentionally misrepresented the value of Mr. Franklin's 2017 Porsche Macan to the Court, violating Rule 11(b)(3). As plainly indicated in the evidence that you put forth, $76,000.00 is the *base price* of the vehicle, *not* the *value* of the vehicle. Mr. Franklin did not pay $76,000.00 for the vehicle – or any sum close to it. Further, Maximus offered no evidence in support of its claim that Mr. Franklin's vehicle is valued at $76,000.00. Accordingly, that statement in violation of Rule 11(b)(3).

c. "Franklin's ownership in the Macan is worth approximately $21,000.00."

Maximus failed to proffer *any* evidence showing the purchase price of the vehicle. Instead, you inaccurately assumed that the "base price" of the vehicle is both the value of the vehicle and the price that Mr. Franklin paid for the vehicle. It is neither. Without evidence in support of Maximus' contention here, this statement was made in violation of Rule 11(b)(3).

d. "Together, Franklin omitted approximately $53,000 in earnings and assets from his IFP Application."

While Mr. Franklin did, in fact, fail to list the sum he received in annual bonuses from his former employer, he did not receive a total of $53,000.00. As Maximus' premise for asserting that his ownership interest in the Macan is worth $21,000.00 was plainly flawed, so too is its premise for asserting that that Mr. Franklin omitted $53,000.00 in earnings and assets from his IFP application. We contend that this statement also violated Rule 11(b)(3) because it lacks any basis in fact and therefore had no evidentiary support.

e. "Though Franklin was ordered to pay the complete filing fee on August 19, 2021, he has not done so to date."

Maurice paid the court a fee of $402.00 on August 19, 2021. Irrespective of that point, Maximus failed to support its contention that Maurice *did not* pay the with *any* evidence. Rule 11(b)(3)-(4) requires that litigants (and their counsel), must support their affirmative claims or denials with evidentiary support. Before presenting a document to the court, an attorney must have more than a suspicion that the facts contained therein are true. Callahan v. Schoppe, 864 F. 2d 44, 45 (5th Cir. 1989) (affirming sanctions where counsel served and litigated against a person whose name matched a named defendant, who they served because he was the only person with that name in the phonebook, and failed to dismiss the action despite being informed he was the wrong person). The absence of a record in the docket affirmatively indicating that Mr. Franklin paid the required fee does not absolve Maximus of its obligation to conduct a reasonable investigation into its factual contentions before presenting those contentions as fact to the Court. Maximus statement to the court that Mr. Franklin did not pay the requested fee when, in fact, he did,

II. **Legal Argument Unsupported by Existing Law**

In addition to the foregoing, I intend upon moving the Court for sanctions against you for presenting a legal argument unsupported by existing law in violation of Rule 11(b)(2). In the Motion to

Franklin v. Maximus, et. al.
Notice of Motion for Sanctions
March 6, 2023

Dismiss, you state, "[w]e note that the Seventh Circuit did not hold in Hrobowski v. Commonwealth Edison Co., 203 F.3d 445, 448 (7th Cir. 2000) that § 1915(e)(2)(A) only required dismissal if a plaintiff has actually "reap[ed] the benefits of *in forma pauperis* status". However, the Court later – albeit in an unpublished decision – rejected this interpretation, relying on Thomas v. GMAC for the holding …" Your reliance on McRoyal v. Commonwealth Edison Co., 263 Fed. App'x 500, 503 (7th Cir. 2008), an *unpublished* opinion to overturn a published, precedential opinion is misplaced. Rule 32.1 of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit provides:

> The court may dispose of an appeal by an opinion or an order. Opinions, which may be signed or per curiam, are released in printed form, are published in the Federal Reporter, and constitute the law of the circuit. Orders, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents. Every order bears the legend: "Nonprecedential disposition. To be cited only in accordance with Fed. R. App. 32.1.

7th Cir. R. 32.1. Federal Rule of Appellate Procedure 32.1 provides:

> A court may not prohibit or restrict the citation of federal judicial opinions, judgments, or other written dispositions that have been:
>
> (i)     designated as "unpublished," "not for publication," "not precented," or the like; and
> (ii)    issued on or after January 1, 2007.

Fed. R. App. P. 32.1. McRoyal does not have precedential value and, thus cannot overrule Hrobowski.

Second, McRoyal does not cite Hrobrowski or expressly overturn it. McRoyal instead cites Thomas, which considered whether the dismissal "with prejudice" was an abuse of discretion but did not discuss the underlying district decision to dismiss the complaint based on false statements on the *in forma pauperis* application. The Seventh Circuit Court of Appeals' decision in Hrobowski remains controlling precedent in this Circuit and is applicable to the factual and legal posture of this dispute. Your motion presents a legal argument unsupported by existing law and therefore is in violation of Rule 11(b)(2).

We will proceed with filing a motion for sanctions in 21 days should you decline to withdraw your Motion to Dismiss.

Sincerely,

F. Anthony Dawkins, J.D
Attorney for Maurice Franklin