IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE FRANKLIN, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:21-cv-04367 |
| | ) |
| v. | ) Hon. Lindsay C. Jenkins |
| | ) |
| MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., and MAXIMUS SERVICES LLC., | ) Magistrate Judge Jeffrey T. Gilbert |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, TO COMPEL AND EXTEND DEFENDANTS' TIME TO COMPLETE DISCOVERY**

Defendants Maximus, Inc., Maximus Human Services, Inc., and Maximus Services LLC (collectively, "Maximus" or "Defendants"), submit this reply memorandum in further support of their motion for sanctions or, in the alternative, to compel and extend Defendants' time to complete discovery.[1]

**INTRODUCTION**

This Court ordered Plaintiff to respond to Maximus' requests for documents and information regarding Plaintiff's earnings, litigation history, and recordings no later than December 11, 2022. ECF No. 77. Plaintiff admits that he did not comply, that his subsequent were both inaccurate and incomplete. Opp. at 3-4. But he asks this Court to ignore his noncompliance and deny Maximus' motion because Plaintiff's "life circumstances"—presumably his claimed "limited means and resources"—"create challenges to compliance." Opp. at 3-4. As Plaintiff's own opposition papers confirm, he's received at least $150,192.08 in earnings, rental assistance, and disability-related payments in the past eighteen (18) months. Ex. I to Opp. His attorney works for "the largest [law

---

[1] Defendants' motion for sanctions or, in the alternative, to compel and extend Defendants' time to complete discovery (ECF No. 95) is cited to herein as "Mot." Plaintiff's response in opposition (ECF No. 103) is cited to as "Opp."

1

firm] in the Southeast dedicated exclusively to employee rights".[2] He has had eight months to respond to these basic discovery requests. He has had three months to comply with this Court's Order. He has not. Instead, he offers further inaccurate statements about his earnings since January 1, 2021 and attempts to shift the blame for any delay in discovery to Maximus, claiming that Maximus is acting unreasonably by demanding Plaintiff comply with a court order and investigating his noncompliance with that order.

Despite Plaintiff's claims otherwise, this is not an issue of mismatched resources. Maximus is not at fault because it discovered that Plaintiff had not responded completely or accurately to its discovery responses. It is not at fault because it asked Plaintiff to comply with this Court's Order. Maximus has not filed its discovery motions—including the instant motion—as a litigation tactic. It has done so only because of Plaintiff's tactics, misrepresentations, and repeated refusal to engage in good faith with the discovery process. This is not how litigation should work. This conduct is sanctionable and should be sanctioned. Thus, for the reasons set forth below, and in the initial moving papers, Maximus' motion should be granted and Plaintiff's Second Amended Complaint should be dismissed or, in the alternative, Plaintiff should be compelled to provide full and complete answers regarding his earnings and recordings, and discovery should be extended solely for purposes of allowing Maximus time to complete discovery.

## ARGUMENT

I. **Maximus' Motion is not Moot, as Plaintiff Has Not Provided Full or Accurate Responses to Interrogatories Nos. 11, 14 and 15 or the Related Document Requests**

    A. **Plaintiff Continues to Withhold Information Regarding His Income**

Maximus' motion is not moot, as Plaintiff still has not provided complete and accurate discovery responses. On November 29, 2022, this Court ordered Plaintiff to respond to Interrogatory Nos. 14 and 15, which sought information about all employment (including self-employment) and "all

---

[2] https://www.justiceatwork.com/ (last accessed March 14, 2023).

2

income received from whatever source" from January 1, 2021 to the present, and to provide corresponding documents regarding same. Order, ECF No. 86. Plaintiff did not.

Maximus informed Plaintiff on multiple occasions (including on January 6, 2023, and February 16, 2023) that Interrogatory No. 15 and Document Request No. 19 were not limited to profit or taxable income, but rather all earnings.[3] Despite this, Plaintiff did not disclose his work for the High Society Entertainment Group or the payments he received as a result. Maximus discovered High Society through its own investigation into Plaintiff's roommate, Scott Rivers. While Plaintiff admits now that he performed work for the Group ("collect[ing] entry fees at the door"),[4] he contends that this work and the payments he collected are irrelevant, as he "turns all of that revenue over to his roommate. His records – records that he has produced to Maximus long ago – show that revenue flowing in and flowing right back out." Opp. at 9.

