IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE FRANKLIN, | ) |
| Plaintiff, | ) Case No. 21-cv-04367 |
| v. | ) Hon. Lindsay C. Jenkins |
| MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC, | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT[1]**

"Ultimately, summary judgment 'is the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Perez v. Albany Rest., Inc.*, 2024 WL 2019283, at *5 (N.D. Ill. May 6, 2024) (Jenkins, J.) (quoting *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). Plaintiff has none. Despite filing a thirty-page response—double the page limited permitted by Local Rule 7.1—Plaintiff does not respond to many of Defendants' arguments, and abandons almost all of his claims. His claims for pay discrimination and retaliatory discharge fare no better. While Plaintiff addresses these claims, he does not cite to facts or admissible evidence and sets forth new facts in his Responses to Defendants' Rule 56.1 Statement of Material Facts ("Plaintiff's Response to DSOF") as opposed to a statement of additional facts.

Most importantly, he does not raise any genuine disputes, or proffer any evidence to suggest—let alone establish—he was subjected to unlawful discrimination or retaliation. Even if this Court considers the new facts in Plaintiff's Response to DSOF—and it should not—it is undisputed that: (1) Plaintiff's alleged peers and subordinates are not appropriate comparators for purposes of his pay discrimination claim; (2) there is no evidence any differences in pay are because of Plaintiff's race, (3) there is no dispute that Maximus understood Plaintiff to have resigned from his employment, and that it would not have acted any differently if he did not engage in protected activity. That the parties disagreed over the effect of the revocation clause in the Separation Agreement is not evidence of retaliation, and does not require a trial.

Thus, and for the reasons set forth below and previously, Plaintiff's Third Amended Complaint should be dismissed in its entirety.

---

[1] Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, ECF No. 184, is cited to herein as "Mot." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, ECF No. 185, is referred to here in as the "Opposition" and cited as "Pl.'s Opp." Plaintiff's Responses to Defendants' Rule 56.1 Statement of Undisputed Material Facts, ECF No. 194, is cited to as "PRSOF ¶__." Unless otherwise identified herein, capitalized terms and abbreviations have the same meaning set forth in Defendants' initial moving papers.

**ARGUMENT**

I. **PLAINTIFF ABANDONS MOST OF HIS CLAIMS BY NOT DEFENDING THEM IN RESPONSE TO DEFENDANTS' MOTION**

Plaintiff did not defend, and thus abandoned, his claims that Maximus failed to promote him to a Lead Vice President role because of his race and alleged protected activity (Counts VII, VIII, IX, and X), subjected him to various (non-discharge) adverse acts because of his purported protected activity (Count I) and interfered with his leave under the FMLA (Count X).

"When a party raises arguments for summary judgment on various claims, the nonmoving party must respond to the movant's arguments as to each claim." *Inojosa v. Board of Trustees of City Colleges of Chicago, Cmty. Coll. Dist. 508*, No. 20-c-1114, 2022 WL 4604578, at *4 (N.D. Ill. Sept. 30, 2022) (citing *Nichols v. Michigan City Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)). While Plaintiff argued at length about why the Court should deny summary judgment on his retaliatory discharge and pay discrimination claims, he "failed to present facts or develop any legal arguments" in defense of his remaining allegations. *Little v. Mutsibishi Motors N. Am., Inc.*, 261 F.App'x 901, 903 (7th Cir. 2008) (affirming summary judgment where focused exclusively on reduction-in-force claim in response to summary judgment); *Palmer v. Marion Cty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (plaintiff's failure to defend a claim in opposition to summary judgment results in it being deemed abandoned). These claims should be deemed abandoned and dismissed. *See Baraona v. Vill. of Niles*, No. 21-cv-1951, 2024 U.S. Dist. LEXIS 40984, at *25, n.5, __F.Supp.3d__ (N.D. Ill. Mar. 8, 2024) (Jenkins, J.) (plaintiff who made "no attempt to develop or defend" allegations that she was denied a religious accommodation in response to a motion for summary judgment abandoned that claim) (citing *Little*, 261 F.App'x. at 903).