First, Plaintiff did not produce the records "long ago." He produced his 2021 "cash app" report on January 24, 2023; his redacted bank statements showing certain other Group-related payments on February 7, 2023; and his 2022/2023 "cash app" report on March 3, 2023. Second, the records do not show "revenue flowing in and flowing right back out." Maximus assumes that the payments on the cash app report provided are the "entry fees" he collected for High Society (as Plaintiff has not disclosed any other source of these payments). Plaintiff's 2021 cash app report reflects that he collected $21,510.14 in payments, and sent $21,319 in payments to "Scott" and/or "S

---

[3] In its February 16, 2023 correspondence, it explicitly defined income as "that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures."

[4] Plaintiff suggests that this is the "only" work he did. Maximus cannot state whether or not he is correct, but note that Plaintiff posted what appears to be an advertisement or news article on his personal blog in or around 2014, which shows a picture of Mr. Franklin, Mr. Rivers, and an unknown third individual with the following caption: "High Society Entertainment Group, party promoters. Chicago's top party promoting **collective**, High Society Entertainment Group, saw its profile raised in the Chicago social scene to epic proportions in 2014 due to **their** increased following [remainder cut off]." *See* https://franklinreese.tumblr.com/post/104362698689 (last accessed on March 14, 2023) (a copy of which is attached as Exhibit A) (emphasis added).

LaRoxx".[5] His 2022 cash app report shows that he received $17,735, and sent $20,251 to "GucciRoxx" "S LaRoxx" and/or "Scott Rivers". While this suggests he sent money to Mr. Rivers, it does not show that he was merely a pass through for Mr. Rivers' income. Even if he was, Plaintiff was obligated to disclose the source of these payments and his work for the Group. Maximus had a right to know these payments existed and their source, so it could determine whether (for example) Plaintiff was voluntarily divesting himself of money that he was legally entitled to, or performing work for which he was not being lawfully compensated. Both could be relevant to his backpay claim and that he was performing work at all during the time period in which he claimed to be incapacitated is relevant to his FMLA claims. That he was performing work at all during the time period in which he claimed to be incapacitated is relevant to his FMLA claims. But Plaintiff never disclosed that these payments were from a source *other* than TheFranklinReeseGroup. And but for Maximus' own research into Mr. Rivers, it would have never known about this work or the source of these payments.

Unfortunately, Plaintiff has still not provided full and complete information regarding his earnings. Plaintiff claims now that his "income" is limited to the payments set forth on Exhibit I to his opposition. Opp. at 9. But this exhibit—which Plaintiff produced to Maximus for the first time on March 7, 2023 with his *ninth* supplemental response to Defendants' first set of interrogatories—is incomplete, and contradicted by his own bank records. It purports to list Plaintiff's income as follows: $55,936.65 in Zelle transfers from TheFranklinReeseGroup;[6] $46,913.43 in disability payments; and, $47,432.00 in rental payments (those made directly by TheFranklinReeseGroup and the Emergency Rental Assistance Program payment Plaintiff received in or around December 2021).

---

[5] As noted in its motion, Maximus was hesitant to include Plaintiff's financial records in its moving papers. Plaintiff subsequently included information in his opposition. The cash app reports produced by Plaintiff are included herein as Exhibits B and C (bates-labeled as Maurice Franklin Production 001874 – 001875 and 00002260 – 00002264, respectively). Maximus is not including Plaintiff's personal bank statements, though will upon direction by the Court.

[6] The exhibit has two charts for payments from TheFranklinReeseGroup, an itemized chart to the left listing specific payments, and an aggregated list by month to the right of the itemized chart.