II. **PLAINTIFF'S ALLEGATIONS OF FACT SHOULD BE DISREGARDED FOR FAILING TO COMPLY WITH LOCAL RULE 56.1**

"A lawsuit is not a game of hunt the peanut. " *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (2001).

2

Unfortunately, the Opposition is. While it purports to incorporate a "Statement of Additional Material Undisputed Facts," Pl. Opp. at 3, no statement was ever filed. There are less than ten citations of fact across the entire thirty page brief. All are (or appear to be) to the non-existent statement of additional facts.

As best we can tell, the only factual support for Plaintiff's Opposition is his Response to Defendants' Statement of Facts ("Plaintiff's Response to DSOF"), and the evidence cited therein. It is inappropriate for a non-movant's statement of facts to "set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." L.R. 56.1(e)(2); *see also Johnson v. County of Cook*, 2012 WL 2905485, at *34-35 (N.D. Ill. July 16, 2012) (citing *Camber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (affirming district court's refusal to consider additional facts set forth in the non-movant's Local Rule 56.1(b)(3)(B) response)).[2] Instead, Local Rule 56.1(e)(2) specifically requires that new facts be set forth in a "statement of additional material facts."

Had Plaintiff complied with the Rule, Defendants could have responded to each additional statement of fact, and introduced any record evidence necessary to dispute same. "Instead, plaintiff smuggled new factual material into his response to defendants' statements, which unfairly deprived defendants of a vehicle under Local Rule 56.1 to dispute those facts." *Evans v. UPS*, 2022 WL 212346, at *1-2 (N.D. Ill. Jan. 21, 2022) (quotations and citations omitted). Plaintiff should not benefit from his own noncompliance, particularly when there is no indication of a good-faith effort to comply with the Local Rules.[3] The Court should disregard these additional facts, reject the arguments that rely on

---

[2] Local Rule 56.1 was amended and renumbered in 2021, Local Rule 56.1(b)(3)(B) is the predecessor of Local Rule 56.1(b)(2). The amendments also added Local Rule 56.1(e) which, among other things, *explicitly* requires that a response to a statement of fats not include "new facts."

[3] Beyond improperly relying on Plaintiff's Response to DSOF, Plaintiff does not provide factual cites for the statements in the Opposition. He also filed a brief that is fifteen pages longer than the page limit, without leave from the Court. *See* Briefing Schedule, ECF No. 177. Given the parties had made a joint request for leave to file oversized briefs and statements of fact, he was well aware he needed Court permission.

3

them, and accept Defendants' facts as admitted. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (affirming district court's refusal to consider additional facts set forth in the non-movant's Local Rule 56.1(b)(3)(B) (the predecessor to Local Rule 56.1(b)(2)) response); *Johnson*, 2012 WL 2905485, at *34-35 (collecting cases); *Pension Plan of Lumber Emps. Loc. 786 Ret. Fund v. Charles Horn Lumber Co.*, No. 19-cv-7258, 2023 U.S. Dist. LEXIS 211131, at *7 (N.D. Ill. Nov. 28, 2023) (Jenkins, J.) (declining to apply *Ciomber* where party included new facts in response to the movant's statement of facts, both because the Court likes to decide cases on the merits and because the party "did file a separate statement of additional facts, unlike in *Ciomber*.").

More specifically, the Court should admit PRSOF ¶¶ 4, 7, 13, 14, 17, 18, 19, 22, 23, 24, 25, 27, 28, 29, 30, 31, 52, 54, 65, 66, 67,68, 71, 72, 74, 82, 83, and 84.

### III. PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS IS ALMOST UNIFORMLY DEFICIENT, AND VIRTUALLY ALL OF DEFENDANTS' FACT S SHOULD BE DEEMED ADMITTED

Plaintiff's Response to DSOF does not comply with Rule 56(c)(1) of the Federal Rules of Civil Procedure or Local Rule 56.1(b)(2). In addition to the defects herein, several of Plaintiff's responses contain no citation to the record (PRSOF ¶¶ 22, 25, 28, 58, 82, 83, 84); others contain citations for some—but not all—of the "responsive" facts asserted (PRSOF ¶¶ 4, 18, 20, 24, 27, 67, 68, 82, 83); several others rely on unsupported conclusions or other inadmissible evidence (PRSOF ¶¶ 7, 13, 14, 19, 23, 83-84); and, still others rely only on legal argument (PRSOF ¶¶ 25, 28, 82, 83, 84). The Court should accept these facts as undisputed.