4

As noted in Maximus' motion, however, Plaintiff's personal checking account includes more than $20,000 in deposits from "Cash App*Cash Out" (i.e., cash app payments to his bank account), over $13,500 in cash deposits, and over $12,000 in transfers from Mr. Rivers. None of these payments are listed in Exhibit I, and thus presumably unrelated to his work from TheFranklinReeseGroup.[7] No information about the sources of these payments has been provided to Maximus. Maximus believed, initially, that these payments were related to Plaintiff's work for TheFranklinReeseGroup. When it discovered High Society and Plaintiff's affiliation with same, it thought those payments were attributable to his club promotion activities.

In his opposition, however, Plaintiff states that he "does not work for High Society or any other organization beyond TheFranklinReeseGroup, LLC"; that he never received any income from High Society; that the payments "flow[ed] right back out" to Mr. Rivers; and that his income from TheFranklinReeseGroup is limited to those Zelle and rental payments reflected in Exhibit I. Opp. at 9. The source of these additional deposits to his personal checking account—which total tens of thousands of dollars—remains unknown.[8]

B. <u>Plaintiff Has Not Fully Responded to Interrogatory No. 11</u>

As for Interrogatory No. 11, Plaintiff did identify four (4) recordings—two (2) of conversations with former Maximus employees where Plaintiff's counsel is present and two (2) with members of his family—which he believes are not discoverable and thus should be exempt from Interrogatory No. 11. Maximus' counsel has sought information about Plaintiff's claim that the recordings are attorney work product, to which Plaintiff's counsel has not yet responded. He has not

---

[7] Plaintiff's disability payments were deposited into a different account.

[8] Maximus attempted to obtain information regarding all payments to TheFranklinReeseGroup, LLC, hoping this could clarify the issue, and served supplemental discovery requests for same. Plaintiff did not produce a single document in response to these requests, stating that he was under no obligation to do so as TheFranklinReeseGroup, LLC is not a party to this litigation (even though Plaintiff is an owner of the Group and thus the documents are within his control). *See* Plaintiff's responses to Defendants' second set of documents requests, attached as Exhibit D. The parties conferred on this matter on February 28, 2023. Plaintiff's counsel stated he would provide further information regarding his position, though none has been provided.

5

provided any explanation for his failure to do so, other than he believes he is "struggling to recall information," such as what state he was located in on particular dates.

### C. Plaintiff Finally Responded to Interrogatory No. 16

On March 3, 2023, Plaintiff supplemented his response to Interrogatory No. 16, to include nine (9) additional civil proceedings. *See* Plaintiff's *seventh* supplemental responses to Defendants' first set of interrogatories and attached production, attached as Exhibit E. He has not provided any explanation for why this information was provided only after Maximus independently verified that his prior response was incomplete.

## II. Plaintiff's Argument That Maximus Should Be Forced to Depose Him Regarding These Issues is Misplaced

Plaintiff argues that Maximus' motion should be denied because it could have questioned (or should question) Plaintiff about these payments and various inaccuracies at his deposition. But his only support for that claim—a citation to *Diversified Products Corp. v. Sports Center, Co.*, 42 F.R.D. 3 (D. Md. 1967)—is misplaced. First, that decision predates the amendments to Rule 26(e), which requires that a "party . . . who has responded to an interrogatory [or] request for production . . . must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Plaintiff's responses were both incomplete and incorrect. He had an obligation to supplement, and he certainly had an obligation to comply with this Court's order to respond to these interrogatories and discovery requests. Regardless, his responses were not "complete when made," as Plaintiff withheld information about the payments he received *before* he responded to Maximus' discovery requests.

Second, there are twelve (12) claims and 311 paragraphs in the Second Amended Complaint. Maximus does not intend to waste its deposition questioning Plaintiff on the source of every

6

unexplained payment in his records, trying to find out basic answers to interrogatories it served months ago. Nor should it be forced to learn this information for the first time at the deposition. It needs this information before his deposition, so that it can plan accordingly and depose Plaintiff in the timeframe allowed by law.

**III.** **Plaintiff Misrepresents Information Regarding Maximus' Participation in Discovery**

Plaintiff uses his opposition to argue that *Maximus* is the party abusing discovery. It is not. Plaintiff either omits or misrepresents the following facts:

- Maximus verified its interrogatory responses when it propounded the same on September 29, 2022. See Exhibit F. It did not verify its responses to Plaintiff's requests for the production of documents, as such verification is not required by the Federal Rules of Civil Procedure.