### IV. PLAINTIFF'S PAY DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

As set forth in Defendants' moving papers, Plaintiff's purported peers and subordinates are not suitable comparators, and cannot support his pay discrimination claim. Mot. at 12-13. While similarly situated is a flexible analysis, Plaintiff overstates its breadth, and ignores that "at the very heart of an unequal pay claim is the plaintiff's burden to show unequal pay for *equal* work." *Crain v.*

4

*McDonough*, 63 F.4th 585, 592 (quoting *Palmer v. Ind. Univ.*, 31 F.4th 583, 590 (7th Cir. 2022)) (emphasis in original). While comparators "need not be identically positioned, a plaintiff must show the purported comparator was directly comparable to her in all material respects so as to eliminate other possible explanatory variables." *Id.* (citations and quotations omitted). Even if this Court considered the new facts alleged in Plaintiff's Response to DSOF, Plaintiff cannot make this showing, either because his "facts" are not supported by admissible evidence, or because they do not support Plaintiff's claim. We start with the newly asserted facts.

    A.    <u>**Plaintiff Relies on Misstatements of Fact in Support of His Pay Discrimination Claim**</u>

Plaintiff disputes that Maximus considers prior experience, location, other qualifications, salary demands, and salary history where lawful, but does not support this position with a citation to evidence. PRSOF ¶ 13. He also disputes that Maximus considers education in determining pay, and cites to his own declaration as support for same. Taking his claims as true, that Plaintiff and Human resources did not consider education when filling the positions he was hiring manager for does not create a genuine issue of fact as to whether Maximus considers education generally, or whether it considers it for the comparators at issue here. Plaintiff does not identify what positions he was hiring manager for, why he believed education was not a factor (e.g., did he request to hire someone at a higher salary because of their education?), or how Maximus determined starting salary if not for education or any of the identified factors in DSOF ¶ 13. Most importantly, Plaintiff admits he was not involved in hiring his purported comparators, and thus cannot dispute Colbeck's sworn testimony about the various factors that influenced their pay. PRSOF ¶ 16. The Court should deem DSOF ¶ 13 undisputed.

As for Plaintiff's purported comparators:

- **Baylinson**: Plaintiff concedes that Baylinson was employed as Vice President – Finance & Accounting, but disputes that Baylinson provided overall direction for the division's tax,

5

insurance, budget, credit and treasury function. Plaintiff conflates job function and department, claiming that Maximus had a "centralized Finance & Accounting department," that Baylinson was not a part of this department, and thus Baylinson could not have performed the stated finance and accounting-related functions. More importantly, he does not support this claim—as to the department, or Baylinson's responsibilities—with a citation to admissible (or any) evidence. PRSOF ¶ 22. Nor has raised a genuine dispute over Baylinson's work and salary history, or Colbeck's and Kerr's consideration of same. Plaintiff's post-2018 work history would not include his pre-2018 title or salary, nor does it refute Colbeck's sworn testimony on same. PRSOF ¶ 23. Because these facts were not properly denied, DSOF ¶¶ 22 and 23 should be admitted as undisputed. Once admitted, there is no argument—and certainly no triable issue of fact—that Baylinson's work was not "equal" to Plaintiff's, and that he is not an appropriate comparator for purposes of a pay discrimination claim.

- **Boerner**: Plaintiff does not dispute that Boerner was hired into a different job title (Senior Director – Business Development) (PRSOF ¶ 24), was later promoted into a different job title (Vice President – Business Development) (PRSOF ¶ 24), reported to a different supervisor (PRSOF ¶¶ 11, 24), has a Bachelor's degree and years of sales experience (PRSOF ¶ 25), and, at her prior employer, had a base salary significantly higher than Plaintiff's (PRSOF ¶ 25). He does not properly dispute that Maximus considered her prior experience, salary history, job responsibilities, and education when setting her initial compensation, or that it considered these factors and her performance when increasing her pay upon her promotion to Vice President (PRSOF ¶ 25). Instead, Plaintiff argues—again—that Boerner could not have been in a business development role because she was not in the Business Development department. PRSOF ¶ 24. But Colbeck testified that Boerner did not report into the Business Development department because she did not want to, not because she was not functioning

in a business development role. Quite the opposite—Colbeck testified that Boerner's "background is in sales and sales support for sure" and that she supported the "sales side." PRSOF ¶ 24. Without offering some evidence that employees outside the Business Development department could not or did not perform business development tasks, which does not exist, Plaintiff cannot dispute that Boerner had various business development responsibilities.