- Maximus produced a copy of its Outside Employment policy in response to Plaintiff's request for documents substantiating its after-acquired evidence defense. That policy begins at the bottom of a page on the Employee Handbook. The other policy on that page was not relevant to Maximus' defense. Thus, Maximus redacted the policy to avoid confusion and because the policy was not responsive.

- Maximus refused initially to provide information regarding Peter Baylinson and *every employee who reports to him*, as that information is not relevant to Plaintiff's claims. His Second Amended Complaint, which alleges Maximus paid "*Plaintiff's* CA Lifeline Project staff" and his "subordinate staff on the CA Lifeline Project" a higher salary than it paid Plaintiff. Mr. Baylinson was not Plaintiff's subordinate, nor is he otherwise identified as a comparator in Plaintiff's Second Amended Complaint. Maximus explained its position that information regarding Mr. Baylinson was not relevant to Plaintiff's claims on numerous occasions, including in its July 29, 2022 responses to Plaintiff's requests for the production of documents and its September 16, 2022 Rule 37 correspondence to Plaintiff's counsel. Nevertheless, when Plaintiff requested the information again in his Second Request for the Production of

7

   Documents, Maximus agreed to produce it to avoid an unnecessary discovery dispute. It did so only after reiterating that it did not believe the documents were discoverable.

- Maximus cancelled Plaintiff's deposition after learning about High Society Entertainment Group, after Plaintiff failed to disclose his complete litigation history, and after Plaintiff failed to respond to Interrogatory No. 11 by the deadline agreed to by the parties (which, again, was far after the date by which this Court ordered him to respond).

## COMPLIANCE WITH LOCAL RULE 37.2[9]

Pursuant to Local Rule 37.2, Maximus made good-faith attempts to resolve these disputes prior to filing its motion for sanctions on February 21, 2023, but was unable to resolve the differences through no fault of its own. Counsel for Maximus raised these discovery issues on numerous occasions to Plaintiff's counsel, including: concerns about Plaintiff's productions regarding his subsequent employment and income (including during teleconferences between counsel on January 20, 2023 at 2:00 p.m. CST and February 10, 2023 at 9:00 a.m. CST); his failure to respond to Interrogatory No. 11 and his subsequent, incomplete, response (including during teleconferences between counsel on February 10, 2023 at 9:00 a.m. CST and February 20, 2023 at 3:00 p.m. CST); and his perceived misrepresentations on Interrogatory Nos. 14, 15, and 16 (including during a teleconference between counsel on February 20, 2023 at 3:00 p.m. CST). These issues have not been resolved between the parties.

## CONCLUSION

Plaintiff has repeatedly withheld information from Maximus. He continues to do so today. He has had months to gather information about his finances. These interrogatories were not complicated for someone who claims to only work for one entity. The only thing complicating discovery is Plaintiff's repeated history of providing incomplete or inaccurate information, and only

---

[9] Maximus included a similar statement about its efforts to comply with Local Rule 37.2 in its opening motion. *See* Mot. at 11-12.

8

correcting or supplementing when Maximus brings the issue to this Court's attention. It appears he continues to withhold information today. Who knows what else Maximus has not discovered. It should not bear the burden of having to find out. Thus, Maximus respectfully requests the Court enter an order dismissing Plaintiff's Second Amended Complaint, with prejudice. Alternatively, Maximus requests that the Court order Plaintiff to provide supplemental discovery responses and extended Maximus' time to complete discovery, or for such other relief as this Court may deem appropriate, including attorney's fees and costs.

Dated: March 14, 2023

Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC**

By: */s/ Kathryn J. Barry*
    One of Their Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
J. Casey Leech
JACKSON LEWIS P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Fax: (312) 787-4995
Kathryn.Moran@jacksonlewis.com
Kathryn.Barry@jacksonlewis.com
Casey.Leech@jacksonlewis.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on March 14, 2023, she caused a true and correct copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, TO COMPEL AND EXTEND DEFENDANTS' TIME TO COMPLETE DISCOVERY** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

<i>/s/ Kathryn J. Barry</i>