Plaintiff's only other argument—that Defendants should be estopped from relying on evidence of Boerner's education, prior qualifications and salary history because it moved to quash subpoenas *duces tecum* for records from Boerner's prior employers—is misguided. That Plaintiff was unsuccessful in his efforts to obtain irrelevant personal and confidential information about Ms. Boerner has no bearing on Defendants' motion. Defendants supported its statement with admissible evidence, which Plaintiff cannot dispute. DSOF ¶¶ 24 and 25 should be accepted as undisputed, precluding Plaintiff's claim that he was paid less than Boerner because of his race.

- **DiLollo**: Plaintiff argues, at length, that he had more important responsibilities than DiLollo. This misses the point. DiLollo was hired into a Project Manager position to help manage Solix. Plaintiff disputes this by citing to DiLollo's job responsibilities as Project *Director*—a position he was promoted into in 2022, after Plaintiff's employment ended. PRSOF ¶ 18. But that role and job description have no bearing on DiLollo's responsibilities in 2020 and 2021, and Plaintiff does not cite to any evidence regarding DiLollo's responsibilities as Project Manager—the position he was hired into and held during the remainder of Plaintiff's employment. PRSOF ¶ 18. Nor does he cite to any evidence to dispute that DiLollo's compensation was based on his job responsibilities, technological experience, experience with

7

Solix, education, and salary demands. PRSOF ¶ 18. Those facts all must be admitted, and all require dismissal of Plaintiff's pay discrimination claims as a matter of law. *See, e.g., Lauderdale v. Ill. Dep't. of Human Servs.,* 876 F.3d 904, 911 (7th Cir. 2017).

- **Graettinger**. Plaintiff makes passing reference to Graettinger, claiming that Maximus' stated reason for Graettinger's 2018 pay increase was "phony," and thus evidence that all of Maximus' decisions were pretextual. Pl. Opp. at 12. He is incorrect, from both a factual and legal perspective. As explained in Maximus' initial moving papers, Maximus offered Graettinger an increase in pay because he was staffed on a project being rebid and was being recruited by a competitor. DSOF ¶ 19. Plaintiff—relying only on his own declaration—claims that the bid proposal was submitted in February 2017, and that Graettinger's "resignation would not have impacted the selection of a vendor once proposals had been submitted." PRSOF ¶ 19. Assuming, *arguendo*, that Plaintiff had personal knowledge of when bids were submitted, he does not have personal knowledge of the *state's* decision-making process. Nor does he dispute that the state had not reached a decision—i.e., the contract was still being rebid—at the time Maximus offered to increase Graettinger's pay. *Id.* In other words, he did not dispute the legitimate, non-discriminatory reasons for Graettinger's pay. But even if Defendants' reason was false, there is no evidence that it is pretext for discrimination. Other than the fact Plaintiff is Black and Graettinger is white, Plaintiff has no evidence of discriminatory animus, particularly when considering Plaintiff's annual compensation (base pay and bonus) was *higher* than Graettinger's. PRSOF ¶ 21.

- **Duke and Reiber**. Plaintiff does not address Defendants' arguments regarding either, and thus abandon his claims as to each. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its

8

response to the moving party's motion for summary judgment."). Regardless, neither are comparators, as there are established reasons for the differences in their pay. As explained in the Motion, Duke and Reiber transferred to California Lifeline from other divisions in the Company. Their compensation while working on Lifeline was driven by their prior salaries, which were decided by different decision makers who had no role in Plaintiff's pay. Plaintiff tries to avoid the fatal impact of this undisputed—and indisputable—fact by claiming "Human resources is responsible for settling [Duke's/Reiber's] salary." PSOF ¶ 17 (citing Colbeck Decl. ¶ 13). It is a red herring. As Colbeck explained, she is responsible for providing human resources support to the Human Services *group*, which, at the time period relevant herein, did not include the SOA or Privacy/Counsel division. Colbeck Decl. ¶7, ECF No. 182-01. There is no evidence that Colbeck or her Human Resources team set compensation outside Human Services, and nothing to dispute Colbeck's sworn statement that the SOA and Privacy/General Counsel divisions set Duke's and Reiber's respective salaries before their transfers to California Lifeline.

Plaintiff cannot create a triable issue of fact by arguing about the "comparability of their roles."

### B. Plaintiff Argues That the Positions Are Comparable, But Comparable Worth Is Not Actionable Under the Law

Plaintiff argues in favor of comparable worth—claiming Baylinson is an appropriate comparator because they "contribute equally to the division's successes, warranting comparable consideration in compensation decisions," or that he is worth more than Boerner, as his work is more important and valuable than hers. Pl. Opp. at 10. But "Title VII does not require equal wages for comparable work." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000). *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000). It does not matter if Plaintiff's role has the same or similar value to Maximus—he must show that he and his alleged comparators were similar enough so as to eliminate non-race variables. *Crain*, 63 F.4th at 592. Stated another way: "merely showing that

9

[plaintiff and someone outside of his protected class] who perform different jobs for the same employer are paid differently does not get a Title VII plaintiff to first base." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 772 (7th Cir. 2007).

He falls short, and the Opposition highlights why. Plaintiff argues at length about why Baylinson and DiLollo are appropriate comparators—their jobs have sufficient commonalities, they contributed equally to the division's success, etc. If Plaintiff was sufficiently similar to Baylinson and DiLollo, it follows that Baylinson and DiLollo are sufficiently similar to one another. But DiLollo earned more than Baylinson, and it not because of his race—both are white. He earned more because the positions were different, and so were their backgrounds. PRSOF ¶¶ 18, 20. The same applies here. Plaintiff cannot argue that the roles are so similar that the pay differences in pay relative to him are evidence of discrimination, while ignoring that those same difference in pay exist amongst the comparators themselves—because there are other variables, and thus they are not sufficiently similar. His pay discrimination claim should be dismissed.

V.     **PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW**

    A.     **Plaintiff Can No Longer Argue His Opposition to the Stith Investigation Was Protected**

Defendants' moving papers argued, at length, as to why Plaintiff's participation in the Stith investigation, and his complaints of retaliation for same, were not protected. Mot. at 15-17. Coincidentally, Plaintiff just realized that he "inevitably misconstrued some facts" when he testified about Stith's complaint and the investigation into same. He now recalls—three years into this litigation—that Stith did not complain about Boerner or about having unqualified white women placed into roles above him. PRSOF ¶ 29. And Plaintiff did not refuse to answer questions during the interview because he was concerned about his career, he made a conscious choice not to engage in a "clear attempt to retaliate against Stith." PRSOF ¶¶ 29, 31. Plaintiff does not even try to explain this obvious eleventh-hour pivot.

10

Plaintiff's declaration contradicts his prior sworn testimony and the allegations in his Third Amended Complaint. He cannot recant his pleadings in opposition to summary judgment—they are judicial admissions, by which he is bound. *Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022). As for his prior testimony, the Seventh Circuit recently confirmed that courts can disregard affidavits if they add new, previously undisclosed details "when those details seek to undo the effects of prior testimony and manufacture a dispute to get past summary judgment." *Clacks v. Kwik Trip, Inc.*, 23-cv-1983, __ F.4th __, at *8 (7th Cir. 2024) (citations omitted).

But if we take this newly-discovered truth at face value, Plaintiff can no longer prove that Stith engaged in protected activity under Section 1981 or Title VII. Previously, Plaintiff alleged that Stith had complained Rosenak discriminated against him by promoting unqualified white women into positions of authority over him, including Boerner. TAC ¶¶ 66, 94. He disavowed these allegations, but did not replace them—while the declaration states that Stith complained, it does not say what he complained about. PRSOF ¶¶ 29-31. Which means there is no evidence that Stith opposed unlawful discrimination. *Northington v. H&M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) (vague allegations are not protected). Because there is no evidence of Stith engaging in protected activity, Plaintiff cannot show that he reasonably believed Rosenak was retaliating against Stith. This, of course, precludes Plaintiff from proving that his "opposition" to the Stith investigation and/or his subsequent internal complaints of retaliation were protected. *Logan v. City of Chicago*, 4 F.4th 529, 539 (7th Cir. 2021) (must be some basis to show that the underlying complaint was about activity protected by the statute).

Whether the investigation or Plaintiff's subsequent complaints were protected is less significant if Plaintiff's claims are properly limited to pay discrimination and retaliatory discharge. But, to the extent any other retaliation claims remain, they should be dismissed to the extent they are predicated on Plaintiff's participation in the 2019 investigation or his subsequent complaints about same. It was nor protected activity, under either version of the facts.

11

### B. Plaintiff's Separation Was Not An Adverse Action

There is no evidence that Maximus did not allow Plaintiff to return to work after rescinding the Separation Agreement because of his protected activity. Plaintiff's arguments about resignation letters and his counsel's authority are irrelevant—the salient question is whether, based on the undisputed record evidence, a reasonable juror would conclude that Maximus acted out of retaliatory animus, or whether it reasonably believed he resigned.[4] It is the latter. Plaintiff does not dispute that he requested severance in an April 6, 2021 call with Blaschke Treharne, (PRSOF ¶ 73), that his counsel sent a demand letter requesting an amicable separation on June 14, 2021, (PRSOF ¶ 76), that on August 6, 2021, his counsel admitted to "a separation agreement and mutual release for $275,000," (PRSOF ¶ 78), that on August 27, 2021, Defendants' counsel informed Plaintiff's counsel that Plaintiff "still has a job with Maximus," (PRSOF ¶ 78), that Maximus' counsel subsequently sent Plaintiff's counsel a draft version of Maximus' template Separation Agreement and Release, (PRSOF ¶ 78), that plaintiff's counsel reviewed and edited the Separation Agreement and Release, and subsequently sent same to Plaintiff, who signed on October 8, 2021 (PRSOF ¶¶78-80).

His voluntary acceptance of the Separation Agreement is not an adverse action. *See Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014) ("[A]n employee who voluntarily resigns cannot be said to have experienced an adverse employment action.") (overruled on other grounds by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). Nor can Plaintiff reasonably claim that he was involuntarily discharged or laid off on October 9, 2021. Again, his counsel edited the Agreement, including by making changes to the terms and adding the termination date. DSOF ¶ 79. He sent it to Plaintiff, who signed. PRSOF ¶ 80. His employment terminated after he signed. *Id.* Plaintiff attempted to return to work after he rescinded the Agreement and requested more severance. DSOF

---

[4] Of course, an attorney is an agent of his client and binds the client to "acts or omissions of his attorney if the conduct is within the scope of the attorney's authority." *Bradford v. Denny's Inc.*, No. 97 C 15, 1998 U.S. Dist. LEXIS 8689, at *9 (N.D. Ill. June 3, 1998).

12

¶¶ 81-83, TAC ¶¶ 348-351. If he was involuntarily terminated, why would he have tried to return? Why would he have believed he could? Someone who was laid off would not believe they could return to work because they rejected their former employer's severance. Plaintiff is capitalizing on an argument that he cannot reasonably believe. This case should not proceed to trial because Maximus' counsel used a template form.

        C.        **There's No Evidence of Retaliatory Animus, Let Alone Causation**

Even if not allowing Plaintiff to rescind his resignation was an adverse action, there is no evidence from which a reasonable juror could infer that this decision was because of Plaintiff's protected activity (i.e., the Ethics Hotline complaint, the EEOC charge, and this lawsuit). Maximus has never allowed an employee who signed a separation agreement to "rescind" that separation is undisputed. Blaschke Treharne's reasons for not allowing Plaintiff to rescind his resignation—it had already gone into effect, she had requested the position be closed, and had no intention of filling the role—are undisputed. PRSOF ¶¶ 82-84.

Stated more simply: the evidence shows Maximus believed Plaintiff resigned from his employment, and that it chose not to permit him to rescind that resignation for legitimate, non-retaliatory business reasons. Plaintiff thought he could revoke the Agreement after signing and still return to work. Pl. Opp. at 22-23. Maximus disagreed. That they had different interpretations of the OWBPA waiver and the effects of his decision to revoke is unfortunate, but not unlawful. Plaintiff cannot rely on speculation, or the fact this occurred after he filed complaints and this lawsuit. There must be something to link Maximus' decision to retaliatory animus. There is not. There is not, for example, evidence that Maximus had told Plaintiff he could return to work if he revoked the Agreement, only to renege on that promise because he engaged in protected activity. Nor is there evidence Maximus would have acted differently if Plaintiff had not complained internally or externally. And nothing in the record disputes Blaschke Treharne's sworn testimony about why she did not want

13

to allow Plaintiff to rescind the Agreement and return to work. PRSOF ¶ 83.

Perhaps this could have been avoided if the parties discussed the impact of revocation before finalizing the Agreement, or if Plaintiff contacted Maximus before effectuating rescission. But the simple fact remains: there is nothing in the record that suggests—let alone proves—Maximus would have allowed Plaintiff to return "but for" his protected activity. That he thought he should be able to come back, and that it happened after he filed with the EEOC and commenced this litigation, does not make it retaliatory. "Indeed, the mere fact that one event preceded another does nothing to prove that the first event caused the second." *Burks v. Wis. DOT*, 464 F.3d 744, 758–59 (7th Cir. 2006) (quotations and brackets omitted); *Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, 959 (7th Cir. 2021) ("Suspicious timing is rarely enough to create a triable issue"). Nothing about the timeline here suggests retaliation—Maximus began negotiating with Plaintiff in response to his attorney's request, negotiated throughout the summer, including after this litigation began, and finally reached agreement in October, months after Plaintiff filed the Complaint.

### D. Plaintiff's Evidentiary Arguments Fall Flat

Defendants addressed Plaintiff's arguments regarding Rule 408 of the Federal Rules of Evidence and the parol evidence rule in its Opposition to Plaintiff's Partial Motion for Summary Judgment, ECF No. 90. We incorporate them by reference here, to not subject the Court to duplicative pleadings.[5] Finally, Maximus is not "estopped" from admitting the settlement communications as evidence, and nothing supports Plaintiff's contention that this evidence "would require the Court to disregard the clear terms of the Separation Agreement, which explicitly states that Maximus termination Franklin's employment." *See* Pl.'s Opp. at 25. His argument not only lacks support from legal authority (Plaintiff cites none), it does not make any sense. Correspondence

---

[5] Plaintiff makes arguments about statements by Kerr, which are not in Plaintiff's Response to DSOF, and are not responded to here. Regardless, they mirror arguments made in Plaintiff's Motion for Partial Summary Judgment, and Defendants incorporate their arguments thereto.

14

between the parties' attorneys—including Plaintiff's attorney's letter inviting the settlement discussions and suggesting that the parties "go in different directions" (DSOF ¶ 76)—demonstrates that Plaintiff resigned his employment. There is no rule prohibiting the admission of these communications merely because Plaintiff believes they somehow contradict the parties' since-revoked agreement, and Maximus is not "estopped" from relying on this evidence merely because Plaintiff finds it damaging.

## CONCLUSION

For these reasons, and the reasons set forth in Defendants' opening Memorandum in Support of Their Motion for Summary Judgment, ECF No. 184, Defendants request that the Court grant their Motion for Summary Judgment, enter an order dismissing Plaintiff's claims with prejudice, and grant such further relief as the Court deems proper.

Dated: August 2, 2024

Respectfully Submitted,

**MAXIMUS, INC., MAXIMUS HUMAN SERVICES, INC., AND MAXIMUS SERVICES LLC**

By: /s/ *Kathryn J. Barry*
    One of Their Attorneys

Kathryn Montgomery Moran
Kathryn J. Barry
J. Casey Leech
JACKSON LEWIS P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Fax: (312) 787-4995
Kathryn.Moran@jacksonlewis.com
Kathryn.Barry@jacksonlewis.com
Casey.Leech@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 2, 2024, she caused a true and correct copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

*/s/ Kathryn J. Barry*